LAFONZO R. TURNER
SVSP. CG-128
P.O. BOX 1050
SOLEDAD, CA. 93960

FILED
CLERK, U.S. DISTRICT COURT

OCT - 5 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATE DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAFONZO R. TURNER
        PLAINTIFF,

        V.

B. M. CASH ET. AL.
        DEFENDANTS,

NO. CV-00109 MMM (AGR)
STATEMENT OF GENUINE ISSUES
IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT
(CENTRAL DISTRICT)

PLAINTIFF LAFONZO R. TURNER SUBMITS THIS STATEMENT OF
GENUINE ISSUES PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL
RULE 56-2 IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT
HEREIN FILED BY

    FACT 1 THOUGH ___ BELOW CORRESPOND TO THE FACTS AND SUPPORTING
EVIDENCE PRESENTED IN THE STATEMENT OF UNCONTROVERTED FACTS FILED
BY THE MOVING PARTY. THESE FACTS ARE FOLLOWED BY ADDITIONAL
MATERIAL FACTS AND SUPPORTING EVIDENCE SHOWING A GENUINE ISSUE.

    MOVING PARTY'S ALLEGED
    UNCONTROVERTED FACTS

    RESPONSE TO OPPOSITION

1. PLAINTIFF WAS A PRISONER
INCARCERATED BY THE CALIFORNIA
DEPARTMENT OF CORRECTIONS
AND REHABILITATION ("CDCR")
WHEN THE ORIGINAL COMPLAINT

1. PLAINTIFF AGREES THIS IS
UNDISPUTED. SEE COMPL. 1, 3
(ECF NO. 20)

IN THIS ACTION WAS LODGED ON JUNE 19, 2014.

2. THIS ACTION, TURNER V. CASH, NO. 2:14-CV-04758 (JVS (AGR), HAS BEEN BROUGHT WITH RESPECT TO PRISON CONDITIONS UNDER FEDERAL LAW.

2. PLAINTIFF AGREES THIS IS UNDISPUTED. SEE GENERALLY COMPL.; FIRST AM. COMPL. (ECF NO. 30); SECOND AM. COMPL. (ECF NO. 94).

3. THIS ACTION PROCEEDS ON THE OPERATIVE SECOND AMENDED COMPLAINT ("SAC") TO THE EXTENT THAT IT ASSERTS EIGHTH AMENDMENT CLAIMS UNDER 42 U.S.C. §1983 AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

3. PLAINTIFF AGREES THIS IS UNDISPUTED. SEE REPORTS & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE, NOV. 2, 2016 (ECF NO. 89); ORDER ACCEPTING FINDINGS & RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE, DEC. 5, 2016 (ECF NO. 93)

4. THE LEGAL FACTUAL BASIS OF PLAINTIFF'S CLAIMS INVOLVES A CALCULATED CELL EXTRACTION THAT TOOK PLACE ON JUNE 26, 2010, WHILE PLAINTIFF WAS INCARCERATED AT CALIFORNIA STATE PRISON, LOS ANGELES COUNTY. PLAINTIFF ALLEGES THAT DEFENDANTS FEARS, GODINA, POLLARD, PUCKETT, ROMERO, SPENCER, AND THOMAS USED EXCESSIVE FORCE AGAINST HIM DURING THE CELL EXTRACTION. PLAINTIFF ALLEGES THAT,

4. PLAINTIFF DENIES THIS IS UNDISPUTED AS CAIN, CRAWFORD, CROMWELL, FERNANDEZ, FORTSON, LETT AND MENDOZA WHERE PERSONALLY INVOLVED. SEE GENERALLY COMPL.

DEFENDANTS, CAIN, CRAWFORD, CROMWELL, FERNANDEZ, FORTSON, LETT, AND MENDOZA WERE PRESENT DURING THE CELL EX- TRACTION, BUT THEY FAILED TO INTERVENE. PLAINTIFF ALLEGES THAT DEFENDANTS BUECHTER AND CASH CONSENTED TO THE EXCESSIVE USE OF FORCE AND ENFORCED POLICIES THAT EFFECTIVELY RATIFIED THEIR SUBORDINATE'S CON- DUCT.

5. AT THE LATEST, PLAINTIFF BROUGHT HIS CLAIMS RELATED TO THE JUNE 26, 2010 CELL EXTRACTION WHEN THE COMPLAINT WAS LODGED ON JUNE 19, 2014.

5. PLAINTIFF AGREES THIS IS UNDISPUTED. SEE COMPL. GENERALLY.

6. AT THE TIME PLAINTIFF CASE AROSE ON JUNE 26, 2010, THE CDCR HAD AN ADMINISTRATIVE APPEAL PROCESS WHEREBY A PRI- SONER UNDER THE CDCR'S JURISDICTION, SUCH AS PLAINTIFF, COULD APPEAL ANY DEPARTMENTAL DEC- ISION, ACTION, CONDITION, OR POLICY THAT HAD AN ADVERSE EFFECT UPON THE IN- MATE'S WELFARE.

6. PLAINTIFF DENIES THIS IS UN- DISPUTED, AS DEFS. OBSCURED, CAPRICIOUS AND IN- COMPLETE NAKED RECITATIONS OF PART AND PARTIAL LANGUAGE TO SECTION 3084.1 WHICH CONSIST OF (a)(b)(c)(d)(e)(F) AND (G). DEFS UNCONTROVERTED FACT AND IT'S UNSUCCESSFUL (VOONG DECL.) ATTEMPTS TO INFER PL. FAIL TO EXHAUST HIS ("AVAILABLE") REM- EDIES, BUT FAILS TO USE THE CORE TERM "AVAILABLE", AS 3084.1 (A)

DOES NOT BY IT'S-SELF SET OUT
AVAILABILITY THE PL. RIGHT TO
APPEAL PACIFICALLY AS DOES
(c) AND (e). FURTHERMORE DEFS.
HAVE NOT PRESENTED ONE DECL.
FROM ONE DEF. OR DEPARTMENT-
AL STAFF THAT THEY OFFERED
PL. AN ADMINISTRATIVE APPEAL,
AND/OR THAT PL. REFUSED TO ASK
FOR ONE AS PL. WAS IN AD-
MINISTRATIVE SEGREGATION.
SEE PLAINTIFFS DECL. ¶¶ 1,2;
1-9. (AVAILABILITY)

7. THE CDCR'S OFFICE OF APPEALS
("OOA"), FORMALLY KNOWN AS THE
INMATE APPEALS BRANCH ("IAB")
RECEIVES AND PROCESSES ALL
NON-MEDICAL INMATE APPEALS
SUBMITTED TO THE THIRD AND
FINAL LEVEL OF THE CDCR'S
ADMINISTRATIVE APPEAL PRO-
CESS.

7. PLAINTIFF DENIES THIS IS UN-
DISPUTED. SEE GENERALLY PLAIN-
TIFFS DECL. AND ATTACHED EX-
HIBITS, FURTHERMORE THE TERM
("ALL") IMPLIES EVERY APPEAL AN
INMATE FILES IS PROCESSESED
THROUGH THE FIRST AND SECOND
LEVEL'S, TO RECEIVE THIRD LEVEL
REVIEW, SUCH A CONTENTION
ASSUME'S DEFENDANTS, IN-
CLUDING THE CHIEF VOONG WHO
HAS WORKED IN CALCULATED CON-
CERCERT DEFENDANTS AS A
CHIEF "MECHINATIONER", FORMING
MECHANISM TO THWART, DISCOUR-
AGE AND MINIPULATE AS TO
EFFECT PROCESS, EXHAUSTION OF
(OOA) AND AVAILABILITY. SEE
PLAINTIFF'S DECL. AND EXHIBITS
PACIFICALLY ( ) SHOW (OOA)

(1) VERIABLE OF VOONG'S CONCERT
ED ACTION'S, AS SAID APPEAL
HAD MECHANISUM OF PL. NOT
HAVING A TAB SCORE TO HOLD
PL. APPEAL PASS ITS TIME LIMIT'S,
ASWELL HAS PLAIN FORGED AND
FALSIFIED DATA ENTRIES, ALL
OF WHICH IT IS THE CHIEF'S
JOB TO DO WITHIN PROCESSING.
BUT CHIEF M. VOONG PURPOSFULLY
OVERLOOKED THESE ERRORS AND
SOLY PLACED FAULT ON PLAINTIFF
WHOM HAD DONE EVERYTHING CORR-
ECTLY, AND IT WAS OBVIOUS ON
THE FACE OF THE APPEAL, ASWELL
PLAINTIFF SUBMITTED A SIGNED
FROM 22 BY THE ISSUING OFFICER.

8. TO ADMINISTRATIVELY
EXHAUST THE CDCR'S APPEALS
PROCESS THAT WAS IN EFFECT
PRIOR TO JANUARY 28, 2011,
AN APPEAL TYPICALLY HAD TO BE
BOTH ACCEPTED FOR REVIEW AT
THE THIRD LEVEL AND PROVIDED
A DECISION, WHICH CONSTITUT-
ED THE CDCR DIRECTOR'S DECIS-
SION ON THE APPEAL.

8. PLAINTIFF DENIES THIS IS UNDIS-
PUTED, AS DEFS. CONTEND TO EXHAUST
CDCR'S APPEALS PROCESS A APPEAL HAD
TO BE BOTH EXCEPTED AND PROVIDED
WITH A DECISION. THIS WAS AND
STILL IS CDCR'S ERRONIOUS APPEAL
PROCESS, BUT IT IS NOT WITHIN THE
(PLRA) CONTEXT ON CONTENT WITH NOT
ONLY DEFS POLICIES, BUT UPON DEFS.
PRACTICES OF HOW THEY OPPERATED
THEIR PROCESS, WHEREIN, WHEREFORE
DEFS. MADE REMEDIES UNAVAIL-
ABLE, UNCAPABLE OF USE AT THEIR
DESCRETION PACIFICALLY BY NOT
UTILIZING THEIR OWN POLICY
ADHEARING TO 3084.1(c)

AND (e) AND BY ASSERTING
MECHINATION/MECHANISM
TO AVOID THE OBLIGATED MAND-
ITORY LANGUAGE OF 3084.1
(C) AND (e) WHICH IS THE
MOST PERTINENT TO 3084.1
PLAINTIFFS RIGHT TO APPEAL
PI. REQUEST JUDICIAL NOTICE [RJN]
PI. WAS IN ADMINISTRATIVE SEG-
REGATION SEE EXHIBIT (A)(1)
FURTHERMORE DEFS. AND THEIR
DECL. WITH CITATION OF 3084
.5 (d) AND 3084.5 (e)(2)
DOES NOT SHOW HOW APPEAL FORMS
WHERE READILY AVAILABLE OR
HOW DEFS. ENSURED PI. HAD
"TIMELY ASSISTANCE NECESSARY
TO PARTICIPATE THROUGHOUT THE
APPEAL PROCESS, ESPECIALLY AS
PI. WAS IN AD/SEG. SEE
PLAINTIFFS DECL. GENERALLY
AND ALL EXHIBITS, 3084.1 (C)(e)

| | |
|---|---|
| 9. EIGHTH APPEALS FROM PLAIN-TIFF WERE ACCEPTED FOR THIRD-LEVEL REVIEW BETWEEN JUNE 26, 2010, AND JUNE 19, 2014 AND SUBSEQUENTLY PROVIDED A DECISION. | 9. PLAINTIFF DENIES THIS IS UNDISPUTED, AS DEF'S APPEALS SYSTEM IS BEING OPPERATED ON DEFECTIVE-DISCRETION. SEE EXHIBIT (E)  IN PI. DECI. EXHI-BITS A 602 APPEAL, FILED ON 10-20-16 - ASSIGNED ON 10-21-16 INTERVIEW DATE 11-29-16 DATE MAILED BACK ON 12-1-16, FIRST LEVEL DONE WITHIN 30 WORKING DAYS. PI. RETURNS FOR SECOND LEVEL |

REVIEW ON 12-28-16 WITHIN
30 DAYS, THEREIN SAID APPEAL
WAS NOT GIVEN AN ASSIGNED
DATE, BUT A DUE DATE OF
2-9-17, AND A INTERVIEW DATE
OF 11-29-16. WHEREIN THIS
APPEAL READS AN INTERVIEW
WAS CONDUCTED AT THE SEC-
OND LEVEL 11-29-16, HOW?
WHEN Pl. HAD NOT EVEN YET
SUBMITTED SAID APPEAL FOR
SECOND LEVEL REVIEW, AND
AS WELL ABOVE INTERVIEW
DATE IS BEFORE THE ASSIGN-
MENT DUE DATE OF 2-9-17
APPEAL WAS RETURNED ON
2-3-17 SAY THE DATE STAMP
BUT PLAINTIFF CONTENDS AND
PROVIDED DOCUMENTARY PROOF
BY FORM 22 OF THE OFFICER
WHO ISSUED Pl. THE RETURNED
APPEAL WHICH WAS ON 4-24-17
CHIEF M. VOONG AND CDCR'S
APPEALS PROCESS CAN ONLY APPLY
TO SUBMITTAL, ACCEPTED AND
GIVEN A DECISION IF DEFS.
CHOOSE NOT TO EFFECTUATE DEFECT-
IVE, NEGLIGENT PRACTICES, MECH-
ANISM, THWART AND IMPEDMENTS
SUCH AS NO LOG. NO. #, UNLAWFUL
SCREENING, MISINFORMATION, AS
Pl. APPEALS CAN NOT BE TRACKED BY
(IATS) FOR DEFENDANTS TO EVEN
SAY WHETHER Pl. FILED AN

APPEAL OR IF SAID APPEAL WAS
RETURNED. SEE PLAINTIFF'S
DECL. AND EXHIBIT B- 1  A
695 SCREEN OUT BY (SVSP) WITH
A  LOG NO. # [AN A NOTE] ALL
APPEALS ARE GIVEN LOG NO. # AND
B- 5, 7, 8, 9, 10 ARE 695 FROM LAC
DEFS WITH NO LOG. NO. # AND
A [NOTE] SCREENED OUT APPEALS
OR INFORMAL LEVEL, BUT A
APPEALLANT MUST SEND HIS
APPEAL TO [A] APPEALS COOR-
DINATOR WHO ONLY HAS TO
SCREEN IT OUT TO LOSE IT.
AGAIN SEE B-11 A (PBSP)
ASSIGNMENT NOTICE AND
B-12 A LAC ASSIGNMENT
NOTICE WITH NO LOG. NO #
LASTLY SEE B-13 A FORM 22
TO (SVSP) APPEALS COORDINA-
TOR, STATE ALL APPEAL REC-
EIVE  LOG . NO. #

10. NONE OF THE APPEALS REFERENCED
IN NO. 9, ABOVE, PERTAIN TO
ALLEGATIONS THAT PLAINTIFF
WAS SUBJECTED TO EXCESSIVE
FORCE ON JUNE 26, 2010 IN
CONNECTION WITH A CALCULATED
CELL EXTRACTION .

10. PLAINTIFF DENIES THIS IS
UNDISPUTED, AS PLAINTIFF
OPPOSED IN NO. 9, ABOVE AND
THROUGHOUT PL.'s (SGI), DECL.
AND EXHIBITS, AS WELL ON JUNE
26, 2010 PLAINTIFF ENTER PEAC-
FUL PROTEST WAS ABOUT DEFS.
ASSERTING THEIR INTENT TO
DEPRIVE PL. OF HIS LIBERTY IN-
TRESS TO ACCESS THE COURTS,
UTILIZE PL. MEDICAL

ASSISTIVE DEVICES, AND THE
BASIC HUMAN NECESSITIES SUCH
AS CLOTHING, BEDDING ETC. IT
SHULD NOT BE IN QUESTION
WHETHER OR NOT DEFS. ARE CAP-
ABLE NOT MAKING THEIR AD-
MINISTRATIVE PROCESS AVAILABLE
AS PL. HAS SHOWN. SEE ALSO THE
FACT THAT DEFS. THEMSELF CAN NOT
DISPUTE THEIR OWN POLICE /RAD
DIFIED REGULATION 3084.1
(C) AND (e) WHICH CONJOIN WITH
EVERY TITLE 15 SECTION CODE
THE DEFS. HAVE CITED. FURTHER-
MORE PLAINTIFF [RUN] OF THE
(U.O.F.) USE OF FORCE VIDEO
WHICH IS ALSO A NOTICE TO THE
DEFENDANTS, AND ANOTHER QUALIFY-
ING ADMINISTRATIVE REMEDY AFF-
ORDED PL. WHICH WAS MADE AVAIL-
ABLE, WHEREIN PL. DID USE SUCH
ON JUNE 26, 2010 PER TITLE 15.
3268.1 (d) (1) AND (2) (e) (1) AND
(2) AND (A)(B)(C) (D) AND (E)
BUT PACIFICALLY (d) (1) AND (2)
AS PL. REPEATED OVER AND OVER
WHAT EACH DEFS DID AND THAT
PL. HAD EXCESSIVE FORCE USED
ON HIS PERSON, SEE PLAINTIFFS
DECL. AND EXHIBIT ( ). EVIDENCE
A U.O.F. VIDEO EXIST AND
NUMEROUS REPORTS AND REVIEWS
WHICH COULD HAVE HAD A RE-
MEDIAL RESULT.

11. NO DECISION ON APPEALS SUBMITTED BY PLAINTIFF TO THE THIRD LEVEL, WHICH EXHAUST PLAINTIFF'S ADMINISTRATIVE REMEDIES, WERE ISSUED BETWEEN JUNE 26, 2010 AND JUNE 19, 2014.

11. PLAINTIFF DENIES THIS IS UN- DISPUTED AS REFFERED TO BY REFERENCE: 6-11 WHEREIN DEFS. MADE THE WRITTEN ADMINISTRAT- IVE PROCESS UNAVAILABLE, BUT PLAINTIFF FILE A VIDEO GRI- EVANCE PLACING DEFS. ON NOTICE SEE PI. DECI. GENERALLY. AND PERMITING ADMINISTRATIVE MEASURE'S PER 3268 (d)(1) AND (2) FOR REMEDIES THROUGH A HOST OF REVIEWS, REPORTS, COMITTYS ETC.

## CONCLUSION OF LAW

12. UNDER THE PRISON LIT- IGATION REFORM ACT (PLRA), A PRISONER MAY NOT BRING AN ACTION WITH RESPECT TO PRISON CONDITIONS UNDER 42 U.S.C § 1983 OR OTHE FEDERAL LAW BE- FORE FIRST EXHAUSTING AVAIL- ABLE ADMINISTRATIVE REMEDIES.

12. PLAINTIFF DENIES THIS IS UNDISPUTED. SEE PI. DECI. GEN- ERALLY.

* ALBINO V. BACA, 747 F.3d 1162, 1166 (9th cir 2014)

* WILLIAMS V. PARAMO, 775 F.3d 1182, 1199 (9th cir 2015)

* ROSS V. BLAKE PP.___ ___, 136.S.ct. 1854 (2016)

* LOPEZ V. CATE 2017 U.S. DIST. LEXIS 13358

PLAINTIFF EXHAUSTED ALL AD- MINISTRATIVE REMEDIES [MADE] AVAILABLE.

13. TO PROPERLY EXHAUST AD- MINISTRATIVE REMEDIES, A PRISONER MUST COMPLETE THE ADMINISTRATIVE GRIEVANCE PROCESS IN ACCORDANCE WITH

13. PLAINTIFF DENIES THIS IS UNDISPUTED. SEE PI. DECI. GEN ERALLY.

ALBINO V. BACA. 747 F.3d 1162, 1166 (9th cir. 2014)

| | |
|---|---|
| THE PRISON'S PROCEDURAL RULES. | WILLIAMS V. PARAMO, 775 F. 3d 1182, 1199. (9th Cir 2015) |
| | ROSS V. BLAKE PP. __ __ , 136 S. Ct. 1854 (2016) |
| | LOPEZ V. CATE 2017 U.S. DIST. LEXIS 13358 |
| 14. DISMISSAL OF A CLAIM WITHOUT PREJUDICE IS PROPER WHEN A PRISONER-PLAINTIFF HAS NOT SATISFIED THE PLRA'S PRE-SUIT EXHAUSTION REQUIRMENT. | 14. PLAINTIFF DENIES THIS IS UNDISPUTED. SEE Pl. DECl. GENERALLY. ALBINO V. BACA, 747 F.3d 1162, 1166 (9th Cir 2014) WILLIAMS V. PARAMO, 775 F.3d 1182, 1199 (9th Cir 2015) ROSS V. BLAKE PP. __ __ , 136 S.Ct. 1854. (2016) LOPEZ V. CATE 2017 U.S. DIST. LEXIS 13358 |
| 15. TO EXHAUST CDCR'S GENERALLY AVAILABLE ADMINISTRATIVE REMEDIES CONCERING THE CLAIMS BROUGHT IN THIS LAWSUIT, PLAINTIFF WAS REQUIRED TO SUBMIT AN APPEAL THAT WAS ACCEPTED FOR THIRD-LEVEL REVIEW AND OBTAIN A THIRD-LEVEL DECISION ON THE APPEAL, WHICH CONSTITUTED THE CDCR DIRECTOR'S DECISION OR TO HAVE RECEIVED ALL AVAILABLE RELIEF AT A LOWER LEVEL. | 15. PLAINTIFF DENIES THIS IS UNDISPUTED. SEE Pl. DECl. AND STATEMENT OF GENUINE ISSUES, GENERALLY. ALBINO V. BACA, 747 F.3d 1162, 1166. (9th Cir 2014) WILLIAMS V. PARAMO, 775 F. 3d 1182, 1199 (9th Cir 2015) ROSS V. BLAKE PP. __ __ , 136 S. Ct. 1854 (2016) LOPEZ V. CATE 2017 U.S. DIST. LEXIS 13358 |

" DESCRIPTION "
DECLARATION
OF THE EVIDENCE FOR
MATERIAL FACTS IN GENUINE DISPUTE

DESCRIPTION OF EXHIBITS:

// EXHIBIT. A

// A(1): OFFENDER BASED INFORMATION SYSTEM MOVEMENT HISTORY. THIS DOCUMENT SHOWS PLAINTIFF WAS TRANSFERED ON 7/02/2010 UNTIL 7/8/2010 THIS WAS TO A CRISIS BED, SO PL. WAS NOT ALLOWED BY CUSTODY OF (ZONE) TO BE IN POSSESSION OF ANY PEN-FILLERS + PAPER ETC. ASWELL PRIOR TO TRANSFER PL. WAS ON SUICIDE WATCH SINCE THE DAY OF THE INCIDENT JUNE 26, 2010 THROUG 7/2/2010.
          THE RELEVENT POINT OF THIS EVIDENCE IS IT SHOWS PL. WAS DENIED AVAILABLE REMEDIES UP INTO TRANSFER AND CONTINUING AFTER PL. RETURNS ALL AMOUNTING TO 12 DAYS OF "NO AVAILABLE REMEDIES", BY IMPEEMENTS.

// A(2): INMATE PROPERTY INVENTORY (CDC 1083), THIS DOCUMENT SHOWS THAT IN FACT DEFENDANT ORIGINAL INTENT WAS TO DEPRIVE PL. OF ALL HIS PROPERTY INCLUDING MEDICAL DEVICES, BUT PACIFICALLY RELETIVE TO PL. INSTANT MOTION DEF.S DEPRIVED PL. OF ALL LEGAL DOCUMENTS AND PEN-FILLERS INCLUDING 602 APPEALS. WITCH DEPRIVED PLAINTIFF AVAILABLE ADMINISTRATIVE REMEDIES.

// A(3): A DECL. FROM F/M M.BELL OF DEF.S CUSTOM/PRACTICES OF ASSERTING CELL MANAGEMENT FOR 10 DAYS. DENYING AVAILABLE REMEDIES, AND ANOTHER DECL. FROM PL. EX. ELLIE SHOWING DEF.S RETALITORY CELL SEARCHIES WEEKLY FROM THE TIME PL. RETURNED FROM CRISIS BED. ANOTHER DECL, FROM MR. WINDHAM, AND A DECLARATION FROM EYE WITNESS NUNALLY.

// A (4): SEARCH RECORDS CDC 1450 SHOWING THE PATTERN OF WEEKLY CELL SEARCHIES AND THAT DEF.S TOOK PL. PAPER/602S/PEN-FILLERS ETC.

// A (5): SHOWING A CANTEEN LIST WITCH DEF.S STARTED TELLING PL./PRISONERS WE HAD TO BUY OUR OWN PEN-FILLERS LIMITED TO TWO AND IF THEY DID NOT WORK YOU HAD TO WAIT 30 DAYS FOR A CANTEEN DRAW AGAIN. THESE ACTION DEPRIVED PL. AVAILABLE REMEDIES, ASWELL PL. WAS INDIGENT, AND COULD NOT AFFORD TO EVEN BY A PEN-FILLER. FOR 7¢

1.

EXHIBIT. B

1  || B (1): CDC FORM 695 SCREENING, FROM SVSP WHICH SHOWS A LOG NO. AND A NOTE: EXPRESSING ALL APPEALS RECEIVE LOG NO.
2  FOR TRACKING PURPOSES. ("ALL")

3

4  || B (2): CDC FORM 695 SCREENING, FROM SVSP SHOWING A LOG NO.
5  AND A NOTE: STATING ALL APPEALS ARE ASSIGNED LOG NO.

6  || B (3): CDC FORM 695 SCREENING FROM LACASTER SHOWING A LOG
7  NO. AND A NOTE: STATING ALL APPEALS RECEIVE LOG NO.

8  || B (4): A 602 APPEAL ON BEING DENIED ACCESS TO THE LAW
9  LIBRARY AND THIS APPEAL CORISPONDS WITH EXHIBIT
   B (8) WHICH SHOWS A DISCRIPTION OF THE WRONG ISSUE ON
10 SAID CDC 695 FORM, BOTH 602 AND 695 ARE DATED FEB 4
   2011. (PL. POINT OF THIS EXHIBIT IS DEFENDANT INTERPRET PL. LEGAL
11 WRITING AS THEY CHOSE WITHOUT INTERVIEW, AND THIS CAN
   LEAD TO CONFUSION OF A PL. ENOTHE TO DETER/IMPED AS IT CAN
   MAKE YOU FORGET YOUR OWN +ISSUE BECAUSE YOU DONT HAVE
12 THE APPEAL ONLY THE 695 FORM.) AS WELL TO ADD TO THE
   CONFUSION THERE IS NO LOG NO. ASSIGNED. DEPRIVING
13 AVAILABLE REMEDIES

14 || B (5-10): SHOWING CDC 695 FORMS FROM LAC ALL NOT ASS-
   IGNED LOG NO., EXCESSIVE SCREENING EFFECTIVE DENIES ANY
15 AVAILABLE REMEDIES. "WOODFORD V. NGO"

16

17 || B (11): INMATE APPEAL ASSIGNMENT NOTICE, FROM PBSP
18 SHOWING SAID APPEALS LOG NO. AND (FLR) DUE DATE.

19 || B (12): INMATE APPEAL ASSIGNMENT NOTICE FROM LANCASTER
   SHOWING NO LOG NO. EVEN THOUGH SAID APPEAL WAS ASSIGNED
20 BUT ALSO COMPARING B-12 TO B-11, B-12 DOES NOT HAVE A DUE
   DATE, OR PL. CURRENT HOUSING SO THE APPEAL COULD BE RETURNED
21 IN A TIMELY FASHION, DENYING AVAILABLE REMEDIES.

22

23 || B (13): SHOW A INMATE REQUEST FOR INTERVIEW, TO THE
   APPEALS COORDINATOR, ASKING IF ("ALL") APPEALS RECEIVED LOG NO.
24 AND THE APPEALS COORDINATOR RESPENSE, STATING YES ALL APPEALS
   RECEIVE LOG. NO.'S. AND A GA-22 REQUEST TO THE WARDEN CONCERN
25 ING MY APPEAL FOR JUNE 26th 2010 INCIDENT.

26 || B (14): TITLE 15 3332 (F) MANAGEMENT CELL STATUS. STATE
   24 HOURS THAN I/M MUST BE SENT TO CRISIS BED FOR ANY OTER CARE, NOT 10
27 DAYS AFTER A I/M RETURNS FROM A CRISIS BED PLUS 6 DAY PRIOR.

28                              2.

1. THIS PURPOSELY AND EFFECTIVELY DENIED PL. AVAILABLE REMEDIES, AS THESE WHERE THE DEF.'S ACTIONS, BUT NONEWITHSTANDING DEF.'S 10

2. DAY CELL MANAGEMENT WHICH LASTED LONGER , JUST THE 6 DAYS PRIOR TO PL. TRANSFER TO THE CRISIS BED , AND THE 6 DAYS THE

3. PLAINTIFF WAS IN THE CRISIS BED IS 12 DAY OF UNAVAILABLE REMEDIES LEAVING ONLY 2 DAYS THAT PL. ON DAY 13 ASKED AND

4. ASKED THE DEFS FROM THE TIME HE WAS PLACE IN HIS HOUSING A4

5. 113 CELL AND RECEIVED NOTHING BUT THREATS AND INTIMEDATION TO TWART AND IMPEED , WHEREIN THAT NIGHT ON PL.'S

6. OWN DUE DELIGENCE (HE) FISHED THE NECESSARY INSTREAM-ENTS TO FILE AN 602 APPEA ON THE JUNE 26TH INCIDENT.

7. EVEN THEREAFTER ON DAY 14 PL. STILL ASK DEF.'S FOR 602 APPEAL FORM'S / MEDICAL DEVICES AND ASSISTANCE OVERALL , WAS MET

8. WITH A NEGATIVE RESULTS AND NOT IN ACCORDANCE WITH THEIR REGULATION 3084. 1 (C) AND (e) .

9. EXHIBIT. C

10. // C (1) : DEPARTMENT OF CORRECTION AND REHABILITATION, CALIFORNIA CODE OF REGULATIONS TITLE 15 SECTION 3084 THROUGH 3084.9 WHERE

11. PL. ASSERTS PACIFICALLY 3084/3084.1 (C) AND (e). ASWELL 3084.9 (i)(5). ALL THAT SUPPORT PL. MATERIAL DISPUTED FACTS OF DEF.'S MOT.

12. FOR SUM. J. IN THAT SAID EXHIBIT SHOW BY DEF.'S OWN REGULATIONS AND DEF.'S FAILURE TO ASSERT AS AN UNDISPUTED FACT THAT THEY

13. DID MAKE REMEDIE'S AVAILABLE BY FOLLOWING 3084. i (C) AND (e) AND/OR PROVIDING DECI. INREGARDS TO ANY OF THE 16 DEF.'S HAV-

14. ING PROVIDED PL. WITH A 602 APPEAL OR ASSISTANCE THROUGH THE PROCESS. WHEREIN DEF.'S EFFECTIVELY MADE THE 602 APPEAL PROCESS UNAVAILABLE

15. NONEWITHSTANDING THE FACT PL. STILL FILED A TIMELY APPEAL ON HIS OWN RECOGNIZANCE.

16. FURTHERMORE 3084.9 (i)(5) IN THE CONTEXT OF ("EXCEPTION TO THE REGULAR APPEAL PROCESS") STATES " A STAFF

17. COMPLAINT ALLEGING EXCESSIVE OR INAPPROPRIATE USE OF FORCE " [SHALL " ] AE ADDRESS BY AROCEDURES DECRIBED IN SECTION

18. 3268 THROUGH 3268. 2 . SEE EXHIBIT (C) 2 WHEREFORE PLAINTIFF DID EXHAUST THE ONLY

19. AVAILABLE ADMINISTRATIVE REMEDIES TO HIM. ( U. O. F. ) USE OF FORCE VIDEO. AND THIS MANDITORY GREIVANCE / APPEAL IS

20. INCOMBENT ON PLAINTIFF MAKING AN ALLEGATION OF UNNECESSARY OR EXCESSIVE FORCE . SEE (EXHIBIT C (2) ) AND

21.

22.

23. // C (2) : SHOWING CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION SECTION 3268. 1 (d) (1) (2) AND (E) THROUGHOUT TO E'S

24. END OF ALL SUBSECTION'S. PLAINTIFF ASSERTS THIS EXHIBIT AS HIS ONLY AVAILABLE ADMINISTRATIVE REMEDY AT THE TIME IN JUNE

25. 26, 2010 AND IN CORRELATION WITH TITLE 15 3084.9 (i) (5).

26. //

27. //

28. 3.

// C (3): SHOWING DEPARTMENT OF CORRECTION AND REHAB-ILITATION TITLE 15 SECTION 3000 DEFINITIONS, WHICH STATES "APPEAL MEANS[A] FORMAL REQUEST FOR, OR THE ACT OF REQUESTING, AN OFFICIAL CHANGE OF A DECISION, ACTION, OR POLICY.

AND GRIEVANCE MEANS A COMPLAINT ABOUT A DECISION, ACTION, OR POLICY (WHICH AN INMATE, PAROLEE OR STAFF WISH TO HAVE CHANGED. PLAINTIFF ASSERT THESE EXHIBIT TO SHOW DEF.S REGULATION DO NOT DEFINE A APPEAL AS A 602

EXHIBIT. D & D1

// D: SHOWS CALIFORNIA DEPARTMENT OF CORRECTION AND REHABILITATION, LANCASTER'S INMATES APPEALS TRACKING SYSTEM-1 & 11 PLAINTIFF ASSERTS THIS EXHIBIT TO SHOW PL. WAS AN ADVID AND CONSISTANT UTILIZER OF THE CDCR'S 602 APPEAL SYSTEM FILING 186 602 APPEALS IN FOUR YEARS IN WHICH MORE 85% OF SAID APPEALS WHERE SCREENED OUT. IN A CONTINUES EFFORT TO IMPING, TWART IMPED, COMPLETLY OPERATING AS A SIMPLE DEAD END AS THEY WILL IT TO WITH OFFICER / DEPARTMENTAL STAFF UNABLE OR CONSISTENTLY UNWILLING TO PROVIDE ANY ASSISTANCE OF NECESSARY FORMS, PEN FILLERS, AS PL. WAS A ADMINISTRATIVE SEGREGATED PRISONER AND SUCH ABOVE ACTION WORKING IN CONCERT AMOUNTED TO AN ADMINISTRATIVE SCHEME SO OPAQUE THAT IT BECAME, INCAP-ABLE OF USE. AND D1 SHOWS THIS INCIDENT WAS GIVEN A USE OF FORCE VIDEO.

EXHIBIT. E

SHOWING A 602 APPEAL THAT PLAINTIFF FILED AND PERSUED THROUGH ALL LEVEL FIRST, SECOND AND THIRD. UPON WHICH SAID APPEAL WAS CANCELLED FOR TIME LIMITATIONS).
NOW PLAINTIFF ASSERTS THIS EXHIBIT (E) PACIFICALLY TO SHOW CDCR'S 602 APPEALS SYSTEM OPERATES NUMEROUS MECHIN-IZSUM, BUT WITH THE INSTANT APPEAL PLAINTIFF WILL SHOW HOW CDCR USES THESE MECHINIZSUM'S AS SET:

1. PL. FILED EXHIBIT (E) 602 APPEAL ON 10.20.16 AT P.B.S.P. AND RECEIVED ON 10.21.16 AT THE (FLR) FIRST LEVEL REVIEW WITH A DUE DATE OF 12.7.16 AND A DATE OF INTERVIEW 11.29.16 SEE # 2 (FLR) WAS DENIED. MAILED TO PL. 12.1.16

2. PL. RESPONS WAS DUE IN 30 DAYS FROM 12.1.16 AND PL. DID RESPOND ON 12.28.16 FOR (SLR) SECOND LEVEL REVIEW, THAT WAS ACCEPTED ON 12.28.16 WITH A DUE DATE OF 2.9.17 AND AN INTERVIEW DATE OF 11.29.16 AND A RETURN TO APPELLANT DATE OF 2.3.17

NOW PL. PACIFICALY POINTS OUT FALSE ENTRIES ON THE (SLR) AS SET:

NO INTERVIEWER'S NAME / NO ASSIGNMENT DATE / AND THE DATE OF INTERVIEW IS FALSE / FORGED TO STATE, 11.29.16. THERE IS NO WAY SAID INTERVIEW DATE OF 11.29.16 CAN BE TRUE AS THE (SLR) WAS NOT EVEN UNTIL 12.28.16 WHEREIN HOW COULD AN INTERVIEW ON 11.29.16 TAKEN PLACE WHEN THE (SLR) HAD NOT EVEN BEEN STARTED; ASWELL THE DATE 11.29.16 IS THE SAME DATE AS THE (FLR) WHEREIN HOW COULD BOTH OF THOSE DATE OCCURED FOR A FIRST AND SECOND LEVEL REVIEW?
FURTHERMORE THE (SLR) WAS STAMPED TO HAVE BEEN RETURNED TO APPELLANT ON 2.3.17 WHICH ALSO IS A LIE

4.

AS P.B.S.P. USED THE FACT THAT PL. DOES NOT HAVE A TABB SCORE, AND THIS REQUIRES THE APPEAL COORDINATOR TO SEND PL.'S APPEALS TO CUSTODY IN ORDER FOR THEM TO RETURN THE APPEAL TO ME. AND TO MAKE SURE I UNDERSTAND THE DECISION MADE WHEREIN CUSTODY / APPEALS COORDINATOR DID NOT RETURN SAID APPEAL UNTIL PL. HAD BEEN TRANSFERD 2 MONTHS LATER

PLAINTIFF HAD THE ISSUING OFFICER SIGN A FORM 22 AS PL. KNEW WHAT P.B.S.P. HAD DONE, VIOLATED TIME CONSTRAINTS AND MADE IT SEEM AS PL. HAD EXCEEDED THE TIME CONSTRAINTS.

FURTHERMORE UPON PL. TRANSFER P.B.S.P. REFUSED TO TRANSFER SAID PROPERTY UNDER APPEAL SEE #10. WHEREFORE M. VOONG, CHIEF OF APPEALS TO CANCELL SAID APPEAL WAS DELIBERATELY INDIFERANT. AND PURPOSELY DONE IN CONCERT WITH THE REVIEWERS AT THE FIRST AND SECOND LEVEL REVIEW.

PLAINTIFF ASSERTS THESE FACTS JUST AS I READ THEM ON THE 602 APPEAL DOCUMENT CHIEF M. VOONG COULD HAVE OR JUST CONTACTED THE ISSUING OFFICER ETC. BUT INSTEAD PL. APPEAL WAS DENIED / CANCELLED.

THESE KIND OF MECHANATION ARE DONE WITH MALICE FOR EXAMPLE PL. DOES HAVE A TABB SCORE BUT CDCR RE-FUSES TO CORRECT THERE RECORDS OF SUCH EVEN AFTER PL. HAS GIVEN CDCR DOCUMENTS OF SUCH.

WHEREIN DEF.S HAVE MADE THEIR ADMINISTRATIVE REM-EDIES EFFECTIVELY UNAVAILABLE, ASWELL DEF.S INSTANT MOT. FOR SUM. J. BEARS A LEGALLY SUFICIENT NEXUS TO FORCE AND MECHANATION TO IMPING, INDEED, INTIMIDATE AND DEPRIVE PLAINTIVE OF THE VARY INSTRUMENTS AND LEGAL TENDERS TO FILE AND/OR MAKING THOSE REMEDIES AVAILABLE TO PROCESS THROUGHOUT CDCR 602'S LEVELS OF REVIEW TO EXHAUST ANY CLAIMS CONCERNING THE CONSTITUTIONAL VIOLATIONS ON JUNE 26th, 2010.

WHEREIN THE ABOVE NAMED EXHIBITS ARE IN MATERIAL DISPUTE FACTS REFFERED TO BY REFFERANCE; A - E.

I DECLARE UNDER THE PENALTY OF PURJURY UNDER STATE AND FEDERAL LAW, THE ABOVE IS TRUE AND CORRECT EXECUTED 10.02 2017 AT SALINAS VALLEY STATE PRISON 93960. LANCASTER STATE PRISON

RESPECTFULLY SUBMITTED:

M. Lalonzo R. Turner
LALONZO R. TURNER
- IN PRO SE -

5.

EXHIBIT A

EXHIBIT (R)(1)

Page: 1 Document Name: untitled

```
KMHQ1M02              OFFENDER BASED INFORMATION SYSTEM        07/17/2010
KMHQ1P01         MOVEMENT HISTORY of 505794 - TURNER,LAFONZO,RAY   03:45 PM
Page  01                                          Report Date: 07/08/2010

07/08/2010  TRANSFERRED    TO LAC    ADSEG     FROM IONE

07/02/2010  TRANSFERRED    TO IONE          FROM LAC
                           ENROUTE TO  LAC
                           F/PSYCH & RETRN

06/27/2010  TEMP RELEASE   TO MED  FROM LAC     CUSTODY: CDC/LANCA RET SAME DAY
                           LANCASTER COMMUNITY HOSPITAL/LANCASTER

10/28/2009  CHANGED UNIT   NEW UNIT: ADSEG     OLD UNIT: IV

09/28/2009  TEMP RELEASE   TO MED  FROM LAC     CUSTODY: CDC/LANCA RET SAME DAY
                           LANCASTER COMMUNITY HOSPITAL/LANCASTER

02/09/2009  CHANGED UNIT   NEW UNIT: IV        OLD UNIT: ADSEG

01/10/2009  CHANGED UNIT   NEW UNIT: ADSEG     OLD UNIT: IV


KMHQ1P01: The most recent movement is listed first.
```

OCT 2 1 2010

Date: 7/13/2010 Time: 3:45:21 PM

EXHIBIT (A)(2)

STATE OF CALIFORNIA                                                                DEPARTMENT OF CORRECTIONS
**INMATE PROPERTY INVENTORY**
CDC 1083 Rev (2/00)

| INMATE'S NAME | CDC NUMBER | PRIVILEGE GROUP | INSTITUTION | DATE |
|---|---|---|---|---|
| Turner, L | G-05794 | C-Status | LAC | 6-26-10 |
| PROPERTY INVENTORIED BY | TITLE | REASON FOR INVENTORY | | NUMBER OF BOXES |
| C/o Godine, M | C/o | Management Cell Status | | |

### CANTEEN ITEMS

| | | | |
|---|---|---|---|
| ☐ Cereal | ☐ Cheese | | |
| ☐ Cocoa | ☒ Cookies 1 bag | | |
| ☐ Crackers | ☐ Creamer | | |
| ☐ Dry Meat | ☐ Dry Drink Mix | | |
| ☐ Health Food | ☐ Protein Supplement | | |
| ☐ Vitamins | ☒ Soup 42 green chile | | |
| ☐ Nuts | ☐ Sugar Cubes | | |
| ☐ Tea | ☒ Instant Coffee 1 bag | | |
| ☐ Soda | ☐ Peanut Butter | | |
| ☐ Jelly | ☐ Chips | | |
| ☐ Honey | ☐ Pork Rinds | | |
| ☐ Hot Sauce | | | |

### Stationary Items

| | |
|---|---|
| ☐ Envelopes | ☐ Stamps |
| ☐ Stamped Envelopes | ☐ Greeting Cards |
| ☐ Writing Tablets | ☐ Stationary |
| ☐ Pencil Sharpener | ☐ Pens |
| ☐ Writing Paper | ☐ Pencils |

### Hygiene Items

| | |
|---|---|
| ☐ Razor | ☐ Tweezers |
| ☐ Shaving Cream | ☐ After Shave |
| ☐ Nail Clippers | ☐ Nail Polish |
| ☒ Soap 2 bars | ☐ Soap Dish |
| ☐ Toothpaste | ☐ Mouthwash |
| ☐ Baby Powder | ☐ Talc |
| ☒ Shampoo 1 bag | ☒ Conditioner 1 bag |
| ☐ Hair Grease/Gel | ☐ Deodorant |
| ☐ Perm Kit | ☐ Mirror |
| ☐ Nail Polish | ☐ Foundation |
| ☐ Makeup Ball | ☐ Blush |
| ☐ Mascara | ☐ Other: |

### Tobacco Items

| | |
|---|---|
| ☐ Pipe Tobacco | ☐ Chewing Tobacco |
| ☐ Other Tobacco | ☐ Cigarette Lighter |
| ☐ Tobacco Pouch | ☐ Cigarette Case |
| ☐ Cigarette Roller | ☐ Smoking Pipe |

### Other Items

| | |
|---|---|
| ☐ Immersion Heater | ☐ Tumbler |
| ☐ Bowl | ☐ Can Opener |
| ☐ Shoe Polish | ☐ Extension Cord |
| ☐ Batteries | Size: |

### PERSONAL ITEMS

| | |
|---|---|
| ☐ Photo Albums | ☐ Photos |
| ☐ Cassette Tapes | ☐ CDs |
| ☐ Religious Medallion | ☐ Ring G S |
| ☐ Chain G S | ☐ Earrings G S |
| ☐ Watch G S | ☐ Wallet |
| ☐ Prescription Glasses | ☐ Sunglasses |
| ☐ Handkerchief | ☐ Wash Cloth |
| ☐ Magazines | ☒ Books 4 |
| ☐ Address Book | ☐ Calendar |
| ☐ Shoe Horn | ☐ Shaving Bag |
| ☐ Brush | ☐ Comb |
| ☐ Cosmetic Bag | ☐ Perm Rods |

### Clothing Items

| | |
|---|---|
| ☐ B/B Hat | ☐ Watch Cap |
| ☐ Head Band | ☐ Gloves |
| ☒ Shower Thongs 1 pair | ☐ Slippers |
| ☐ Sweat Pants | ☐ Sweat Shirt |
| ☐ Tennis Shoes | ☐ Raincoat |
| ☐ Thermal Top | ☐ Thermal Pants |
| ☐ Bras | ☐ Panties |
| ☐ Gym Shorts | ☐ Athletic Supporter |
| ☐ Slip | |

### Games

| | |
|---|---|
| ☐ Chess | ☐ Checkers |
| ☐ Dominoes | |

### Other

sweet thing 1 box

Legal work/Mail 2 bags

### Hobby Items

### NON-EXPENDABLE ITEMS

| | |
|---|---|
| ☐ Televisions | ☐ A/C Adapter |

Operational  ☐ Yes   ☐ No

Model: _____

SR/N: _____

| | |
|---|---|
| ☐ CD/Cassette Player | ☐ A/C Adapter |

Operational  ☐ Yes   ☐ No

Model: _____

SR/N: _____

| | |
|---|---|
| ☐ Radio | ☐ A/C Adapter |

Operational  ☐ Yes   ☐ No

Model: _____

SR/N: _____

☐ Musical Instruments

Operational  ☐ Yes   ☐ No

Type: _____

Model: _____

SR/N: _____

☐ Typewriter

Operational  ☐ Yes   ☐ No

Model: _____

SR/N: _____

☐ Fan

Model: _____

| | |
|---|---|
| ☐ Lamp | ☐ Electric Shaver |
| ☐ Blow Dryer | ☐ Hair Dryer |
| ☐ Curling Iron | ☐ Hair Rollers |
| ☐ Pressing Comb | ☐ Calculator |

All nonoperational items shall either be repaired, sent home, or disposed of. Note disposition of the item below:

Attend books disposed of

| Inmate's Signature Noting Disposition | Date |
|---|---|
| L. Turner | 6-26-10 |

---

**TO BE SIGNED UPON INVENTORY OF THE INMATE'S PROPERTY**
The above listed items constitute all of my personal property which I am authorized to retain.

| INMATE'S SIGNATURE: L. Turner | DATE: 6-26-10 |
|---|---|
| RECEIVED IN R&R BY: | INSTITUTION | DATE |

**TO BE SIGNED UPON RETURN TO THE INMATE**
I have received all the above listed personal property or have noted any discrepancies below:

| INMATE'S SIGNATURE: | DATE: |
|---|---|

All property being disposed of per CCR Section 3091 shall be listed on a separate inventory.

Distribution: Original: R&R     Copy: Inventory Officer     Copy: Inmate     Copy: Retained in Property being Shipped/Transported

# DECLARATION:

I, M. Bell, am older than 18 and declare that on June 25, 2010 I personally knew and witnessed CDCR-Lancaster A-4 Building Custody Officer try to force several inmates to give up all there property for ten days, under a punishment being called "Cell Management" status. Mr. Turner who was my ex-cellie and custody was trying to force us back together, knowing we were uncompatible told Mr. Turner he was being placed in Cell Management for refusing packing). Mr. Turner covered his cell door and was cell extracted the next day. The correctional Officers used excessive force spraying can after can of Pepper spray in his cell for about an hour. And then went inside and beat him. I could see because I was housed in B-section top tier like 215 or 216.

I declare under penalty of perjury the above is true and correct, executed on October 23, 2014 at C.S.P. - Sacramento.

Respectfully Submitted,

Declaration

I Orlando Marcel Lewis #V-90279 am above 18 yrs of and am a witness and Mr. Turner's Celly on July 15 and after and this was at Lancaster in A4 cell 113 and 148 and the enteir time we were cellies Custody search cell every week taking our pen fillers, legal books, forms, ect. and it is my belief based on information Custody was doing this because of an incident they had with him on jenne 26.

I Declare under the penalty of perjury and federal/state law that the above is true and correct executed on 8·17·2010

Orlando M. Lewis

Re: Turner v. Sacramento County Jail

USDC-ED No. 2:09-CV-0117-WBS-KJN P

## DECLARATION OF CHARLES WINDHAM

I, Charles Windham, declare:

<u>1.</u> I am a witness on behalf of plaintiff LaFonzo Turner. I'm over 18 years of age and competent. I have knowledge of the facts and/or events set forth herein, and <u>LAC</u>'s patterns, practices.

<u>2.</u> If called as a witness to provide testimony as to any of the facts stated herein, I would do so competently and under oath.

<u>3.</u> Since my arrival at this outrageous state prison ("<u>CSP-LAC</u>" aka "<u>Lancaster</u>") on 10-8-09, I've encountered nothing but difficulty, hardship and meaning<u>less</u> prevarication/excuses/ deliberate indifference from Lancaster prison staff, officials and, specifically, its law librarian (Linda Rowe) and Library Tech Assistants (<u>LTA's</u>) in terms of <u>attempting to gain access</u> to the prison law libraries and their <u>inadequate</u> legal materials and lack of basic (or provision of) stationary supplies required by inmates in order to access the courts.

<u>4.</u> I have filed <u>numerous</u> prison <u>grievances</u> concerning the foregoing <u>to no avail</u>. And LAC guards have de-
stroyed them, too. [1] without response

<u>5.</u> On 2-10-10, I was placed into the virtual hellhole known as "A4-ASU". The identical <u>inadequate</u> law library facilities/materials/supplies, etc., protocol, policy & procedures were being used by <u>A4-ASU</u>, and, <u>administrative</u> upper level/echelon <u>executive</u>, <u>staff/officials</u> to deliberately deprive and deny A4 inmates meaningful access to the "courts and its inadequate "<u>law library</u>" (which is four (4) wire cages and about half-a-dozen hornbooks; some of which are outdated).

6. On several occasions, I've observed plaintiff being abused physically and mentally by rogue, out-of-control, A4 prison guards and their twisted supervisors and superiors, while I've been held in A4 with him. I've seen them confiscate <u>all</u> of his Legal and Personal Property without sufficient justification; beat him up; pepper spray him; instigate incidents in order to abuse him; taunt him; deprive him of his limited privileges, and much more. They have <u>done the same to me</u> for almost a year now.

7. <del>6.</del> The majority of my state and federal court <u>actions</u> have been <u>DISMISSED</u> as a direct result of the ongoing unabated deliberate unlawful interference, obstruction, indifference, confiscation, destruction & withholding of court materials/records/ evidence/briefs/personally-owned law books & manuals, etc., by LAC and |—27  A4 prison officials.

<u>8.</u>  Attached as <u>Exhibit "A"</u> is a true and correct copy of part of the court actions that have been <u>DISMISSED</u> due to outrageous misconduct by LAC & A4 prison officials, to my detriment.

<u>9.</u>  The three (3) [out of <u>10</u>] remaining actions are each dangerously close to DISMISSAL also: ☑

(a) <u>Windham v. Cate</u> [USDC-CD No. EDCV-09-2340-RSWL-(JEM), a $2254 Federal Habeas Action, in which I've <u>several</u> times <u>documented</u> & argued to Judges LUM, LEW, and McDERMOTT the lack of meaningful access (by LAC/A4) and inadequate law library facilities, etc.; <u>indeed</u>! it is, again, "<u>at-issue</u>" at this very <u>moment</u> in Los Angeles right now, <u>inter alia</u>];

(b) <u>Windham v. Doyle/Borden et al.</u> [USDC-CD No. EDCV-07-779-RSWL-(JEM), a $1983 Federal Civil Rights action against Police/Sheriffs]; <u>and</u>

(c) <u>Windham v. Kellogg</u> [Riv.Cnty.Sup.Ct. No. RIC-53 90 ̶5̶3̶ 69, a Business-related BREACH OF CONTRACT law-suit (seeking half a million dollars compensatory and punitive damages).   under these conditions, RIC-53 90 69.

<u>10.</u>  Like plaintiff, I've requested court appointment of counsel (in the above cases) as it is virtually <u>impossible</u>, and wholly <u>unreasonable</u>, for inmate litigants to litigate without court/professional legal assistance. Like plaintiff, the courts continue deny these motions we submit to them.

<p style="text-align:center">—3—</p>

11. I've suffered and sustained prejudice and actual injury due to deliberate calculated LAC & A4 prison officials' ongoing misconduct & violation of clearly-established laws and plaintiff Turner has too.

12. Attached as Exhibit "B" is a true and correct copy of part of the USDC-CD (Los Angeles Fed. Ct.) Civil Case Docket (#09-2340) in my pending 28 USC §2254 Fed. Habeas Corpus case. Although I've raised the foregoing misconduct/law violations' issues before the Court on many occasions over the past year, many of the supporting documents & declarations (sworn under oath)[e.g., Motion for TRO/PI; sealed document requests, etc.] were mailed to the Court (and filed) during the months of APRIL & MAY 2010 (see e.g., Exh. B "circled" entries). In addition, on or about 12-29-09, I submitted sworn declarations (in support of my §2254 Petition & Attendant Motions) to the USDC-CD, which were subsequently filed(see e.g., Docket entries #1 thru #7, #28, #41, etc.), that speak of the prison officials' (LAC) misconduct depriving me of court/law library access, etc., at that time.

13. The LAC A4-ASU "law library", as indicated, is merely 4 wire cages and a few hornbooks. There are no Hewlett-Packard computer terminals/roving stations (on a cart)[that have updated WestLaw Premise® 4.0 application systems (& Gilmore-mandated materials, etc) pre-loaded into them via West's CD's]. [-4-] Now, it should be

be noted that other Calif. State Prisons' Ad-Seg Units ("ASU's"), such as Level 4 Maximum Security Prisons (like Kern Valley State Prison <u>and</u> Salinas Valley State Prison), <u>do have</u> the <u>identical</u> terminals (roving carts with the <u>identical</u> @ Premise® Legal Software programs/materials available for use by their "ASU" inmates. These are <u>the same</u> H-P/Premise® Terminals used by the Mainline General Population Inmates. Now, <u>LAC</u> has them too; only the facility <u>non-ASU</u> inmates get them (in "theory," anyway). <u>LAC's</u> <u>ASU</u> inmates get wire cages and a few <u>hornbooks</u>. Not even adequate "Shepardizing" or photocopying services are provided to A4-ASU inmates requesting or needing them. And there is no Inter-Library Loan (<u>ILL</u>) program (e.g., to the state or county law libraries).

<u>14A.</u> My experiences with both <u>LAC and A4-ASU</u> remain that these prison officials are dirty, lawless, rogues, spiteful, deliberately indifferent, extremely callous and punitive, and are polished & accomplished <u>liars</u> that easily 'dupe or fool "<u>outsiders</u>" such as oversight agencies (to include the state & federal courts). They've been successfully doing it for years here at Lancaster Prison.

<u>14B.</u> During the first quarter of 2010, Judge Mc Dermott issued an order requiring the Respondents & the Attorney General (in San Diego; DAG NIKI SHAFFER) to provide me with my overdue @ LEGAL MATERIALS, LAW BOOKS, DRAFTING MATERIALS, MANILA ENVELOPES, ETC.,

-5-

But, LAC R&R and A4-ASU prison officials still only issued me only part (about one-third, 1/3) of my legal property [on or about 5-11-10] (c/o MANZANARES). Plus, LAC, A4-ASU, and CDCR have continually wrongfully lost, confiscated, destroyed and withheld my legal (and other) property without explanation or compensation. They do what they want, whenever they want, un-abated.

15. On at least five (5) occasions, prison officials used a contrived, unlawful & unconstitutional "Mgmt. Cell" status [for 3-4 weeks duration each occasion] designation the intended & designed to halt and prejudice my complaint & litigation activities [during the A4-ASU period 2/10 to present]. I know they've done the same to plaintiff Turner on several occasions too.

16. I've also filed motions to access my legal materials; TRO/PI's; grievances; state habeas petitions; oversight agency written and other complaints (e.g., PLO, OIA, OIG, Ombudsman's Office, ACLU, etc.). And I've requested copies from these agencies (to include as evidentiary exhibits in support of this declaration) yet nothing has arrived to date.

17. The CDCR, LAC and A4-ASU "procedures in place" for plaintiffs/petitioners to obtain access (and timely provision of) to their legal materials & obtain legal research are "theoretical" and "subjective" here; flat-out subterfuge!

18. I have submitted multiple ASU property request forms, again, to no avail. I know that plaintiff has also done so, to no avail.   —[a—

19. We are not ___ ___ ___ ___ ___ have an entrenched underground policy to _proactively thwart and obstruct_ inmate litigation and _inmate grievances._ _All levels_ of staff are expected to take part in the furtherance of these oppressive and reprehensible policies — from the warden down to a lowly cook or clerical worker. And _they do._

20. On or about 9-29-10, _and consecutively_ on or about 10-13-10, thru November 2010, Prison officials M.A. BUECHTER, RICHARD HARRIS, R. FRANKLIN, MORENO et al. ordered and confiscated _all_ of my Legal (and other) materials/Property and _refused_ to return it and _refused to respond_ to multiple grievances on it; R&R P. BOWEN et al. did likewise. (H.T. BROWN also with BUECHTER & MORENO, POLLARD and PUCKETT, ENRIQUEZ, RAMOS & MORAN).

21. The LAC Litigation Coordinator back in MARCH 2010 was Curtis Carson, a CC-II. LAC has since gotten rid of Carson and has a new Litigation Coordinator, whom I understand is a female named Renee.

I declare under penalty of perjury under the laws of the USA the foregoing is true and correct (and per 28 _USC_ Section 1746).

Executed on January 12, 2011, at Lancaster State Prison in Lancaster, Calif.

By: _Charles Windham_
CHARLES WINDHAM
Declarant/Affiant

P. [ -7- ]

## DECLARATION

I Jamar Cornell Nunally, am over 18 years of age, and or NOT a party to the herein action, yet was or a witness and victum my self to the abuse and neglect inflicted by CSP/LAC officers prior to and on June 26, 2010.

Specifically, during the time period in question I was housed in adminestrative segregation, when I witnessed Csp/Lac staff - Cell extract Mr. Turner. Once Mr. Turner was removed from his cell, I personally observed A-1 Facility A building 4 staff begin destroying I/m turners personal property. I have personal knowledge of them tearing up books, pouring out lotion bottles onto the floor Then throwing stacks of his legal documents onto the floor taking their feet and smearing said documents into the lotion. These acts were followed by staff members throwing Mr. Turners legal documents and personal items into trash bags.

Upon Mr. Turners return June 27, 2010 he was consistently denied access to his property and and was also denied access to documents i.e. 602 inmate appeals, necssary to contest the denial of access to said property, and EXCESSIVE FORCE

Further More, I personally was denied access to inmate appeal documents, during my stay in

EXHIBIT (A) (4)

**Left form:**

STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

# SEARCH RECORD
CDC 1450 (7/91)

| DATE 8-23-10 | DAY Mon. | TIME 0945 |
|---|---|---|

| CDC # V-90279 | NAME Lewis |
|---|---|

| CDC # G05794 | NAME Turner |
|---|---|

LOCATION OF SEARCH   113

ON THIS DATE A SEARCH WAS CONDUCTED AND THE FOLLOWING ITEMS WERE CONFISCATED:

(A) Excess Altered Linens
(B) Burn Paper / Plastic
(C) Extra Apples / Fish Lines
(D) Trash / Light cover

THE CONTRABAND WAS:
☒ DISPOSED OF PER INSTITUTIONAL PROCEDURES
☐ TURNED OVER TO RECEIVING & RELEASE
☐ SECURED BY THE SECURITY SQUAD FOR DISPOSITION AND/OR EVIDENCE
☐ OTHER (EXPLAIN): _____

ISSUED:
☒ WARNING (COUNSELING)
☐ CDC 128
☐ CDC 115
NOT DETERMINED AT THIS TIME

THIS DOCUMENT IS YOUR RECEIPT.

CERTAIN CONTRABAND CAN BE SENT HOME AT YOUR EXPENSE. YOU MUST SUBMIT THREE (3) COMPLETED (CDC-193) INMATE TRUST WITHDRAWAL FORMS TO R&R PROPERTY OFFICER WITHIN THREE DAYS OF THIS DATE. FAILURE TO DO SO WILL RESULT IN DISPOSAL OF CONFISCATED ITEMS.

OFFICER'S SIGNATURE _____

PRINTED NAME  C/O MORAN / ENRIQUEZ

POSITION # _____

WHITE- R&R, YELLOW-INMATE, PINK-INMATE, GOLD-RETAIN  IN BOOK

**Right form:**

STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

# SEARCH RECORD
CDC 1450 (7/91)

| DATE 8-17-10 | DAY Tues | TIME 945 |
|---|---|---|

| CDC # G-05794 | NAME Turner |
|---|---|

| CDC # V-90279 | NAME Lewis |
|---|---|

LOCATION OF SEARCH   A-4  113

ON THIS DATE A SEARCH WAS CONDUCTED AND THE FOLLOWING ITEMS WERE CONFISCATED:

Ex State Pen Files
Torn Pages out of
State Book Law Library
2 Books

THE CONTRABAND WAS:
☒ DISPOSED OF PER INSTITUTIONAL PROCEDURES
☐ TURNED OVER TO RECEIVING & RELEASE
☐ SECURED BY THE SECURITY SQUAD FOR DISPOSITION AND/OR EVIDENCE
☐ OTHER (EXPLAIN): _____

ISSUED:
☒ WARNING (COUNSELING)
☐ CDC 128
☐ CDC 115
NOT DETERMINED AT THIS TIME

THIS DOCUMENT IS YOUR RECEIPT.

CERTAIN CONTRABAND CAN BE SENT HOME AT YOUR EXPENSE. YOU MUST SUBMIT THREE (3) COMPLETED (CDC-193) INMATE TRUST WITHDRAWAL FORMS TO R&R PROPERTY OFFICER WITHIN THREE DAYS OF THIS DATE. FAILURE TO DO SO WILL RESULT IN DISPOSAL OF CONFISCATED ITEMS.

OFFICER'S SIGNATURE _____

PRINTED NAME  Bell Puckett

POSITION #  A-4  S/O

WHITE- R&R, YELLOW-INMATE, PINK-INMATE, GOLD-RETAIN  IN BOOK

EXHIBIT (A #175)

## CANTEEN LIST

### 2010

| INMATE NAME | | CDC # | | DRAW | | CELL# |
|---|---|---|---|---|---|---|
| | | | | | | |

\* All sales are final – No returns or refunds – No warranties – No exchanges – Only current list accepted.  Prices, sizes and brands are subject to change without notice.  Ad/Seg C/O receives and signs for your draws.  Check merchandise upon receipt from your Ad/Seg C/O.

(NI) New Item (PI) Price Increase  (PD) Price Decrease  (D) Discontinued Stock when sold out

| POSTAGE/ENVELOPES PAPER/GREETING CARDS (LIMIT 5) | | COOKIES (NO LIMIT) SNACK ITEMS  (NO LIMIT) | |
|---|---|---|---|
| LEGAL TABLET       (Limit 1) | 1.50 | CHOCOLATE CHIP | 1.25 |
| N900 STAMPS (PI)   (Limit 40) | 0.42 | DUPLEX COOKIES | 1.35 |
| N912 ENVELOPES  (Limit 40) | 0.03 | HONEY BUNS | 0.80 |
| LOVE | 1.00 | RASBRY SHORTBREAD COOKIES | 1.35 |
| FRIENDSHIP | 1.00 | MOON PIES | 0.60 |
| BIRTHDAY | 1.00 | CINNAMON ROLLS | 0.80 |
| ANNIVERSARY | 1.00 | VANILLA CREAM COOKIES | 1.35 |
| (NI) SECURITY PEN  (Limit 2) | 0.07 | (NI) GOLF PENCIL  (Limit 2) | 0.05 |

PEN'S DON'T ALL WORK
ONLY GET TO STORE EVERY 30 DAYS

| DENTAL MISCELLANEOUS ITEMS | | SOAP/BODY CARE | |
|---|---|---|---|
| TOOTHPASTE  COLGATE    (Limit 3) | 2.40 | DIAL ANTIBACTERIAL     (Limit 2) | 0.75 |
| SHOWER SHOES        (1 for 1) | 1.20 | IRISH SPRING              (Limit 2) | 0.70 |
| V05 SHAMPOO        (Limit 1) | 1.80 | COCO BUTTER LOTION   (Limit 1) | 1.20 |
| V05 HAIR CONDITIONER (Limit 1) | 1.80 | MUTLI VITAMINS         (Limit 1) | 2.55 |
| WASH CLOTH          (1 for 1) | 0.50 | MENNEN STICK          (Limit 2) | 3.00 |
| (NI) DENTAL FLOSS LOOPS (Limit 1) | 2.25 | PALM BRUSH              (1 for 1) | 0.50 |

| DRY DRINKS (No Limit) | | DRY MEATS (No Limit) | CHIPS/CRACKERS (No Limit) | |
|---|---|---|---|---|
| SPICY SAUSAGE | 1.80 | | TANG FRUIT PUNCH | 0.50 |
| REG. SAUSAGE | 1.80 | | COCOA | 3.35 |
| INSTANT OATMEAL | 2.45 | | BRADFORD COFFEE | 2.70 |
| BEEF NOODLES | 0.25 | | FOLGERS COFFEE | 7.25 |
| CHILI RAMEN NOODLES | 0.25 | | TEA BAGS | 2.95 |
| ORIENTAL RAMEN NOODLES | 0.25 | | GO LIGHTLY CANDY (LIMIT 1 lb) | 1.80 |
| BBQ CHIPS | 2.00 | | SNICKERS W/ALMONDS | 0.90 |
| CHILI CORN CHIPS | 1.65 | | SNICKERS | 0.90 |
| PORK SKINS (HOT/SPICY) | 1.65 | | MILKY WAY | 0.90 |
| JALAPENO CHIPS | 2.00 | | BUTTER FINGER | 0.90 |
| NACHO CHIPS | 2.50 | | CHEESE CRACKERS | 2.15 |
| RAISIN BRAIN CEREAL | 4.80 | | SALTINE CRACKERS | 2.00 |
| COLOSSAL CRUNCH CEREAL | 3.65 | | ARTIFICIAL SWEETENER | 1.50 |
| FROSTED FLAKES CEREAL | 4.80 | | OAT/HONEY GRANOLA BAR | 0.60 |
| BUTTER POPCORN | 1.30 | | P/NUT GRANOLA BAR | 0.60 |
| PEANUTS | 2.05 | | | |

| MAXIMUM MONTHLY DRAW $55.00 | FIRST DRAW | 00-33 |
|---|---|---|
| | SECOND DRAW | 34-66 |
| | THIRD DRAW | 67-99 |

INMATES WILL TURN IN THEIR CANTEEN ORDER LIST AND DUCATS TO THE HOUSING UNIT OFFICER FOE  SUBMISSION TO THE CANTEEN OR TRUST OFFICE

(ALL ITEMS ARE PER D.O.M. 54030.17, REVISED MAY 2010)

B. M. CASH

EXHIBIT (B) 7

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*Wednesday, June 14, 2017*

*TURNER, G05794*
*C  006 1122001LP*

PROPERTY, , 06/09/2017
Log Number: SVSP-L-17-03289
**(Note: Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies.)**

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(7). Your appeal is missing necessary supporting documents as established in CCR 3084.3. All documents must be legible (If necessary, you may obtain copy(ies) of requested documents by sending a request with a signed trust withdrawal form to your assigned counselor). Your appeal is missing:*

*Attach a copy of your 1083.*

V. Lomeli, Appeals Coordinator
J. Magdaleno
E. Medina, Appeals Coordinator
C. Martella, AGPA
Appeals Coordinator
SVSP

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use only the lines provided below.

THIS APPEAL IS BEING SENT BACK IN BECAUSE I JUST SENT
ANOTHER APPEAL ADDRESSING THE SAME SUBJECT, CAN YOU PLEASE
APPLY THIS LOGIC NUMBER OR VOID/CANCELL THE OTHER APPEAL
AND ATTACH THE SUPPORTING DOCUMENTS FROM THE OTHER APPEAL TO THIS ONE. THANK YOU

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

EXHIBIT (B) 2

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*Wednesday, July 12, 2017*

*TURNER, G05794*
*C  006 112200ILP*

PROGRAM, Yard Scheduling, 07/11/2017
Log Number: SVSP-L-17-04048
**(Note: Log numbers are assigned to all appeals for tracking purposes. Your appeal is
subject to cancellation for failure to correct noted deficiencies.)**

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15,
Section (CCR) 3084.6(b)(13).  The appeal is incomplete.  Your appeal is being returned for the
following reason(s):*

*You must complete section "B" of your appeal.*

☐   V. Lomeli, Appeals Coordinator
☐   J. Magdaleno
☐   E. Medina, Appeals Coordinator
☐   C. Martella, AGPA
Appeals Coordinator
SVSP

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

_____

_____

_____

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and
resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to
CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a
separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if
the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

SVSP

EXHIBIT (B) 3

RE: Screening at the FIRST Level

*Thursday, July 6, 2017*

*TURNER, G05794*
*C 006 1122001LP*

PROPERTY, Replacement/Repair, 07/05/2017
Log Number: LAC-X-17-03197
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies.</u>)**

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(2). The appeal duplicates a previous appeal upon which a decision has been rendered or is pending.*

*THIS IS A DUPLICATE APPEAL TO LAC-X-17-03161 THAT WAS ASSIGNED AT THE FLR, PLEASE ALLOW TIME FOR THE FLR TO BE COMPLETED ON LAC-X-17-03161.*

☐   K. Estrada, AGPA
☐   G. Stratman, Office Tech
☐   M. Fordham, CCII AC
☐   J. Curiel, CCII AC
Appeals Coordinator
LAC

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

_____

_____

_____

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

EXHIBIT (B) 4

*EMERGENCY APPEAL ON ACCESS TO COURTS / LOWER PRINCIPAL* *

## INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region ___ Log No. ___ Category ___

1. _____  1. _____
2. _____  2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | | UNIT/ROOM NUMBER |
|------|--------|-----------|--|------------------|
| TURNER LAFONZO | G-05794 | '' | '' | A4-141 |

A. Describe Problem: ON THE WEEK OF THE 18th L.T.A MR. D DID NOT MAKE ANY ROUNDS OR PROVIDE ANY L/L SERVICES I CALLED MR. D FOR OVER 20 MINUTES, & HE REFUSED TO REPLY. ON 1-24-11 MR. PASSED OUT PLU REQUEST & FILLED ONE OUT GIVES 3 ACTIVE CASES (ONLY REQUIREMENT FOR PLU) & ON 1-25 MR.D RAN LAW LIBRARY & AT 12:30 PM CAME TO MY CELL & STATED CUSTODY SAID THEY WHERE NOT PULLING OUT THE NEXT GROUP OF I/M's FOR CASE TIME CUZ ALL WE WHERE GONNA DO IS TALK. & I ASKED MR. D TO GET THE SGT. & WHO WAS THIS C/O THAT STATED HE WAS NOT PULLING US. MR.D STATED SOME BALD WHITE GUY & I TOLD HIM THEY CAN

If you need more space, attach one additional sheet.
( SEE ATTACHED )

B. Action Requested: 1. FOR MY DOC'S TO BE RETURNED & A IMMEDIATE TRANS-FER TO A PRISON WITH A ADEQUATE L/L & L.T.A'S 2# FURTHER TRAINING & A REPLACEMENT L.T.A BETTER EQUIPT TO DO THE JOB. 3# OR PROVIDED MATERIALS & SUPPLIES ENVELOPE PEN'S ETC TO BE GIVEN ACCESS TO THE COURT, & ALL RECORDS OF PLU I/M

Inmate/Parolee Signature: _LaFonzo R. Turner_   Date Submitted: 1-30-11

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____  Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____  Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

FEB 0 4 2011

FEB 0 4 2011

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

EXHIBIT(B) 5

RE: Screening at the INFORMAL Level

*January 12, 2011*

**TURNER, G05794**
*FAB400000000141U*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have not included evidence of an attempt to resolve the problem at the Informal Level. The Informal Level of Review is waived for appeals of classification actions; serious disciplinaries; CSR actions; departmental regulations, policies or operational procedures; staff complaints; and exceptional circumstances as defined in CCR 3084.7.*

*FORWARD A GA 22 TO R & R.*

*CCR, TITLE 15 3084.3(5) THE APPEALS PROCESS REQUIRES THAT YOU PROVE AUTHORIZED POSSESSION OF THE ITEMS BEING APPEALED.*

LATEST INCIDENT
PROPERTY DENIED
BECAUSE C/O HESS
REFUSED TO ALLOW ME
TO VIEW THE 1 BAG HE
BROUGHT WHICH WAS LESS

J. Curiel/R. Thomas
Appeals Coordinator/Appeals Supervisor
Correctional Counselor II
California State Prison - Los Angeles County

NOTE: Please make the changes or corrections requested and resubmit the original appeal within fifteen working days. Once an appeal has been cancelled that appeal may not be resubmitted. However a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

THAN MY
ALLOWABLE
PROPERTY
IN AD-SEG.

PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

EXHIBIT (E) 6

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*January 30, 2012*

*FROM 22 HAVE NOT BEEN Responded To WITHIN THE TIME LIMITS ASWELL A RIGHTS & RESPONSIBILITY FORM HAS BEEN ATTACHED*

*TURNER, G05794*
*FDB500000000106L*

**Received Date:** 01/27/2012
**Appeal Issue:** *PROPERTY Appeal SubIssue: Other*
Log Number: LAC-D-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

**Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(7). Your appeal is missing necessary supporting documents as established in CCR 3084.3. All documents must be legible (If necessary, you may obtain copy(ies) of requested documents by sending a request with a signed trust withdrawal form to your assigned counselor). Your appeal is missing:**

**SUBMIT A CDCR 22 FORM DIRECTLY TO R & R FOR RESPONSE. THIS CDCR 602 CANNOT BE UTILIZED UNTIL THE CDCR 22 FORM HAS BEEN EXHAUSTED IN ITS ENTIRETY.**

*MR. CURIEL THIS APPEAL IS NOW BEING FILED AS A STAFF MISCONDUCT ON LT. HUGHES A RIGHTS & RESPONSIBILITY FORM HAS BEEN ATTACHED ASWELL THERE IS NO NEED FOR A 22 FORM. FURTHERMORE THERE IS NO CCR 3084.6(B)(7) WHEREFORE YOUR 695 IS UNLAWFULL AND IF THIS APPEAL IS NOT PROCESSED THAT ACTION WILL BE TAKEN AS MALICIOUS*

CCII J. Curiel
Appeals Coordinator
California State Prison – Los Angeles County

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

*1/1/12*

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

EXHIBIT (B) 7

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

*November 30, 2010*

# 133

**TURNER, G05794**
*FAB400000000148L*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Your property appeal is incomplete.  You must attach legible copies of all documents relative to ownership and loss/destruction of the property.  For example: the Property Inventory Sheet, the CDC 143, Property Transfer Receipt, the cell search slip, and receipt(s).*

*CDCR TITLE 15 3084.3(5) THE APPEALS PROCESS REQUIRES THAT YOU PROVE AUTHORIZED POSSESSION OF THE ITEMS BEING APPEALED.*

P.S. ALL OF APPELLANTS LAW BOOKS HAVE BEEN DESTROYED & I WANT TO BE COMPENSATED

I HAVE INCLOSED MY PROPERTY INVENTORY SHEET & IT IS ALSO MY CELL SEARCH SLIP & FOR ALL PERSONAL LAW BOOKS THEY ALL HAD THERE RECEIPT(S) TAPED INSIDE THEM. FURTHERMORE I HAVE APPEAL THIS ISSUE 3 TO 4 TIMES PRIOR & NON OF MY APPEAL HAVE BEEN RETURN & ONE'S THAT HAVE WHERE SCREENED OUT & TOLD NOT FILE AGAIN OR IT WOULD NOT BE RETURNED MY 602'S HAVE BEEN ON SGT. FRANKLIN, C/O GORDINA ASWELL I/M REQUEST HAVE BEEN SENT TO R&R SGT. BOWEN & I HAVE EVEN WROTE A LETTER TO THE WARDEN VIA CCI BERKQUEST NOV. 29, 2010 AT ICC.

J. Curiel/R. Thomas
Appeals Coordinator/Appeals Supervisor
Correctional Counselor II
California State Prison - Los Angeles County

NOTE: Please make the changes or corrections requested and resubmit the original appeal within fifteen working days. Once an appeal has been cancelled that appeal may not be resubmitted. However a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

I AM STILL BEING DENIED ACCESS TO THE COURTS.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*February 04, 2011*

**TURNER, G05794**
*FAB400000000141U*

LEGAL, Copies, 02/01/2011
Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals)

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(3). You have exceeded the allowable number of appeals filed in a 14 calendar day period pursuant to CCR 3084.1(f).*

*Pursuant to CCR 3084.4 you are advised that this appeal is considered misuse or abuse of the appeals process. Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).*

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(14). You have not submitted your appeal on the departmentally approved appeal forms.*

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(8). Your appeal involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact. You may resubmit the unrelated issues separately using separate appeals. Be advised that you are still subject to the submission of one non-emergency appeal every 14 calendar days.*

Appeals Coordinator
California State Prison - Los Angeles County

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

EXHIBIT (B) 9

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

BRENDA M. CASH

RE: Screening at the SECOND Level

148

*August 18, 2010*

**TURNER, G05794**
*FAB400000000113L*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

***You may not submit an appeal on behalf of another inmate or visitor.***

***YOU MAY ONLY SUBMIT 1 NON EMERGENCY APPEAL PER 7 DAY CALENDAR PERIOD.***

***YOU NEED TO ADD ADDITIONAL INFORMATION SUCH AS NAMES, DATES, TIMES, EVENTS, BE SPECIFIC. LAC IS UNABLE TO PROCESS GENERALITIES.***

***DO NOT RESUBMIT UNLESS YOU FOLLOW MY INSTRUCTIONS. FAILURE TO DO SO WILL RESULT IN THE CANCELLATION OF THIS APPEAL AND IT WILL NOT BE RETURNED TO YOU.***

J. Curiel/R. Thomas
Appeals Coordinator/Appeals Supervisor
Correctional Counselor II
California State Prison - Los Angeles County

NOTE: Please make the changes or corrections requested and resubmit the original appeal within fifteen working days. Once an appeal has been cancelled that appeal may not be resubmitted. However a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

EXHIBIT (B) 10

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*February 3, 2010*

**TURNER, G05794**
*FAB500000000129L*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You are not authorized to BYPASS any level or respond in STAFF RESPONSE. Please resubmit on a new original CDC Form 602. Do not resubmit this appeal unless you follow my instructions. Failure to do so may result in cancellation of this appeal and it will not be returned to you.*

*REMOVE REQUEST IN SECTION D.*

*RECORDS INDICATE THAT YOU HAVE REMOVED THE CDC 695 AND RESUBMITTED THIS APPEAL, THAT ACT IS DEEMED AS ONE OF NON-COOPERATION AND FOR THAT REASON PER CCR 3084.4.(D) THIS APPEAL IS SCREENED OUT. REATTACH CDC 695.*

*DO NOT RESUBMIT UNLESS YOU FOLLOW MY INSTRUCTIONS. FAILURE TO DO SO WILL RESULT IN THE CANCELLATION OF THIS APPEAL AND IT WILL NOT BE RETURNED TO YOU.*

J. Curiel/R. Thomas

NOTE: Please make the changes or corrections requested and resubmit the original appeal within fifteen working days. Once an appeal has been cancelled that appeal may not be resubmitted. However a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

FEB 24 2010

---
**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**
---

EXHIBIT (B)

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

*December 16, 2010*

**TURNER, G05794**
*FAB40000000~~133L~~ 141*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Your issue is unclear. You need to add additional information such as names, times, dates, events, etc. be specific. LAC is unable to process generalities.*

**ISSUE UNCLEAR, YOU NEED TO ADD INFORMATION TO CLARIFY YOUR REQUEST.**

**WHAT ITEMS ARE YOU MISSING?**

P.S. ALL DATES, NAMES, TIMES, EVENTS, ETC. HAVE BEEN GIVEN YOU ARE PURPOSELY NOT PROCESSING THIS APPEAL

J. Curiel/R. Thomas
Appeals Coordinator/Appeals Supervisor
Correctional Counselor II
California State Prison - Los Angeles County

SGT. R. FRANKLIN WAS GIVEN A INMATE REQUEST ON MY PROPERTY ISSUE ON 11-23-10 & ON 8-29-10 MY ADMINISTRATIVE SEGREGATION PERSONAL PROPERTY REQUEST WAS SUBMITTED & DENIED (SEE ALL ATTACHED DOC'S & EVIDENCE) I AM BEING DENIED ACCESS TO THE COURTS & I HAVE TWO TO THREE ACTIVE LEGAL ACTIONS GOING RIGHT NOW & THIS HAS CAUSED APPELLANT TO SUFFER INJURY ON HIS CASES MY ISSUE IS VERY CLEAR THE RETURN OF MY PERSONAL & LEGAL PROPERTY. I SPOKE TO YOU PERSONALLY ON/FOR ABOUT DEC, 1, 2010 & YOU SAID YOU WOULD RETURN & TALK WITH ME FURTHER BUT YOU ...

P/D 12-18-10

NOTE: Please make the changes or corrections requested and resubmit the original appeal within fifteen working days. Once an appeal has been cancelled that appeal may not be resubmitted. However a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

| **PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE** |

EXHIBIT (B)

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

*October 26, 2010*

**TURNER, G05794**
*FAB400000000148L*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

***You may only submit one (1) non-emergency appeal within a seven-calendar day period.***

***REFILE IN 7 DAYS.***

J. Curiel/R. Thomas
Appeals Coordinator/Appeals Supervisor
Correctional Counselor II
California State Prison - Los Angeles County

NOTE: Please make the changes or corrections requested and resubmit the original appeal within
      fifteen working days. Once an appeal has been cancelled that appeal may not be
      resubmitted. However a separate appeal can be filed on the cancellation decision. The
      original appeal may only be resubmitted if the appeal on the cancellation decision is
      granted.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

---

MR. CURIEL I KNOW I Submitted 115 602 ON 1/17/10 & you HAVE it STAMPED 1/21/10 wich MEANS you HOLD my Appeal For 10 DAYS & I KNOW WHY! BECause I submitted FOUR 602 That WEEK NOT KNOWING ONLY 1 NONE emegency Appeal can Be submitted A week, BUT THAT DOES NOT GIVE you A Right TO set on my appeal & STAMP Them 10 DAYS Letter & SCREEN Them OUT AS Time Lapse. YOU ARE CIRCUMVENTING The Appeal System & USEING Retaliation For me Filing multiple 602 By SCREENING OUT Appeals illegaly & unjustifably All Appeals DATED 1/21/10 TRUST ACCOUNT 1/17/10 115 Appeal 1/24/10 ICC 1/1/10 H.C. 602 1/24/10 ADA Appeal SHould HAVE Been RETURNED AS NOT Emergency So I/m could Have Had opportunity TO File Them BY PRORETY & Time CONSTRAINTS.

RE: Screening at the SECOND Level

*February 3, 2010*

***TURNER**, G05794*
*FAB500000000129L*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

***There has been too great a TIME LAPSE between when the action or decision occurred and when you filed your appeal or between the time the appeal was responded to and the re-submission of this appeal. Time limits expired per CCR 3084.6(c). You need to provide an explaination as to why you violated time constraints. Do not re-submit this appeal unless you follow my instructions; failure to do so may result in cancellation of this appeal.***

***EXPLAIN TIME CONSTRAINT VIOLATIONS.***

[I HAVE EXPLAINED IN DETAIL PLEASE PROCESS THIS Appeal AS I HAVE COMPLIED with INSTRUCTION]

MR. CURIEL
I DID SUMIT this APPEAL within THE TIME CONSTRAINTS possible FOR ME TO ObTAIN COPIES FROM A LAW LIBRARY UNTO WITCH I ONLY HAVE A ONCE A WEEK SHOT & STILL AM NOT GARANTEE THE ACCESS TO THE COURTS BECause LAW LIBRARIAN IS SO OVER BURDEN THAT SHE CONTINUESLY CAN'T GET THINGS DONE FOR All INMATES IN A5 SO THE 2 TO 3 DAY ARE DUE TO THAT &/OR THE MAILING FREEZ FROM FRI TO SUNDAY THIS IS MY EXPLAINATION PLEASE PROCEED Appeal AS REQUIRED. THERE IS NOTHING IN TITLE 15 REQUIRING YOU TO CANCEL MY APPEAL ONCE I HAVE EXPLAINED TIME LAPSE AS REQUESTED.

J. Curiel/R. Thomas
Appeals Coordinator/Appeals Supervisor
Correctional Counselor II
California State Prison - Los Angeles County

NOTE: Please make the changes or corrections requested and resubmit the original appeal within fifteen working days. Once an appeal has been cancelled that appeal may not be resubmitted. However a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*March 9, 2010*

*TURNER, G05794*
*FAB500000000129L*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*This appeal was forwarded to the Hiring Authority and it was determined that this appeal does not meet the requirements for assignment as a staff complaint. Staff complaints shall not be combined with other appeal issues, per Administrative Bulletin 05/03.*

3/12/10

*YOU'VE NOT PROVIDED ANY EVIDENCE THAT STAFF WAS INVOLVED IN MISCONDUCT.* YOUR SCREENING OF THIS APPEAL HAS SOLIDIFIED MY EVERY ACCUSATION OF RETALIATORY BIAS MISCONDUCT INTO A MATERIAL FACT YOUR POSITION AS APPEALS COORDINATOR IS TO HELP & ASSIST IN THE PROCESSING OF APPEALS. YET YOU CAN NOT EVEN ANSWER AN APPEAL ON YOURSELF TO RECTIFY A ISSUE AT AN ADMINISTRATION LEVEL & INSTEAD, IT IS THIS VERY KIND OF CIVIL RIGHTS VIOLATION WHICH PREJUDICE'S INMATE'S

J. Curiel/R. Thomas CAUSES NUMMEROUS 1983 SUIT TO BE FILED THIS UNCHECKE
Appeals Coordinator/Appeals Supervisor MIS - CONDUCT IS A CANCER OF OUR JUDICIAL
Correctional Counselor II AND NOW TODAY I UNDERSTAND WHY THE APPEALS ARE GREEN
California State Prison - Los Angeles County WALL A BETTER SLAPP IN THE FACE THAT
AMOUNTS TO NOTHING LESS THEN 'ULTIMATE POWER CORRUPTS'. THE GREEN
WALL STANDS FOR SILENCE & CORRUPTION. YOU MY APPEAL WAS FORWARDED TO
THE HIGHER UPS BUT NAME NO-ONE. YOU SAY MY APPEAL DOES NOT MEET COMPLAI
REQUIREMENTS. BUT PER CCR 3391. BUT I FILED A CITIZENS COMPLAINT, AND IN
MY 602 I STATE YOUR MISCONDUCT. WHICH IS MORE DEFINED BY THE WORDS
UNPROFESSIONAL, IRRESPONSIBLE & UNETHICAL. INSTEAD OF YOUR ACTIONS
OF HOLDING APPEALS WITHOUT ANSWERING FORWARDING THEM OR LOGGING
THEM. ASWELL AS FOR A LOST OF BETTER WORDS GREENWALL SCREENING

NOTE: Please make the changes or corrections requested and resubmit the original appeal within THEM. WHE
fifteen working days. Once an appeal has been cancelled that appeal may not be OTHER EVID
resubmitted. However a separate appeal can be filed on the cancellation decision. The DO I NEED
original appeal may only be resubmitted if the appeal on the cancellation decision is
granted. I HAVE NO CAMMERA'S, TAPE RECORDING DEVICE'S ONLY THE CODE OF REG-
ULATIONS & MY DICTATION ON YOUR CONDUCT THAT ADVERSELY AFFECTS ME
& YOU STILL SAY I HAVE NOT PROVIDE ANY EVID THAT (YOU) WHERE INVOLVED IN

PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

MISCONDUCT

**State of California**
**CDC FORM 695**
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request          BRENDA M. CASH

RE: Screening at the SECOND Level

*August 2, 2010*

**TURNER, G05794**
*FAB400000000113L*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You may not submit an appeal on behalf of another inmate or visitor.*

*YOU NEED TO ADD ADDITIONAL INFORMATION SUCH AS NAMES, DATES,*
*TIMES, EVENTS, BE SPECIFIC.  LAC IS UNABLE TO PROCESS GENERALITIES.*
*YOU HAVE NOT PROVIDED ANY EVIDENCE DEMONSTRATING THAT STAFF*
*WAS INVOLVED IN MISCONDUCT.*

OBJection VAGUE & AMBIGUOUS
AS TO ADDITIONAL INFORMATION, all
INFORMATION WAS PROVIDED within
602 NAMES, DATES, ECT.

J. Curiel/R. Thomas
Appeals Coordinator/Appeals Supervisor
Correctional Counselor II
California State Prison - Los Angeles County

R/D 8-7-10

NOTE:  Please make the changes or corrections requested and resubmit the original appeal within
fifteen working days.  Once an appeal has been cancelled that appeal may not be
resubmitted.  However a separate appeal can be filed on the cancellation decision.  The
original appeal may only be resubmitted if the appeal on the cancellation decision is
granted.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

*B. M. CASH*

RE: Screening at the FIRST Level

*August 27, 2010*

**TURNER, G05794**
*FAB400000000113L* 148

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

***There has been too great a TIME LAPSE between when the action or decision occurred and when you filed your appeal or between the time the appeal was responded to and the re-submission of this appeal. Time limits expired per CCR 3084.6(c). You need to provide an explaination as to why you violated time constraints. Do not re-submit this appeal unless you follow my instructions; failure to do so may result in cancellation of this appeal.***

***EXPLANATION DOES NOT ADEQUATELY EXPLAIN TIME LAPSE.***

***THIS APPEAL IS CANCELLED.***

J. Curiel/R. Thomas
Appeals Coordinator/Appeals Supervisor
Correctional Counselor II
California State Prison - Los Angeles County

NOTE: Please make the changes or corrections requested and resubmit the original appeal within fifteen working days. Once an appeal has been cancelled that appeal may not be resubmitted. However a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

## PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

*A/C*

*TIME LAPSE*

RE: Screening at the FIRST Level

*September 1, 2010*

**TURNER, G05794**
*FAB400000000148L*

Log Number: LAC-A-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Your appeal is incomplete. You must include supporting documentation.  All documents must be legible. (If necessary, you may obtain copy(ies) of requested documents by sending your request with a signed trust withdrawal form to your assigned counselor.)  And/Or additional information is needed in that your appeal is missing:*

MR. CURIEL THIS APPEAL IS NOT INCOMPLETE & I HAVE INCLUDED ALL NECESSARY DOCUMENTS WITHIN THE LOG NO.s I HAVE PROVIDED & DUE DATE'S FOR YOU TO BE ABLE TO PROCESS MY APPEAL & TO STATE I MUST PROVIDE THE ACTUAL 695's OR COPIES IS NOTHING LESS THAN CIRCUMVENTION & EXTORTION. MR. CURIEL I HAVE FULLY EXHAUSTED AN APPEAL ON YOU TO THE THIRD LEVEL & YOUR CONDUCT & ACTION ARE ALL CONTRIBUTING TO A CLAIM OF DELIBERATE INDIFFERENCE   PLEASE PROCESS THIS APPEAL AS THE FOLLOWING

J. Curiel/R. Thomas   APPEAL LOG NO.
Appeals Coordinator/Appeals Supervisor   ARE BEING ADDED AS TIME LAPSED & DUE ALSO
Correctional Counselor II   DISCIPLINARY  LAC-A-10-0114  DUE 9-8-10  ~~ADA #~~
California State Prison - Los Angeles County   ~~LAC-A-10-00934  DUE 8-12-10~~  LEGAL
   LAC-A-10-01002  DUE 8-12-10

NOTE: Please make the changes or corrections requested and resubmit the original appeal within fifteen working days.  Once an appeal has been cancelled that appeal may not be resubmitted.  However a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

 EXHIBIT (B) 11

**INMATE APPEAL ASSIGNMENT NOTICE**

To: INMATE  TURNER, G05794                    Date: March 30, 2017
Current Housing:  D  002 1144001L

From:  INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER:  PBSP-O-17-00632

ASSIGNED STAFF REVIEWER:  AW CS
APPEAL ISSUE:  PROPERTY
DUE DATE:  05/10/2017

Inmate TURNER, this acts as a notice to you that your appeal has been sent to the above
staff for FIRST level response.  If you have any questions, contact the above staff
member. If dissatisfied, you have 30 days from the receipt of the response to forward
your appeal for SECOND level review.

☐  A. Sheldon, Appeals Coordinator
☒  K. Royal, Appeals Coordinator
☐  N. Bramucci, AGPA
PBSP Appeals Office

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE TURNER, G05794
Current Housing:

Date: January 3, 2011

JAN 18th

From: INMATE APPEALS OFFICE

Re: APPEAL

ASSIGNED STAFF REVIEWER: A.W CO
APPEAL ISSUE: PROPERTY

Inmate TURNER, this acts as a notice to you that your appeal has been sent to the above staff for INFORMAL response.  If you have any questions, contact the above staff member. If dissatisfied, you have 15 days from the receipt of the response to forward your appeal to this office for the FIRST level of review.

NEVER ANSWERED

NO LOG NUMBER

CCII J. Curiel - CCII R. Thomas
Inmate Appeals Coordinator - Inmate Appeals Supervisor
California State Prison - Los Angeles County

## INMATE APPEAL ROUTE SLIP

To: AW CO                                    Date: January 4, 2011

From:  INMATE APPEALS OFFICE

Re: Appeal By Inmate  TURNER, G05794

Please assign this appeal to appropriate staff for INFORMAL level response.

Appeal Issue:  PROPERTY
Due Date:  01/10/2011
Special Needs:

STAFF INSTRUCTIONS:
Begin  your  response  with:  GRANTED,  DENIED,  PARTIALLY  GRANTED  or
WITHDRAWN.  When complete, return appeal to the inmate. Every effort should be
made to resolve the matter at the lowest level possible.

Refer to D.O.M. 54100 for instructions.

CCII J. Curiel - CCII R. Thomas
Inmate Appeals Coordinator - Inmate Appeals Supervisor
California State Prison - Los Angeles County

RECEIVED JAN 0 5 2011

EXHIBIT (B) 13

STATE OF CALIFORNIA
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print):  (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| TURNER | LAFONZO | G 05744 | L. Turner |

| HOUSING/BED NUMBER: | ASSIGNMENT: | | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.) |
|---|---|---|---|
| C6-122 | DSH | HOURS FROM 8 TO 2 | APPEALS SCREENING & SUBMITTAL |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW: GOOD DAY, I HAVE A QUESTION;
I RECEIVED A 695 CDC FORM SCREENING MY APPEAL, BUT THERE WAS
NO LOG NUMBER, DO ALL APPEALS RECEIVE LOG NUMBERS, EVEN
SCREENED OUTS FOR REJECTION OR CANCELLATION ?

THANK YOU

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) **\*\*NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED \*\***
☒ SENT THROUGH MAIL: ADDRESSED TO: APPEALS COORDINATOR (LAC)    DATE MAILED: 6 25 17
☒ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY (PRINT) STAFF NAME: | DATE: | SIGNATURE | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| R. G112 | 6-26-17 | RS. | (CIRCLE ONE)   YES    NO |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| APPEALS COORDINATOR (LAC) | 6/25/17 | (CIRCLE ONE)  IN PERSON  BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| CCII E. Moore | 6/26/17 | | 6/26/17 |

Turner - good afternoon.

yes, all appeals (non-health care) receive a
log #. There may have been a glitch in
the .... not .... based on what was the issue, or
approx date of submission? @ that way, I cod
tell you the log #/status.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| | |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

Distribution: Original - Return to Inmate/Parolee; Canary - Inmate/Parolee's 2nd Copy; Pink - Staff Members Copy; Goldenrod - Inmate/Parolee's 1st Copy.

EXHIBIT   (B)   13.1

# INMATE REQUEST FOR INTERVIEW

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

GA-22 (9/92)

| DATE 7/15/10 | TO B.M. Cash, WARDEN | FROM (LAST NAME) Turner, L | CDC NUMBER G05794 |
|---|---|---|---|

| HOUSING B4 | BED NUMBER 113 Low | WORK ASSIGNMENT CCCMS | JOB NUMBER FROM ✓  TO ✓ |
|---|---|---|---|

OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.)

ASSIGNMENT HOURS FROM ✓  TO ✓

Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

MS. B.M. CASH (WARDEN) I HAVE HAD EXCESSIVE FORCE USED AGAINST ME

ON JUNE 26, 2010 AND I FILED AND APPEAL 602 ON 6/29/10 AND J. CURIEL ASWELL

AS YOUR SUBOORDINATE'S HAVE WORKED IN CONCERT TO CIRCUMVENT MY APPEAL OR

IMPEDED MY EXHAUSTION. BECAUSE IT WAS RETURNED WITHOUT ANY RESPONSE, 7/13/10

Do NOT write below this line. If more space is required, write on the back

INTERVIEWED BY                                                                     DATE

DISPOSITION

---

# INMATE REQUEST FOR INTERVIEW

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

GA-22 (9/92)

| DATE 9·12·10 | TO WARDEN B.M. CASH | FROM (LAST NAME) L. TURNER | CDC NUMBER G05794 |
|---|---|---|---|

| HOUSING A 4 | BED NUMBER 113 | WORK ASSIGNMENT N/A | JOB NUMBER FROM ____ TO ____ |
|---|---|---|---|

OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.)

ASSIGNMENT HOURS FROM ____ TO ____

Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

WARDEN I FILED MY APPEAL AND IT WAS CIRCUMVENTED I

WROTE YOU A GA-22 ABOUT IT AND YOU NEVER RESPONDED, NOW IT HAS

BEEN SCREENED OUT AS NOT MEETING TIME CONSTRAINTS ON 7·29·10 I WROTE

AN EXPLAINATION AND SENT IT BACK AND STILL HAVE NOT RECEIVED MY APPEAL BACK OR A Response

Do NOT write below this line. If more space is required, write on the back

INTERVIEWED BY                                                                     DATE

'SITION

material may be assigned to disciplinary detention units from the inmate library and will represent a cross section of material available to the general population. At the discretion of the warden or superintendent, inmates enrolled in educational programs who have textbooks in their personal property may be permitted to study such material while undergoing disciplinary detention.

(j) Legal Material. Inmates undergoing disciplinary detention will not be limited in their access to the courts. Legal resources may be limited to pencil and paper, which will be provided upon request, for correspondence with an attorney or preparation of legal documents for the courts. Other legal material in an inmate's personal property may be issued to an inmate in disciplinary detention if litigation was in progress before detention commenced and legal due dates are imminent.

(k) Privileges. All privileges generally associated with the inmate's work/training incentive groups status will be suspended during a period of disciplinary detention. This includes but is not limited to: personal nonemergency telephone calls, handicraft activities, use of recreational equipment, and the viewing of television, and other privileges.

(l) Restrictions. A written report by the administrator or supervisor in charge of a disciplinary detention unit will be submitted to the chief disciplinary officer whenever an inmate undergoing disciplinary detention is deprived of any usually authorized item, activity or privilege. A special report to the chief disciplinary officer and to a classification committee will be made when an inmate's circumstances indicate a continuing need for separation from general population or from specific persons.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5030.1 and 5054, Penal Code.

HISTORY:
1. Amendment of subsection (k) filed 2-16-83; effective thirtieth day thereafter (Register 83, No. 8).
2. Amendment of subsection (d) filed 2-8-88; operative 3-9-88 (Register 88, No. 7).
3. Amendment of subsection (c)(2) and amendment of Note filed 7-7-2005 as an emergency; operative 7-7-2005 (Register 2005, No. 27). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 12-14-2005 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 7-7-2005 order transmitted to OAL 12-13-2005 and filed 1-26-2005 (Register 2006, No. 4).

**3332.   Administration and Supervision of Detention Units.**

(a) Plan of Operation. Each warden and superintendent will establish and maintain a plan of operations for the disciplinary detention of inmates, whether in a unit or section of a unit designated for this specific purpose or in conjunction with other special purpose housing of inmates. Such plans will conform to the provisions of this article and will be updated as necessary to reflect current procedures and practices. A copy of the plan will be submitted to the director for review and approval annually, as scheduled for required plans.

(b) Administration and Supervision. The administration of disciplinary detention units may be delegated to a staff member at not less than the level of correctional captain. The supervision of disciplinary detention units may be assigned to a staff member at not less than the level of correctional sergeant.

(c) Visitation. Inmates assigned to disciplinary detention units will be visited daily by the supervisor in charge of the unit and by an institution physician, registered nurse or a medical technical assistant. An inmate's request to be visited by other staff will be promptly referred to the staff member. A timely response should be given to such requests whenever reasonably possible.

(d) Supervisor's Responsibilities. The supervisor in charge of a disciplinary detention unit is responsible for the physical security of the unit, the control of contraband within the unit, and for safe, sanitary and decent working and living conditions within the unit. When any condition within the unit or the behavior, conduct or appearance of any inmate confined therein appears to warrant the attention of specific or specialized staff, the matter will be promptly brought to the attention of appropriate staff.

(e) Suicide Risks. Inmates undergoing disciplinary detention who are diagnosed by qualified medical staff as a suicide risk will be moved to a hospital setting, and medical staff will assume responsibility for such placement and for observation and supervision of the inmate. Such movement and supervision will be in cooperation and coordination with custody staff.

(f) Management Cases. An inmate who persists in unduly disruptive, destructive or dangerous behavior and who will not heed or respond to orders and warnings to desist from such activity, may be placed in a management cell on an order of the unit's administrator or, in his or her absence, an order of the watch commander. In addition to any necessary incident or disciplinary reports, the matter will be reported to the warden, superintendent, chief disciplinary officer or administrative officer of the day, one of whom will review management cell resident status daily. An inmate who requires management cell placement for longer than 24 hours will be considered for transfer to a psychiatric management unit or other housing appropriate to the inmate's disturbed state.

(g) Disciplinary Detention Records.

(1) A Disciplinary Detention Log, CDC Form 114, will be maintained in each designated disciplinary detention unit. Specific information required in this log will be kept current on a daily and shift or watch basis. A completed log book will be retained in the unit for as long as any inmate recorded on the last page of that log remains in the unit. Storage and purging of log books will be in accordance with department schedules. One disciplinary detention/ segregation log may serve a disciplinary detention unit and other special purpose segregation units, which are combined and are administered and supervised by the same staff members.

(2) A separate record will be maintained on each inmate undergoing disciplinary detention. This record will be compiled on CDC Form 114-A, Detention/Segregation Record. In addition to the identifying information required on the form, all significant information relating to the inmate during the course of detention, from reception to release, will be entered on the form in chronological order.

NOTE: Authority cited: section 5058, Penal Code. Reference: Section 5054, Penal Code.

**3333.   Confinement to Quarters.**

(a) Confinement to quarters may be ordered as a continuous period of confinement or as intermittent confinement on holidays, weekends or days off from assigned work and classified program activities. When ordered as intermittent confinement, confinement may not exceed 10 ten days during a 35-day period.

(b) Confinement to quarters may extend from the first full day of confinement to the beginning of the day following the last full day of confinement. Such partial days will not reduce the total number of full days of ordered confinement.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. Change without regulatory effect amending section filed 10-29-90 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 6).

**TITLE 15**　　　　　DEPARTMENT OF CORRECTIONS AND REHABILITATION　　　　　**§ 3084.1**

Article 7.　Furloughs and Temporary Leave

Article 8.　Appeals

**3080.　Administration.**

Institution and parole division staff will administer inmate work and educational furloughs and temporary community release programs in a prudent manner, and in keeping with the basic need for public protection.

Comment: Former DP-1701, policy, general.

**3081.　Compliance.**

Inmates who are granted a furlough or temporary leave must comply with all departmental rules and regulations governing such programs; with any conditions for approval; and, with all applicable laws; and must meet eligibility requirements in accordance with departmental procedures and Sections 2690, 2691, 6250 et seq., 6263 of the Penal Code and Section 3306 of the Welfare and Institutions Code.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 6250–6253 and 6260, Penal Code; and Section 3306, Welfare and Institutions Code.

HISTORY:

1. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).

**3082.　Temporary Leaves.**

Temporary leaves will be granted only for inmates who meet the criteria for such leaves, as prescribed in guidelines established by the Secretary, for the following reasons:

(a) Family Emergency. Emergency leaves will normally be considered only for attendance at services for deceased members of the inmate's immediate family, and for visits to critically ill members of the inmate's immediate family. Immediate family members are defined in section 3000.

(b) Prerelease Planning. Prerelease planning leaves may be considered for the purpose of employment interviews, making residential plans and for other reasons closely connected to release programs. A prerelease leave will not normally be granted earlier than 63 days before the inmate has an established or reasonably anticipated release date nor any earlier than is required to accomplish the purpose of a prerelease leave.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2690 and 5054, Penal Code.

HISTORY:

1. Amendment filed 3-22-78; effective thirtieth day thereafter (Register 78, No. 12).
2. Amendment filed 8-22-79; effective thirtieth day thereafter (Register 79, No. 34).
3. Amendment of subsection (b) filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).
4. Change without regulatory effect amending subsection (a) filed 12-2-2003 pursuant to section 100, title 1, California Code of Regulations (Register 2003, No. 49).
5. Change without regulatory effect amending first paragraph filed 3-11-2013 pursuant to section 100, title 1, California Code of Regulations (Register 2013, No. 11).

**3083.　Court Hearing on Inmate's Children.**

Upon a court order, inmates will be released to the custody of the sheriff for appearance in court in actions concerning termination of parental rights of an inmate or other parental or marital rights.

HISTORY:

1. Editorial correction of printing error (Register 92, No. 5).

**3084.　Definitions.**

For the purpose of Article 8, the following definitions shall apply:

(a) Appellant means an inmate or parolee who has submitted an appeal.

(b) General allegations means allegations that lack specificity or factual evidence to support them.

(c) Material adverse effect means a harm or injury that is measurable or demonstrable, or the reasonable likelihood of such harm or injury. In either case, the harm or injury must be due to any policy, decision, action, condition, or omission by the department or its staff.

(d) Modification order means an order by the institution, parole region, or third level Appeals Chief directing a previous decision to be modified.

(e) Remedy means a process or means to address an issue or correct a wrong.

(f) Reviewer means the individual with signature authority for the approval or disapproval of an appeal response at any level.

(g) Staff misconduct means staff behavior that violates or is contrary to law, regulation, policy, procedure, or an ethical or professional standard.

(h) Supporting documents means documents that are needed to substantiate allegations made in the appeal including, but not limited to, classification chronos, property inventory sheets, property receipts, disciplinary reports with supplements, incident reports, notifications of disallowed mail, trust account statements, memoranda or letters, medical records and written requests for interviews, items or services. Supporting documents do not include documents that simply restate the matter under appeal, argue its merits, or introduce new issues not identified in the present appeal form.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. New section filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day. For prior history, see Register 91, No. 6.
2. Certificate of Compliance as to 12-13-2010 order transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

✱ **3084.1.　Right to Appeal.**

The appeal process is intended to provide a remedy for inmates and parolees with identified grievances and to provide an administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees. All appeals shall be processed according to the provisions of Article 8, Appeals, unless exempted from its provisions pursuant to court order or superseded by law or other regulations.

(a) Any inmate or parolee under the department's jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.

(b) Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. All lower level reviews are subject to modification at the third level of review. Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602

71

§ 3084.2                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **TITLE 15**

(Rev. 08/09), Inmate/Parolee Appeal, which is incorporated by reference, and addressed through all required levels of administrative review up to and including the third level. In addition, a cancellation or rejection decision does not exhaust administrative remedies.

(c) Department staff shall ensure that inmates and parolees, including those who have difficulties communicating, are provided equal access to the appeals process and the timely assistance necessary to participate throughout the appeal process.

(d) No reprisal shall be taken against an inmate or parolee for filing an appeal. This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process as defined in section 3084.4, nor shall it prohibit the pursuit of disciplinary sanctions for violation of department rules.

(e) The department shall ensure that its departmental appeal forms for acceptance of decisions, actions, or policies within its jurisdiction are readily available to all inmates and parolees.

(f) An inmate or parolee has the right to file one appeal every 14 calendar days unless the appeal is accepted as an emergency appeal. The 14 calendar day period shall commence on the day following the appellant's last accepted appeal.

(g) An appellant shall adhere to appeal filing time constraints as defined in section 3084.8.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; Civil Rights of Institutionalized Persons Act; Title 42 U.S.C. Section 1997 et seq., Public Law 96-247, 94 Stat. 349; Section 35.107, Title 28, Code of Federal Regulations; and *Wolff* v. *McDonnell* (1974) 418 U.S. 539, 558-560.

HISTORY:
1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89. For prior history, see section 3003.
2. Certificate of Compliance as to 5-18-89 order including a clarifying change of subsection (b) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).
3. Amendment of subsection (a) filed 1-16-92; operative 2-17-92 (Register 92, No. 13).
4. Amendment of subsections (a) and (d), new subsection (e), and amendment of Note filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.
5. Amendment of subsections (a) and (d), new subsection (e), and amendment of Note refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.
6. Editorial correction of History 5 (Register 97, No. 24).
7. Certificate of Compliance as to 5-29-97 order, including amendment of subsections (a) and (e), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).
8. Amendment of subsection (c) filed 9-13-2005; operative 9-13-2005 pursuant to Government Code section 11343.4 (Register 2005, No. 37).
9. Amendment of subsection (e) and amendment of Note filed 11-3-2006 as an emergency; operative 11-3-2006 (Register 2006, No. 44). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 4-12-2007 or emergency language will be repealed by operation of law on the following day.
10. Certificate of Compliance as to 11-3-2006 order transmitted to OAL 3-12-2007 and filed 4-19-2007 (Register 2007, No. 16).
11. Amendment of section and Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 12-13-2010 order, including amendment of Note, transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

**3084.2.   Appeal Preparation and Submittal.**

(a) The appellant shall use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested. A CDCR Form 602-A (08/09), Inmate/Parolee Appeal Form Attachment, which is incorporated by reference, shall be used if additional space is needed to describe the issue under appeal or the relief requested.

(1) The inmate or parolee is limited to one issue or related set of issues per each Inmate/Parolee Appeal form submitted. The inmate or parolee shall not combine unrelated issues on a single appeal form for the purpose of circumventing appeal filing requirements. Filings of appeals combining unrelated issues shall be rejected and returned to the appellant by the appeals coordinator with an explanation that the issues are deemed unrelated and may only be submitted separately.

(2) The inmate or parolee is limited to the space provided on the Inmate/Parolee Appeal form and one Inmate/Parolee Appeal Form Attachment to describe the specific issue and action requested. The appeal content must be printed legibly in ink or typed on the lines provided on the appeal forms in no smaller than a 12-point font. There shall be only one line of text on each line provided on these forms.

(3) The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

(4) The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

(b) The inmate or parolee shall submit the signed original appeal forms and supporting documents. If originals are not available, copies may be submitted with an explanation why the originals are not available. The appeals coordinator shall have the discretion to request that any submitted copy is verified by staff.

(1) Only supporting documents, as defined in subsection 3084(h), necessary to clarify the appeal shall be attached to the appeal. Attachments shall not raise new issues, but shall only serve to clarify the present appeal issue and action(s) requested as stated in Parts A and B of the Inmate/Parolee Appeal form. New issues raised in the supporting documents shall not be addressed and any decision rendered will pertain only to the present appeal issue and requested action(s).

(2) Inmates or parolees shall submit their appeal documents in a single mailing and shall not divide their appeal documents into separate mailings.

(3) Inmates or parolees shall not deface or attach dividers or tabs to their appeal forms.

(4) Inmates or parolees shall not contaminate or attach physical/organic objects or samples to their appeal documents. Examples of these objects or samples include, but are not limited to, food, clothing, razor blades, books, magazines, tape, string, hair, blood, and/or bodily fluids/excrement.

**TITLE 15**                DEPARTMENT OF CORRECTIONS AND REHABILITATION                **§ 3084.2**

(c) First and second level appeals as described in section 3084.7 shall be submitted to the appeals coordinator at the institution or parole region for processing.

(d) If dissatisfied with the second level response, the appellant may submit the appeal for a third level review, as described in section 3084.7, provided that the time limits pursuant to section 3084.8 are met. The appellant shall mail the appeal and supporting documents to the third level Appeals Chief via the United States mail service utilizing his or her own funds, unless the appellant is indigent in which case the mailing of appeals to the third level of review shall be processed in accordance with indigent mail provisions pursuant to section 3138.

(e) If the appeal has been accepted and processed as an emergency appeal and the appellant wishes a third level review, the appellant must forward the appeal to the appeals coordinator who shall electronically transmit it to the third level Appeals Chief. The third level review shall be completed within five working days.

• (f) An inmate or parolee or other person may assist another inmate or parolee with preparation of an appeal unless the act of providing such assistance would create an unmanageable situation including but not limited to: acting contrary to the principles set forth in sections 3163 and 3270, allowing one offender to exercise unlawful influence/assume control over another, require an offender to access unauthorized areas or areas which would require an escort, or cause avoidance or non-performance in assigned work and program activities. Inmates or parolees shall not give any form of compensation for receiving assistance or receive any form of compensation for assisting in the preparation of another's appeal. The giving or receiving of compensation is considered misconduct and is subject to disciplinary action.

(g) An inmate or parolee shall not submit an appeal on behalf of another person.

(h) Group appeal. If a group of inmates/parolees intend to appeal a policy, decision, action, condition or omission affecting all members of the group, one CDCR Form 602, Inmate/Parolee Appeal, shall be submitted describing the appeal issue(s) and action requested, accompanied by a CDCR Form 602-G (08/09), Inmate/Parolee Group Appeal, which is incorporated by reference, with the legible name, departmental identification number, assignment, housing, and dated signature of the inmate or parolee who prepared the appeal. Each page of the CDCR Form 602-G must contain the appeal issue, action requested, and a statement that all the undersigned agree with the appeal issue/action requested.

(1) The legible names of the participating inmates/parolees, departmental identification numbers, assignments, housing, and dated signatures shall be included in the space provided on the Inmate/Parolee Group Appeal form and no other signature page shall be accepted by the appeals coordinator.

(2) The inmate or parolee submitting the appeal shall be responsible for sharing the appeal response with the inmates or parolees who signed the appeal attachment.

(3) If the inmate or parolee submitting the appeal is transferred, released, discharged, or requests to withdraw from the group appeal, responses shall be directed to the next inmate or parolee listed on the appeal attachment who remains at the facility/region, and who shall be responsible for sharing the response with the other inmates or parolees identified on the appeal.

(4) An appeal shall not be accepted or processed as a group appeal if the matter under appeal requires a response to a specific set of facts (such as disciplinary and staff complaint appeals) that are not the same for all participants in the appeal. In such case, the group appeal shall be screened out and returned to the inmate or parolee submitting the appeal with directions to advise all those who signed the appeal attachment to submit individual appeals on their separate issues.

(5) Every inmate or parolee who signs a group appeal is ineligible to submit a separate appeal on the same issue.

(6) A group appeal counts toward each appellant's allowable number of appeals filed in a 14 calendar day period.

(i) Multiple appeals of the same issue. When multiple appeals are received from more than one inmate or parolee on an identical issue, each such appeal shall be individually processed. However, if other issues in addition or extraneous to the multiple appeal issue are contained in the submitted appeal, this particular complaint shall not be processed as a multiple appeal, but will be subject to processing as a separate, individual appeal.

(1) The original inmate or parolee, and as needed for clarification of issues, one or more of the other inmates or parolees, shall be interviewed.

(2) The appellant shall be provided with an appeal response. A statement shall be included in the response indicating that the appeal has been designated as one of multiple identical appeals for processing purposes and the same response is being distributed to each appellant.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 832.5(a) and 5054, Penal Code; Civil Rights of Institutionalized Persons Act; Title 42 U.S.C. Section 1997 et seq., Public Law 96-247, 94 Stat. 349; and Section 35.107, Title 28, Code of Federal Regulations.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.

2. Certificate of Compliance as to 5-18-89 order transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. New subsection (g) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.

4. Certificate of Compliance as to 5-6-92 order transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).

5. Amendment of subsection (a) and Note filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.

6. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).

7. Amendment of subsections (a)(1), (a)(2), (c) and (f)(1) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

8. Amendment of subsections (a)(1), (a)(2), (c) and (f)(1) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

9. Editorial correction of History 8 (Register 97, No. 24).

10. Certificate of Compliance as to 5-29-97 order, including amendment of subsection (c), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

11. Amendment of section heading, repealer and new section and amendment of Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 12-13-2010 order, including amendment of subsections (b), (e)–(f) and (h)(6), transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

**3084.3.  Supporting Documents.**

(a) An inmate or parolee shall obtain and attach all supporting documents, as described in section 3084(h), necessary for the clarification and/or resolution of his or her appeal issue prior to submitting the appeal to the appeals coordinator.

(b) The inmate or parolee shall not delay submitting an appeal within time limits established in section 3084.8 if unable to obtain supporting documents, but shall submit the appeal with all available supporting documents and in Part B of their CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, provide an explanation why any remaining supporting documents are not available. Time limits for filing an appeal are not stayed by failure to obtain supporting documentation and commence as set forth in subsection 3084.8(b).

(c) Failure to attach all necessary supporting documents may result in the appeal being rejected as specified in subsection 3084.6(b)(7). The appeals coordinator shall inform the inmate or parolee that the appeal is rejected because necessary supporting documents are missing. The appellant shall be allowed an additional 30 calendar days to secure any missing supporting documents and resubmit the appeal.

(d) The appeals coordinator may grant additional time extensions beyond the initial 30 calendar day extension if the inmate or parolee submits a reasonable explanation of why the supporting documents still are not available.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.
2. Certificate of Compliance as to 5-18-89 order transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).
3. Amendment of subsection (b) and new subsections (b)(1)–(2) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 5-6-92 order transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).
5. Amendment of subsection (a) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.
6. Amendment of subsection (a) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.
7. Editorial correction of History 6 (Register 97, No. 24).
8. Certificate of Compliance as to 5-29-97 order transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).
9. Repealer and new section heading and section and amendment of Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.
10. Certificate of Compliance as to 12-13-2010 order, including amendment of subsection (b), transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

**3084.4.  Appeal System Abuse.**

(a) The following are deemed misuse or abuse of the appeals process and may lead to appeal restriction as described in subsection 3084.4(g).

(1) The submittal of more than one appeal for initial review within a 14 calendar day period is considered excessive, unless the inmate or parolee is submitting an emergency appeal.

(2) The repeated filing of appeals that have been cancelled pursuant to subsection 3084.6(c).

(3) The appeal submission contains information the appellant knows to be false or consists of a deliberate attempt at distorting the facts.

(4) The appeal contains threatening, grossly derogatory, slanderous or obscene statements and/or organic contamination is included in or makes up any part of the appeal package.

(5) The description of the problem and/or requested action deliberately exceeds the space provided on the 602 forms or the appeal is intentionally filed contrary to instructions.

(b) When an inmate or parolee submits appeals as described above in subsections 3084.4(a)(1)–(a)(5):

(1) The first appeal received shall be screened for routine processing.

(2) All subsequent non-emergency appeals submitted by that individual shall be screened and the appeals coordinator shall begin documenting any abuse as evidenced by the screening results.

(c) If an inmate or parolee persists in submitting excessive, demonstrably false, noncompliant or abusive appeals, as described in subsection 3084.4(a), he or she shall receive a warning letter from the appeals coordinator that will document the history and nature of appeal system abuse.

(d) If the abuse of process continues after the issuance of a warning letter, the appeals coordinator shall meet with the inmate or parolee in a timely manner before imposition of any restriction to provide instruction for the appropriate use of the appeals process and to rule out any unintended basis for non-compliance. If a face-to-face meeting is not possible, an agent acting on behalf of the appeals coordinator shall conduct the meeting.

(e) Excessive, demonstrably false, noncompliant or abusive appeals, as described in subsection 3084.4(a), submitted by an inmate or parolee after the issuance of a warning letter, pursuant to subsection 3084.4(c) above, shall be screened by the appeals coordinator to ensure they do not contain qualifying emergency issues.

(1) If the appeal contains emergency issues, as described in subsection 3084.9(a)(1), it shall be processed as an emergency appeal.

(2) If no such issue is determined to be present, the appeal shall be retained by the appeals coordinator pending placement of the appellant on appeal restriction by the third level Appeals Chief. The appellant shall be informed in writing why the appeal constitutes abuse of the appeal process and informed that appeal processing has been suspended pending determination of appeal restriction status.

(f) If the appeal abuse continues after the issuance of a warning letter and a face-to-face meeting, the request for placement on restriction shall be referred to the third level Appeals Chief for approval.

(g) Upon confirmation of continued abuse and verification that a face-to-face interview and warning letter have occurred, the third level Appeals Chief shall have the discretion to authorize preparation of a notice by the Appeals Coordinator restricting the inmate or parolee to one non-emergency appeal every 30 calendar days for a period of one year. Any subsequent violation of the appeal restriction shall result in an extension of the restriction for an additional one-year period upon approval by the third level Appeals Chief.

(h) If the third level Appeals Chief makes a decision not to place the inmate or parolee on appeal restriction, any appeal submitted by the inmate or parolee and retained pursuant to subsection 3084.4(e) (2) shall be returned to the inmate or parolee who may then resubmit a returned appeal if he or she desires to do so. Resubmitted

TITLE 15      DEPARTMENT OF CORRECTIONS AND REHABILITATION      § 3084.6

appeals are not exempt from the standard submittal requirements set forth in this Article, except that the appellant's original submittal date of the appeal may serve to satisfy filing time requirements.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 148.6(a), 832.5(c) and 5054, Penal Code.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.
2. Certificate of Compliance as to 5-18-89 order including a clarifying change of subsections (a) and (b) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).
3. Amendment of subsections (a), (a)(1) and (a)(3), repealer and new subsection (a)(4), and amendment of subsections (b) and (d) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.
4. Amendment of subsections (a), (a)(1) and (a)(3), repealer and new subsection (a)(4), and amendment of subsections (b) and (d) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.
5. Editorial correction of History 4 (Register 97, No. 24).
6. Certificate of Compliance as to 5-29-97 order, including amendment of subsection (d), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).
7. Repealer and new section and amendment of Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.
8. Certificate of Compliance as to 12-13-2010 order, including amendment of subsection (a)(3), transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

**3084.5.  Screening and Managing Appeals.**

(a) Each institution head and parole region administrator shall designate an appeals coordinator at a staff position level no less than a Correctional Counselor II or Parole Agent II.

(b) The appeals coordinator or a delegated staff member under the direct oversight of the coordinator shall screen all appeals prior to acceptance and assignment for review.

(1) When an appeal indicates the inmate or parolee has difficulty describing the problem in writing or has a primary language other than English, the appeals coordinator shall ensure that the inmate or parolee receives assistance in completing and/or clarifying the appeal.

(2) When an appeal is received as an emergency appeal that does not meet the criteria for an emergency appeal as defined in subsection 3084.9(a), the appellant shall be notified that the appeal does not meet the criteria for processing as an emergency appeal and has been either accepted for regular processing or is rejected for the specific reason(s) cited.

(3) When an appeal is not accepted, the inmate or parolee shall be notified of the specific reason(s) for the rejection or cancellation of the appeal and of the correction(s) needed for the rejected appeal to be accepted.

(4) When an appeal is received that describes staff behavior or activity in violation of a law, regulation, policy, or procedure or appears contrary to an ethical or professional standard that could be considered misconduct as defined in subsection 3084(g), whether such misconduct is specifically alleged or not, the matter shall be referred pursuant to subsection 3084.9(i)(1) and (i)(3), to determine whether it shall be:

(A) Processed as a routine appeal but not as a staff complaint.

(B) Processed as a staff complaint appeal inquiry.

(C) Referred to Internal Affairs for an investigation/inquiry.

(5) If an appeal classified as a staff complaint includes other non-related issue(s), the provisions of 3084.9(i)(2) shall apply.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 832.5, 832.7, 832.8, 5054 and 5058.4(a), Penal Code; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; Civil Rights of Institutionalized Persons Act; Title 42 U.S.C. Section 1997 et seq., Public Law 96-247, 94 Stat. 349; and Section 35.107, Title 28, Code of Federal Regulations.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89. For prior history, see section 3003(a) and (b).
2. Certificate of Compliance as to 5-18-89 order including amendment of subsections (a) and (g) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).
3. New subsection (a)(3)(F), amendment of subsection (b), new subsections (g) and (h), and relettering of subsection (g) to (i) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 5-6-92 order transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).
5. New subsection (a)(3)(G) filed 2-1-93 as an emergency; operative 2-1-93 (Register 93, No. 6). A Certificate of Compliance must be transmitted to OAL 6-1-93 or emergency language will be repealed by operation of law on the following day.
6. Certificate of Compliance as to 2-1-93 order transmitted to OAL 5-20-93 and filed 6-8-93 (Register 93, No. 24).
7. New subsection (a)(3)(H) and amendment of Note filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.
8. New subsection (b)(4) filed 5-5-95; operative 6-5-95 (Register 95, No. 18).
9. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).
10. Amendment of subsections (c), (d) and (e)(1) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.
11. Amendment of subsections (c), (d) and (e)(1) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.
12. Editorial correction of History 11 (Register 97, No. 24).
13. Certificate of Compliance as to 5-29-97 order transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).
14. Repealer and new section heading and section and amendment of Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.
15. Certificate of Compliance as to 12-13-2010 order transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

**3084.6.  Rejection, Cancellation, and Withdrawal Criteria.**

(a) Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator.

(1) Unless the appeal is cancelled, the appeals coordinator shall provide clear and sufficient instructions regarding further actions the inmate or parolee must take to qualify the appeal for processing.

(2) An appeal that is rejected pursuant to subsection 3084.6(b) may later be accepted if the reason noted for the rejection is corrected and the appeal is returned to the inmate or parolee to the appeals coordinator within 30 calendar days of rejection.

(3) At the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review.

(4) Under exceptional circumstances any appeal may be accepted if the appeals coordinator or third level Appeals Chief conclude that the appeal should be subject to further review. Such a conclusion shall be reached on the basis of compelling evidence or receipt of new information such as documentation from health care staff that the inmate or parolee was medically or mentally incapacitated and unable to file.

(5) Erroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal.

(b) An appeal may be rejected for any of the following reasons, which include, but are not limited to:

(1) The appeal concerns an anticipated action or decision.

(2) The appellant has failed to demonstrate a material adverse effect on his or her welfare as defined in subsection 3084(c).

(3) The inmate or parolee has exceeded the allowable number of appeals filed in a 14 calendar day period pursuant to the provisions of subsection 3084.1(f).

(4) The appeal contains threatening, obscene, demeaning, or abusive language.

(5) The inmate or parolee has attached more than one CDCR Form 602-A (08/09), Inmate/Parolee Appeal Form Attachment.

(6) The appeal makes a general allegation, but fails to state facts or specify an act or decision consistent with the allegation.

(7) The appeal is missing necessary supporting documents as established in section 3084.3.

(8) The appeal involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact.

(9) The appeal issue is obscured by pointless verbiage or voluminous unrelated documentation such that the reviewer cannot be reasonably expected to identify the issue under appeal. In such case, the appeal shall be rejected unless the appellant is identified as requiring assistance in filing the appeal as described in subsection 3084.1(c).

(10) The inmate or parolee has not submitted his/her appeal printed legibly in ink or typed on the lines provided on the appeal forms in no smaller than a 12-point font or failed to submit an original.

(11) The appeal documentation is defaced or contaminated with physical/organic objects or samples as described in subsection 3084.2(b)(4). Appeals submitted with hazardous or toxic material that present a threat to the safety and security of staff, inmates, or the institution may subject the appellant to disciplinary action and/or criminal charges commensurate with the specific act.

(12) The appellant has attached dividers or tabs to the appeal forms and/or supporting documents.

(13) The appeal is incomplete; for example, the inmate or parolee has not provided a signature and/or date on the appeal forms in the designated signature/date blocks provided.

(14) The inmate or parolee has not submitted his/her appeal on the departmentally approved appeal forms.

(15) The inmate or parolee has submitted the appeal for processing at an inappropriate level bypassing required lower level(s) of review, e.g., submitting an appeal at the third level prior to lower level review.

(16) The appeal issue or complaint emphasis has been changed at some point in the process to the extent that the issue is entirely new, and the required lower levels of review and assessment have thereby been circumvented.

(c) An appeal may be cancelled for any of the following reasons, which include, but are not limited to:

(1) The action or decision being appealed is not within the jurisdiction of the department.

(2) The appeal duplicates an inmate or parolee's previous appeal upon which a decision has been rendered or is pending.

(3) The inmate or parolee continues to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal including failure to submit necessary supporting documents, unless the inmate or parolee provides in Part B of the CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, a reasonable explanation of why the correction was not made or documents are not available.

(4) Time limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints. In determining whether the time limit has been exceeded, the appeals coordinator shall consider whether the issue being appealed occurred on a specific date or is ongoing. If the issue is ongoing, which may include but is not limited to, continuing lockdowns, retention in segregated housing, or an ongoing program closure, the inmate or parolee may appeal any time during the duration of the event; however, the inmate or parolee is precluded from filing another appeal on the same issue unless a change in circumstances creates a new issue.

(5) The appeal is submitted on behalf of another person.

(6) The issue is subject to a department director level review independent of the appeal process such as a Departmental Review Board decision, which is not appealable and concludes the appellant's departmental administrative remedy pursuant to the provisions of section 3376.1.

(7) The appellant is deceased before the time limits for responding to an appeal have expired and the appeal is not a group appeal.

(8) The appellant refuses to be interviewed or to cooperate with the reviewer.

(A) The appellant's refusal to be interviewed or to cooperate with the reviewer shall be clearly articulated in the cancellation notice.

(B) If the appellant provides sufficient evidence to establish that the interviewer has a bias regarding the issue under appeal, the appeals coordinator shall assign another interviewer.

(9) The appeal is presented on behalf of a private citizen.

(10) Failure to correct and return a rejected appeal within 30 calendar days of the rejection.

(11) The issue under appeal has been resolved at a previous level.

(d) Group appeals shall not be cancelled at the request of the submitting individual unless all of the inmate signatories are released, transferred, or agree to withdraw the appeal.

(e) Once cancelled, an appeal shall not be accepted except pursuant to subsection 3084.6(a)(3); however, the application of the rules provided in subsection 3084.6(c) to the cancelled appeal may be separately appealed. If an appeal is cancelled at the third level of review, any appeal of the third level cancellation decision shall be made directly to the third level Appeals Chief.

(f) An appeal may be withdrawn by the appellant by requesting to have the processing stopped at any point up to receiving a

**TITLE 15**  DEPARTMENT OF CORRECTIONS AND REHABILITATION  **§ 3084.7**

signed response. The request for the withdrawal shall identify the reason for the withdrawal in section H of the CDCR Form 602, Inmate/Parolee Appeal and shall be signed and dated by the appellant. If there is an agreed upon relief noted in writing at the time of a withdrawal and the relief is not provided when and as promised, then the failure to provide the agreed upon relief may be appealed within 30 calendar days of the failure to grant the promised relief. The withdrawal of an appeal does not preclude further administrative action by the department regarding the issue under appeal. A withdrawn staff complaint shall be returned to the hiring authority to review for possible further administrative action.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 832.5 and 5054, Penal Code; Sections 19570, 19575.5, 19583.5 and 19635, Government Code.

HISTORY:
1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.
2. Certificate of Compliance as to 5-18-89 order including amendment of subsection (b) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).
3. Amendment of subsections (b)(1)–(5), repealer and new subsection (b)(6)(D), amendment of subsections (b)(7) and (c), and repealer of subsections (c)(1) and (c)(2) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.
4. Amendment of subsections (b)(1)–(5), repealer and new subsection (b)(6)(D), amendment of subsections (b)(7) and (c), and repealer of subsection (c)(1) and (c)(2) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.
5. Editorial correction of History 4 (Register 97, No. 24).
6. Certificate of Compliance as to 5-29-97 order, including amendment, transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).
7. Repealer and new section heading and section and amendment of Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.
8. Certificate of Compliance as to 12-13-2010 order transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

**3084.7. Levels of Appeal Review and Disposition.**

(a) All appeals shall be initially submitted and screened at the first level unless the first level is exempted. The appeals coordinator may bypass the first level for appeal of:

(1) A policy, procedure or regulation implemented by the department.

(2) A policy or procedure implemented by the institution head.

(3) An issue that cannot be resolved at the division head level such as Associate Warden, Associate Regional Parole Administrator, CALPIA manager or equivalent.

(4) Serious disciplinary infractions.

(b) The second level is for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level, or for which the first level is otherwise waived by these regulations. The second level shall be completed prior to the appellant filing at the third level as described in subsection 3084.7(c).

(1) A second level of review shall constitute the department's final action on appeals of disciplinary actions classified as "administrative" as described in section 3314, or of minor disciplinary

infractions documented on the Counseling Only Rules Violation Report, pursuant to section 3312(a)(2), and shall exhaust administrative remedy on these matters.

(2) Movies/videos that have been given a rating of other than "G", "PG", or "PG-13" by the Motion Picture Association of America are not approved for either general inmate viewing pursuant to section 3220.4 or for viewing within the classroom, and will not be accepted for appeal at any level. The first level shall be waived for appeals related to the selection or exclusion of a "G", "PG", or "PG-13" rated or non-rated movie/video for viewing and the second level response shall constitute the department's final response on appeals of this nature.

(c) The third level is for review of appeals not resolved at the second level, or:

(1) When the inmate or parolee appeals alleged third level staff misconduct or appeals a third level cancellation decision or action.

(2) In the event of involuntary psychiatric transfers as provided in subsection 3084.9(b).

(d) Level of staff member conducting review.

(1) Appeal responses shall not be reviewed and approved by a staff person who:

(A) Participated in the event or decision being appealed. This does not preclude the involvement of staff who may have participated in the event or decision being appealed, so long as their involvement with the appeal response is necessary in order to determine the facts or to provide administrative remedy, and the staff person is not the reviewing authority and/or their involvement in the process will not compromise the integrity or outcome of the process.

(B) Is of a lower administrative rank than any participating staff. This does not preclude the use of staff, at a lower level than the staff whose actions or decisions are being appealed, to research the appeal issue.

(C) Participated in the review of a lower level appeal refiled at a higher level.

(2) Second level review shall be conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent.

(3) The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies; however, this does not preclude amending a finding previously made at the third level.

(e) At least one face-to-face interview shall be conducted with the appellant at the first level of review, or the second level if the first level of review is bypassed, unless:

(1) The appellant waives the interview by initialing the appropriate box on the CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal. An appellant's waiver of the interview shall not preclude staff from conducting an interview in the event of staff determination that an interview is necessary.

(2) The reviewer has decided to grant the appeal in its entirety.

(3) The appeal is a request for a Computation Review Hearing, in which case the initial interview shall occur at the second level of review.

(4) The appellant is not present at the institution or parole region where the appeal was filed.

(A) In such case, a telephone interview with the appellant shall meet the requirement of a personal interview. If the appeal concerns a disciplinary action, the telephone interview may be waived if the appeals coordinator determines an interview would not provide additional facts.

77

§ 3084.7                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **TITLE 15**

(B) The response must note that the interview was conducted by telephone, explain the extraordinary circumstances that required it, and state why a face-to-face interview was not possible under the circumstances.

(C) If the appellant is not available for a telephone interview, the reviewer may request that a suitable employee in the jurisdiction where the appellant is located complete the interview and provide a report.

(f) An interview may be conducted at any subsequent level of review when staff determine that the issue under appeal requires further clarification.

(g) When a group or multiple appeal is received, one or more of the participating inmates/parolees shall be interviewed to clarify the issue(s).

(h) At the first and second level of review, the original appeal, within the time limits provided in section 3084.8, shall be returned to the appellant with a written response to the appeal issue providing the reason(s) for each decision. Each response shall accurately describe the matter under appeal and fully address the relief requested. If the decision is a partial grant, the response shall clarify for each requested action whether it is granted, granted in part, or denied, and shall also state the action taken.

(i) Modification orders issued by the institution, parole region, or by the third level of review shall be completed within 60 calendar days of the appeal decision which determined the need for a modification order. Reasonable documented proof of completion of the modification order shall accompany the completed order, or a statement shall be added by the responder clarifying the action taken and why documentation is not available.

(1) If it is not possible to comply with the modification order within 60 calendar days, staff responsible for complying with the modification order shall advise the local appeals coordinator every 30 calendar days of the reason for the delay and provide a projected date of completion. If the modification order was imposed by the third level of review, the local appeals coordinator shall notify the third level Appeals Chief every 30 calendar days of the reason for the delay and provide a projected date of completion.

(2) When it is clear that the modification order cannot be completed in the allotted time, the appeals coordinator shall advise the appellant of the reason for the delay and the anticipated date of completion. This process shall occur every 30 calendar days until the modification order is completed. All time constraints for an appellant to submit an appeal to the next level are considered postponed up to 120 days until the completion of a previous level modification order. Thereafter, the appellant must submit his/her appeal to the next level within 30 calendar days of receiving the modification order response.

(3) If the modification order is not completed after 120 calendar days of the issuance, the appellant may submit the appeal to the next level for administrative review within 30 calendar days.

(4) If the appellant transfers prior to the completion of the modification order, the originally assigned institution or parole region shall retain responsibility for completion of the modification order as specified in subsection 3084.7(i), including cases where the receiving institution or parole region provides the actual relief.

(5) In cases where a modification order is issued on an emergency appeal, the order shall specify the timeframe for the completion of the action granted. The appeals coordinator, if granted at the second level of review, and the third level Appeals Chief or designee, if granted at the third level of review, shall notify the hiring authority by electronic transmission of the emergency timeframe for completion of the granted action.

NOTE: Authority cited: Sections 5058 and 10006(b), Penal Code. Reference: Sections 5054 and 10006(b), Penal Code; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; Civil Rights of Institutionalized Persons Act; Title 42 U.S.C. Section 1997 *et seq.*, Public Law 96-247, 94 Stat. 349; and Section 35.107, Title 28, Code of Federal Regulations.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89. For prior history, see section 3325(c).

2. Certificate of Compliance as to 5-18-89 order including amendment of subsections (a) and (d) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Editorial correction of printing errors in subsections (f)(1)(B) and (g)(2) (Register 92, No. 5).

4. Amendment of subsection (e)(4) and new subsections (h)(3), (i)(2)(c)1. and 2., and (k) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to 5-6-92 order including amendment of subsections (e)(4) and (i)(2)(C)1. transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).

6. New subsection (*l*) and amendment of Note filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.

7. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).

8. New subsections (m)–(m)(5) and amendment of Note filed 6-28-96 as an emergency; operative 6-28-96 (Register 96, No. 26). A Certificate of Compliance must be transmitted to OAL by 1-6-97 or emergency language will be repealed by operation of law on the following day.

9. Editorial correction of subsection (m)(3) (Register 96, No. 51).

10. New subsections (m)–(m)(3) and amendment of Note refiled 12-19-96 as an emergency; operative 12-19-96 (Register 96, No. 51). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 5-28-97 or emergency language will be repealed by operation of law on the following day.

11. Repealer of subsection (a)(1)(D), amendment of subsections (a)(2)(A), (b)(2), (d)(4), (d)(4)(A) and (e)(1), repealer of subsections (h) and (h)(1), renumbering of old subsections 3084.7(h)(2) and (h)(3) to new subsections 3391(b) and (c), subsection relettering, and amendment of newly designated subsection (k) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 12-19-96 order, incorporating relettering from 12-23-96 order and further amending section and Note, transmitted to OAL 4-14-97 and filed 5-23-97 (Register 97, No. 21).

13. Repealer of subsection (a)(1)(D), amendment of subsections (a)(2)(A), (b)(2), (d)(4), (d)(4)(A) and (e)(1), repealer of subsections (h) and (h)(1), renumbering of old subsections 3084.7(h)(2) and (h)(3) to new subsections 3391(b) and (c), subsection relettering, and amendment of newly designated subsection (k) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

14. Editorial correction of subsection (j)(1) and History 13 (Register 97, No. 24).

15. Certificate of Compliance as to 5-29-97 order, including amendment of subsections (b)(2) and (k), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

16. New subsections (m)–(m)(4) and amendment of Note filed 9-13-2005; operative 9-13-2005 pursuant to Government Code section 11343.4 (Register 2005, No. 37).

17. Repealer and new section heading and section and amendment of Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.

18. Certificate of Compliance as to 12-13-2010 order transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

19. Change without regulatory effect amending subsection (a)(3) filed 1-8-2014 pursuant to section 100, title 1, California Code of Regulations (Register 2014, No. 2).

20. Change without regulatory effect repealing subsection (b)(3) filed 4-22-2015 pursuant to section 100, title 1, California Code of Regulations (Register 2015, No. 17).

21. Amendment of subsection (b)(1) filed 6-2-2016 as an emergency; operative 6-2-2016 (Register 2016, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2016 or emergency language will be repealed by operation of law on the following day.

22. Certificate of Compliance as to 6-2-2016 order, including amendment of subsection (b)(1), transmitted to OAL 11-7-2016 and filed 12-22-2016; amendments effective 12-22-2016 pursuant to Government Code section 11343.4(b)(3) (Register 2016, No. 52).

**3084.8.   Appeal Time Limits.**

(a) Time limits for reviewing appeals shall commence upon the date of receipt of the appeal by the appeals coordinator.

(b) An inmate or parolee must submit the appeal within 30 calendar days of:

(1) The occurrence of the event or decision being appealed, or;

(2) Upon first having knowledge of the action or decision being appealed, or;

(3) Upon receiving an unsatisfactory departmental response to an appeal filed.

(c) All appeals shall be responded to and returned to the inmate or parolee by staff within the following time limits, unless exempted pursuant to the provisions of subsections 3084.8(f) and (g):

(1) First level responses shall be completed within 30 working days from date of receipt by the appeals coordinator.

(2) Second level responses shall be completed within 30 working days from date of receipt by the appeals coordinator.

(3) Third level responses shall be completed within 60 working days from date of receipt by the third level Appeals Chief.

(d) Exception to the time limits provided in subsection 3084.8(c) is authorized only in the event of:

(1) Unavailability of the inmate or parolee, or staff, or witnesses.

(2) The complexity of the decision, action, or policy requiring additional research.

(3) Necessary involvement of other agencies or jurisdictions.

(4) State of emergency pursuant to subsection 3383(c) requiring the postponement of nonessential administrative decisions and actions, including normal time requirements for such decisions and actions.

(e) Except for the third level, if an exceptional delay prevents completion of the review within specified time limits, the appellant, within the time limits provided in subsection 3084.8(c), shall be provided an explanation of the reasons for the delay and the estimated completion date.

(f) An appeal accepted as an emergency appeal shall be processed within the time frames set forth in subsections 3084.9(a)(4) and (a)(5).

(g) An appeal of the involuntary psychiatric transfer of an inmate or parolee shall be made directly to the third level pursuant to subsection 3084.9(b), within 30 calendar days of receipt of the hearing decision on the need for involuntary transfer.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; Civil Rights of Institutionalized Persons Act; Title 42 U.S.C. Section 1997 et seq., Public Law 96-247, 94 Stat. 349; and Section 35.107, Title 28, Code of Federal Regulations.

HISTORY:

1. New section filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 12-13-2010 order transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

**3084.9.   Exceptions to the Regular Appeal Process.**

(a) Emergency appeals. Emergency appeals should not be used by inmates or parolees as a substitute for verbally or otherwise informing staff of an emergency situation requiring immediate response.

(1) When circumstances are such that the regular appeal time limits would subject the inmate or parolee to a substantial risk of personal injury or cause other serious and irreparable harm, the appeal shall be processed as an emergency appeal. Emergency circumstances include, but are not limited to:

(A) Threat of death or injury due to enemies or other placement concerns.

(B) Serious and imminent threat to health or safety.

(2) An emergency appeal shall be submitted directly to the appeals coordinator and shall include a clear description of the circumstances warranting emergency processing. A request for emergency processing of an appeal that clearly does not meet the criteria for emergency processing or is made for the purpose of circumventing normal procedures or obtaining an expedited response may be considered misuse or abuse of the appeals process.

(3) If the appeals coordinator determines emergency processing is unwarranted, the inmate or parolee shall be notified and the appeal shall be processed pursuant to subsection 3084.5(b)(2).

(4) If emergency processing is warranted, the first level shall be waived and the second level review shall be completed within five working days.

(5) Prison Rape Elimination Act (PREA) Sexual Violence (Inmate on Inmate) and Staff Sexual Misconduct Appeals.

A grievance in whole or part containing allegations of sexual violence or staff sexual misconduct shall be processed as an emergency appeal. The appeal shall be immediately reviewed by the Hiring Authority or designee and processed directly at the Second Level of Review. When the appeal alleges or indicates that the inmate may be in substantial risk of imminent sexual violence or imminent staff sexual misconduct, a risk assessment shall be undertaken.

(A) Staff Complaints: While the department maintains the right to defend against an inmate lawsuit on the grounds of the applicable statute of limitations, a time limit shall not be imposed upon when an appellant may file such a grievance. The time limits for processing an emergency Staff Complaint are as follows:

1. There shall be no time limit for allegations of staff sexual misconduct, but once received by the appeals coordinator, the appeal shall be screened in accordance with subsection 3084.5(b)(4).

2. A risk assessment determination of all staff sexual misconduct related appeals shall be immediately completed by the Hiring Authority to determine if the appellant is in substantial risk of imminent staff sexual misconduct. If the assessment results in a determination of the appellant being in substantial risk of imminent staff sexual misconduct, the Hiring Authority shall take immediate corrective action.

3. The appeals coordinator shall provide an initial response to the appellant within 48 hours that shall include whether or not the appeal is being processed as an emergency Staff Complaint.

4. An initial risk assessment shall be documented within 48 hours and the completed risk assessment determination by the Hiring Authority shall be documented within 5 calendar days describing whether the appellant was determined to be in substantial risk of imminent staff sexual misconduct and the action(s) taken in response to the appeal.

5. If the conditions of exceptional delay exist as described in subsection 3084.8(d), the time constraints of Second Level of Review or Third Level of Review may be extended in increments of 30 days, but shall not exceed 160 days from the date the appeal was received by the appeals coordinator. Any extension shall require written notification to the appellant and shall include the estimated completion date. The time consumed by the appellant in preparing the appeal shall not count in the calculation of a timely response.

6. The appellant may consider an absence of a timely response at any level, including that of any properly noticed extension, a denial at that level.

7. The appellant is required to respond to the Second Level Review within 30 calendar days in accordance with subsection 3084.8(b)(3).

(B) PREA Allegations Against Another Offender: A time limit shall not be imposed upon when an appellant may file a grievance alleging inmate on inmate sexual violence. The time limits for processing an emergency sexual violence appeal are as follows:

1. Once received by the appeals coordinator, the appeal shall be screened in accordance with section 3084.8. When the appeal alleges or indicates that the inmate is at substantial risk of imminent sexual violence, a risk assessment shall be undertaken.

2. A risk assessment determination of all sexual violence related appeals shall be immediately completed by the Hiring Authority to determine if the appellant is in substantial risk of imminent sexual violence. If the assessment results in a determination of the appellant being in substantial risk of imminent sexual violence, the Hiring Authority shall take immediate corrective action.

3. The appeals coordinator shall provide an initial response to the appellant within 48 hours that shall include whether or not the appeal is being processed as an emergency PREA appeal.

4. An initial risk assessment shall be documented within 48 hours and the completed risk assessment determination by the Hiring Authority shall be documented within 5 calendar days describing whether the appellant was determined to be in substantial risk of imminent sexual violence and the action(s) taken in response to the appeal.

5. If the conditions of exceptional delay exist as described in subsection 3084.8(d), the time constraints of Second Level of Review or Third Level of Review may be extended in increments of 30 days, but shall not exceed 160 days from the date the appeal was received by the appeals coordinator. Any extension shall require written notification to the appellant and shall include the estimated completion date. The time consumed by the appellant in preparing the appeal shall not count in the calculation of a timely response.

6. The appellant may consider an absence of a timely response at any level, including that of any properly noticed extension, a denial at that level.

7. The appellant is required to respond to the Second Level Review within 30 calendar days in accordance with subsection 3084.8(b)(3).

(b) Involuntary psychiatric transfers. An inmate or parolee may appeal the written decision of an involuntary psychiatric transfer, pursuant to subsection 3379(d), directly to the third level. A copy of the hearing decision shall be attached to the CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, but the absence of such documentation shall not be cause for rejection of the appeal.

(c) Joint Venture Program (JVP) employer related grievances.

(1) Any current or former Joint Venture inmate-employee who believes he/she has a grievance regarding a wage and hour or retaliation claim against a JVP employer shall submit the written grievance to the JVP Chief.

(2) The JVP Chief shall attempt to resolve all complaints.

(3) Time frames for filing grievances will be governed by the Division of Labor Standards Enforcement's (DLSE) statutes of limitations, including but not limited to, Labor Code section 98.7 and Code of Civil Procedure sections 337, 338, and 339, for the appropriate type of complaint.

(4) If the inmate is dissatisfied with the JVP Chief's decision, the inmate may file a complaint with the Labor Commissioner.

(d) Parole period and term computation appeals. Parole period and term computation appeals shall be reviewed at the first level by the department's records staff. The inmate or parolee must state in detail the alleged error or reason for disputing the calculation of his or her release date.

(1) Records staff shall research the relevant case factors and document the findings. If the appeal is denied, the denial shall be delivered by records staff or by the appropriate caseworker to the appellant who shall sign and date a CDC Form 1031 (8-88), Acknowledgement of Receipt.

(2) The inmate or parolee may request a Computation Review Hearing that constitutes the second level review. The inmate or parolee shall be notified at least 24 hours prior to the hearing via the CDC Form 1032 (12/86), Notice of Time, Date, and Place of Computation Review Hearing, but may sign a voluntary waiver of such notice.

(3) The inmate or parolee shall be provided a copy of the CDC Form 1033 (8-88), Computation Review Hearing Decision, at the conclusion of the hearing.

(e) California Prison Industry Authority (CALPIA) health and safety complaints.

(1) A health and safety complaint should not be used by inmates as a substitute for verbally or otherwise informing staff of an urgent health or safety situation requiring immediate response.

(2) Pursuant to Labor Code and Industrial Relations regulations, an inmate who believes a health or safety hazard exists in a CALPIA operation shall deposit a written complaint in a readily accessible complaint box or give the complaint to any CALPIA staff member who shall submit it to the CALPIA health and safety committee for review and response. The committee shall undertake all authorized levels of review and referral.

(f) Property appeals. All property loss or damage arising from the same event or action for a single appellant shall be included in one appeal.

(1) An inmate or parolee who is appealing missing/damaged property that he or she believes occurred as a result of an error made by the receiving entity or by the transportation unit during the transfer of his/her property shall submit the appeal to the appeals coordinator of the receiving institution/region.

(2) An inmate or parolee who is appealing missing/damaged property that he or she alleges occurred as a result of an error made by the sending entity during the transfer from one institution/region to another institution/region, shall submit the appeal to the appeals coordinator of the receiving institution/region who will forward it to the sending institution/region for processing.

(3) The appeals coordinator shall process the appeal for a first level response.

(A) An attempt shall be made by staff to assess the damaged property and/or conduct a thorough search to locate the missing property.

(B) An attempt shall be made by staff to research the appellant's claim utilizing departmental inmate property records.

(4) If an administrative decision is made that the department is responsible for loss or damage to the appellant's property pursuant to section 3193, an attempt by staff to use donated property to substitute for or replace lost property at no cost to the state, or any effort to repair damaged property at institution expense, will be made prior to awarding monetary compensation for the loss.

(5) An appellant's refusal to accept repair, replacement, or substitution of like items and value shall be cause to deny the appeal. When denying an appeal on this basis, the reviewer must state why the replacement offered to the appellant is considered an equivalent item and value.

(6) The provisions of subsection 3193(b) shall apply when monetary compensation is determined to be the appropriate remedy.

(7) Before payment of any granted claim, the inmate or parolee shall discharge the state from further liability for the claim if required pursuant to Government Code section 965.

(8) The document denying a property claim appeal shall inform the appellant of the right to submit a claim directly with the Victim Compensation and Government Claims Board and shall provide the mailing address for such filing.

(9) An inmate or parolee who intends to submit a claim with the Victim Compensation and Government Claims Board shall adhere to the rules and timeframes governing those claims, which may be more restrictive than those of the CDCR appeals process.

(g) Disciplinary Appeals.

(1) A disciplinary action cannot be appealed until the hearing process is completed, including any re-hearing.

(2) Inmates who wish to exhaust their administrative remedies for "serious" disciplinary issues pursuant to section 3315 must appeal through the third level of review.

(h) Transfer Appeals. A decision for transfer to another institution may be appealed by the affected inmate after the transfer endorsement by the classification staff representative.

(1) Filing of an appeal of a transfer decision shall not normally be cause to stay or delay a transfer except in extraordinary circumstances and at the discretion of the Warden or designee.

(2) Regular transfer appeals:

(A) The first level of appeal shall be waived.

(B) If the appeal is granted at second level, the appellant's case shall be presented to a second classification staff representative for reconsideration.

(C) If the second classification staff representative disagrees with institution's recommendation, the institution head may submit the case to the departmental review board for final decision.

(D) If the appeal is denied at second level or the institution head does not refer the case to the departmental review board, the appellant may appeal at the third level.

(3) Reception center transfer appeals:

(A) First level review shall be conducted by the reception center's correctional administrator.

(B) If the appeal is granted, the appellant may be retained at the reception center until the case is presented to a second classification staff representative only if the proposed transfer poses a threat to the health or safety of the appellant.

(C) If the second classification staff representative disagrees with the first level decision, the appellant may resubmit the appeal for second level review.

(D) Second level review shall be conducted by the institution head, who may retain the appellant at the reception center as a second level review action and refer the appeal to the departmental review board for resolution. The board's decision shall constitute final review.

(i) Staff complaints. A staff complaint filed by an inmate or parolee shall be processed as an appeal pursuant to this Article, not as

a citizen's complaint. However, any appeal alleging misconduct by a departmental peace officer as defined in subsection 3291(b) shall be accompanied by the subsection 3391(d) Rights and Responsibility Statement.

(1) An inmate or parolee alleging staff misconduct by a departmental employee shall forward the appeal to the appeals coordinator. Only after the appeal has been reviewed and categorized as a staff complaint by the hiring authority or designee at a level not below Chief Deputy Warden, Deputy Regional Parole Administrator, or equivalent level shall it be processed as a staff complaint. If the hiring authority makes a determination that the complaint shall not be accepted as a staff complaint, it shall be processed as a routine appeal pursuant to subsection 3084.5(b)(4)(A).

(2) When an appeal is accepted alleging staff misconduct that also includes any other issue(s), the appeals coordinator at the time the appeal is accepted as a staff complaint shall notify the inmate or parolee that any other appeal issue(s) may only be appealed separately and therefore resubmission of those issues is required if the intention is to seek resolution of such matters. Upon receiving such a notice, the inmate or parolee has 30 calendar days to submit separate appeal(s) regarding the other issue(s).

(3) All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority or designee within five working days. The hiring authority will review the complaint and determine if:

(A) The allegation warrants a request for an Internal Affairs investigation as the alleged conduct would likely lead to adverse personnel action. The case will be referred for an Internal Affairs investigation as instructed by the hiring authority.

(B) The allegation does not warrant a request for an Internal Affairs investigation in which case a confidential inquiry shall be completed by the reviewer. An inquiry shall be conducted whenever the appeal is designated as a staff complaint but is not referred to the Office of Internal Affairs (OIA) or when the matter is declined by the OIA.

1. A confidential report shall summarize the review and include a determination of the findings concerning the allegation. This document shall not be provided to the appellant. It shall be kept in the appeal file in the Appeals Office and no other copies shall be kept or maintained except as herein described or as needed for Third Level review or litigation. This document is strictly confidential to all inmates and any staff except those involved in the inquiry process or litigation involving the department.

2. The accused staff may review the confidential report in the appeals office upon approval of the litigation coordinator, but if any information relating to other staff is contained in the confidential document, a copy shall be made and that information redacted prior to the review. Neither the original nor the copy shall leave the appeals office except as required for litigation and any redacted copy shall be placed with the original after review.

3. The assigned reviewer will interview the appellant and as many witnesses as necessary to reach a determination concerning the allegation. The subject(s) of the staff complaint may be interviewed by a person trained to conduct administrative interviews and will be given notice of the interview at least 24 hours prior to the interview. If the subject chooses to waive the 24-hour requirement, he/she must indicate this at the time they are given notice. If waived, the subject may be interviewed immediately.

4. A confidential inquiry shall review the information available to determine whether policy was violated.

(4) The institution's appeal response to a staff complaint shall inform the appellant of either:

§ 3085                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **TITLE 15**

(A) The referral for investigation and the status of the investigation. Additionally, the appellant shall be notified of the outcome at the conclusion of the investigation.

(B) The decision to conduct a confidential inquiry and whether the findings determined that the staff in question did or did not violate departmental policy with regard to each of the specific allegation(s) made.

(5) A staff complaint alleging excessive or inappropriate use of force shall be addressed pursuant to the procedures described in sections 3268 through 3268.2.

(6) An appeal alleging staff misconduct by an appeals coordinator shall be reviewed by the hiring authority for determination of processing.

NOTE: Authority cited: Section 5058, Penal Code; and Section 6304.3, Labor Code. Reference: Sections 148.6, 832.5, 832.7, 832.8, 5054 and 5058.4, Penal Code; Sections 935.6, 965, 3300-3313, 19570-19575.5, 19583.5 and 19635, Government Code; Sections 98.7 and 6304.3, Labor Code; Sections 337, 338 and 339, Code of Civil Procedure; Sections 344.40, 344.41, 344.42 and 344.43, Title 8, Industrial Relations, California Code of Regulations; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; 28 CFR Sections 35.107 and 115.52; *Wolff v. McDonnell* (1974) 418 U. S. 539, 558-560; and *Vasquez v. State of California*, 105 Cal.App.4th 849 (2003) as implemented by the Stipulated Injunction and Order entered by the Superior Court of San Diego County in Case No.GIC-740832.

HISTORY:
1. New section filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 12-13-2010 order, including repealer of subsection (a)(5), transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).
3. New subsections (a)(5)–(a)(5)(B)7. and amendment of Note filed 10-20-2016; operative 10-20-2016 pursuant to Government Code section 11343.4(b)(3) (Register 2016, No. 43).

**3085.   Americans With Disabilities Act.**

Explanation: Departmental compliance with the Americans with Disabilities Act (ADA) is currently under the supervision of federal courts as specified in Court Ordered Remedial Plans articulated in the *Armstrong v. Schwarzenegger* (previously: *Armstrong v. Davis*) case. Accordingly, departmental ADA practices, including offender ADA appeal rights are currently carried out in accordance with an Armstrong Remedial Plan (ARP) established by the court of jurisdiction.

NOTE: *Armstrong v. Schwarzenegger* (2002) USDC-ND (No. C-94-2307-CW); Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328.

HISTORY:
1. New section and forms filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).
3. Repealer of section and Form CDC 1824, new explanatory paragraph and amendment of Note filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 12-13-2010 order transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

Article 8.5.   Written Request Process

**3086.   Inmate/Parolee Request for Interview, Item or Service.**

(a) Inmates and parolees may request interviews with staff and/or request items and services via a written request process. The objectives of timely resolution of routine matters through an effective and non-conflictive communication process shall be facilitated by the practices set forth in this article, which shall be henceforth applied uniformly toward that end. Department staff shall attempt to resolve inmate and parolee issues expeditiously.

(b) The written request process may be used when the inmate or parolee seeks a response to an issue or concern related to his or her confinement or parole.

(c) The department shall ensure that inmates and parolees will have access to the CDCR Form 22 (10/09), Inmate/Parolee Request for Interview, Item or Service, which is incorporated by reference. This form shall be made readily available in:

(1) All inmate housing units, general or segregated.

(2) All institutional libraries.

(3) Any facility under the department's jurisdiction, whether residential or medical, where inmates are required to remain more than 24 hours.

(4) All parole field offices.

(d) The Inmate/Parolee Request for Interview, Item or Service form will provide:

(1) A written method for an inmate or parolee to address issues and concerns with staff and/or to request items and services.

(2) A record of the date the form was first presented to staff, and the date of each staff response.

(e) When seeking response to a written request for an interview, item, or service, the inmate or parolee shall complete the Request for Interview, Item or Service form to describe his or her request. The inmate shall deliver or mail via institutional mail the completed form to any staff member who is able to respond to the issue. The parolee shall deliver or mail via the United States Postal Service the completed form to his or her parole agent, who shall respond to the issue or, as appropriate, route the form to another staff member who is able to respond to the issue.

(1) If the inmate or parolee mails the form, the receipted copy of their request may also be returned by staff via the mail.

(2) As the written request process does not stay the time constraints for filing an appeal, the inmate or parolee is not precluded from filing an appeal on the same issue prior to receiving a response to their written request. However, the appeal may be rejected by the appeals coordinator or designee with instructions to complete the request form process before resubmitting the appeal.

(f) Upon receipt of an inmate or parolee completed Request for Interview, Item or Service form, the employee shall:

(1) Accept, date and sign the form.

(2) Provide to the inmate or parolee the bottom copy of the employee signed form, which shall serve as the inmate's or parolee's receipt to verify the date of submittal. The employee, at his or her discretion, can respond to the request at this time or wait until he or she has more time to respond within the constraints of this article.

(3) The receipt of an inmate- or parolee-completed form does not preclude a staff member from forwarding the document to a more appropriate responder; however, employees shall either deliver the form to the staff member or place it in institutional mail addressed to the intended staff member within 24 hours.

(4) Within three working days after receipt of the form, the responding employee shall:

(A) Note his or her decision or action on the form.

(B) Sign and date the form.

(C) Retain a copy for his or her records.

82

**TITLE 15**     DEPARTMENT OF CORRECTIONS AND REHABILITATION     **§ 3092**

(D) Return the original and remaining copy of the form to the inmate or parolee.

(g) If the inmate or parolee is dissatisfied with or disagrees with the staff member's response, he or she may submit the Request for Interview, Item or Service form to the employee's supervisor for review, while retaining a copy for his or her records. Only in the absence of the staff member's supervisor may the inmate or parolee submit the form to another supervisor of the office or unit in question.

(h) Within seven calendar days of receipt of the Request for Interview, Item or Service form, the supervisor shall:

(1) Indicate a decision or action on the form.

(2) Sign and date the form.

(3) Ensure a copy is made and retained in the facility records for a period no less than prescribed for inmate correspondence in the approved departmental records retention schedule.

(4) Return the original to the inmate or parolee.

(i) An inmate or parolee's documented use of a Request for Interview, Item or Service form does not constitute exhaustion of administrative remedies as defined in subsection 3084.1(b).

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 148.6, 832.5 and 5054, Penal Code; Section 19583.5, Government Code; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; Civil Rights of Institutionalized Persons Act; Title 42 U.S.C. Section 1997 et seq., Public Law 96-247, 94 Stat. 349; Section 35.107, Title 28, Code of Federal Regulations; and *Wolff* v. *McDonnell* (1974) 418 U.S. 539, 558-560.

HISTORY:

1. New article 8.5 (section 3086) and section filed 12-13-2010 as an emergency; operative 1-28-2011 (Register 2010, No. 51). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-7-2011 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 12-13-2010 order transmitted to OAL 6-15-2011 and filed 7-28-2011 (Register 2011, No. 30).

# SUBCHAPTER 2.   INMATE RESOURCES

## Article 1.   Canteens

**3090.   Inmate Canteen Establishment and Draw Limits.**

(a) Each facility shall establish an inmate canteen pursuant to penal code section 5005 enabling inmate purchases of approved merchandise. Facility staff shall consult with representatives of the inmate population when determining items to be stocked in the canteen for resale to the inmates.

(b) The maximum monthly canteen draw authorized by the Secretary is $220.00. An inmate's regular canteen purchase shall not exceed the limits specified in section 3044 or the inmate trust account balance, whichever is less.

(c) Inmates shall be permitted to deduct from their trust accounts for canteen purchases by signing a canteen sales receipt.

(d) An inmate's trust account deductions for canteen purchases shall not be restricted beyond limits established by the Secretary for all inmates in like work groups, except by formal disciplinary action for a violation involving canteen or the intentional or negligent destruction, damage, or misuse of state property, or in accordance with subsections 3315(f)(5)(K) and 3315(f)(5)(M).

(e) Trust account statements showing current balances shall be issued to those inmates submitting written requests, provided 90 days have elapsed since their previous request.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5005 and 5054, Penal Code.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).
2. Amendment filed 9-30-77; effective thirtieth day thereafter (Register 77, No. 40).
3. Amendment filed 3-22-78; effective thirtieth day thereafter (Register 78, No. 12).
4. Amendment of subsections (a) and (c) filed 2-16-83; effective thirtieth day thereafter (Register 83, No. 8).
5. Amendment of section heading, text and Note filed 10-14-93; operative 11-15-93 (Register 93, No. 42).
6. Amendment of subsection (b) filed 3-8-2001; operative 4-7-2001 (Register 2001, No. 10).
7. Amendment of subsections (b) and (c) filed 5-25-2010; operative 6-24-2010 (Register 2010, No. 22).
8. Amendment of subsection (d) filed 7-19-2011; operative 8-18-2011 (Register 2011, No. 29).

**3091.   Inmate Canteen Operation.**

(a) A current list of approved available merchandise, the price of each item, and the canteen operating hours shall be conspicuously posted at each canteen. Copies shall be made available to inmates denied direct access to the canteen.

(b) Canteen draw schedules shall:

(1) Be published at least once every six months.

(2) Be posted in each housing unit at each facility and camp.

(3) Include no less than three canteen draw dates each month based on the last two digits of the inmate's department identification number.

(4) Each inmate shall be entitled to no less than one draw each month.

(c) When purchasing merchandise, inmates shall be required to:

(1) Complete an itemized order list prior to purchasing canteen items.

(2) Place a clear thumbprint or three fingerprints on the canteen sales receipt.

(3) Sign the canteen sales receipt to authorize the Trust Account withdrawal and verify the amount purchased.

(4) Segregated inmates shall sign the approved canteen shopping list prior to submitting it to the segregation unit staff authorizing the Trust Account withdrawal, and upon receipt of the merchandise, shall sign the approved institution distribution forms to verify the amount purchased and received.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5005, 5006 and 5054, Penal Code.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).
2. Amendment of section heading, text and Note filed 10-14-93; operative 11-15-93 (Register 93, No. 42).
3. Repealer of subsection (b)(2), subsection renumbering, amendment of newly designated subsection (b)(3), new subsection (b)(4), amendment of subsections (d)(2)-(3) and repealer and new subsection (d)(4) filed 5-25-2010; operative 6-24-2010 (Register 2010, No. 22).
4. Repealer of subsection (c) and subsection relettering filed 10-22-2012; operative 11-21-2012 (Register 2012, No. 43).

**3092.   Special Inmate Canteen Purchases.**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5006 and 5054, Penal Code.

HISTORY:

1. Amendment of section heading and text and new Note filed 10-14-93; operative 11-15-93 (Register 93, No. 42).
2. Amendment relocating former section 3092 to section 3190(e)-(f) filed 12-30-2003 as an emergency; operative 1-1-2004 (Register 2004, No. 1). Pursuant to Penal Code section 5058.3(a)(1), a Cer-



(e) In facilities contracted to house CDCR inmates outside of California, the use of deadly force shall only be applied in accordance with applicable law in the state where the facility is located.

(f) A firearm shall not be discharged if there is reason to believe that persons other than the intended target will be injured.

(g) Firearms may be discharged as a warning only in an institutional/facility setting and only when deadly force is permitted under Section 3268(d).

(h) Immediate Use of Force. A verbal warning shall be given before force is used unless the circumstances requiring the immediate force preclude such a verbal warning.

(i) Controlled Use of Force. In an institution/facility setting, controlled use of force may be used when time and circumstances permit advance planning, staffing and organization. A controlled use of force requires authorization and the presence of a First or Second Level Manager, or during non-business hours, an AOD, and must be documented on a CDCR Form 837-C (Rev. 10/15), Crime/ Incident Report Part C - Staff Report, which is hereby incorporated by reference.

(j) Tactical Use of Force. In a field or community setting, the tactical use of force is part of an operation plan at a predetermined location with intended targets. All use of force options available shall be considered. The Tactical Use of Force shall require prior supervisory approval during the operation planning.

(k) Chemical Agents. Departmentally approved chemical agents include, but are not limited to the following: oleoresin capsicum (OC), chloroacetophenone (CN), and orthochlorobenzalmalononitrile (CS).

(l) Decontamination from Chemical Agents. Any person exposed to a chemical agent shall be afforded an opportunity to decontaminate as soon as practical. If the person refuses to decontaminate, no other action is necessary. If an inmate was exposed in a cell and not removed from the cell where the exposure occurred, in-cell decontamination shall be afforded to the inmate, to include but not be limited to:

(A) Health care staff advising the inmate how to self decontaminate in the cell.

(B) Health care staff monitoring the in-cell inmate at least every 15 minutes for a period not less than 45 minutes.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 196, 835a, 2651, 2652 and 5054, Penal Code; Section 50, Civil Code; Whitley v. Albers (1985) 475 U.S. 312, 106 S.Ct. 1078; and Madrid v. Cate (U.S.D.C. N.D. Cal. C90-3094 TEH).

HISTORY:
1. New article 1.5 (sections 3268-3268.2) and section filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).
2. Editorial correction of History 1 (Register 99, No. 24).
3. Certificate of Compliance as to 4-1-99 order, including amendment of first paragraph, transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).
4. Amendment of section and Note filed 8-19-2010; operative 8-19-2010 pursuant to Government Code section 11343.4 (Register 2010, No. 34).
5. Amendment of subsection (a)(4), new subsection (a)(5), subsection renumbering, amendment of newly designated subsection (a) (17) and subsections (d)(1) and (i) filed 6-17-2015 as an emergency; operative 6-17-2015 (Register 2015, No. 25). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-24-2015 or emergency language will be repealed by operation of law on the following day.
6. Certificate of Compliance as to 6-17-2015 order, including further amendment of subsection (i), transmitted to OAL 11-17-2015 and filed 12-30-2015; amendments operative 12-30-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2016, No. 1).

<u>3268.1.</u>   **Reporting and Investigating the Use of Force for Institution/Facility Staff.**

(a) Use of Force-Reporting Requirements. Every staff use of force is an incident that shall be reported.

(1) Any employee who uses force or observes a staff use of force shall report it to a supervisor as soon as practical and submit the appropriate documentation, prior to being relieved from duty. In an institution/facility setting the documentation shall be on a CDCR Form 837-A (Rev. 10/15), Crime/Incident Report Part A-Cover Sheet, CDCR Form 837-A1 (Rev. 10/15), Crime/Incident Report Part A1-Supplement, CDCR Form 837-B1 (Rev. 10/15), Crime/Incident Report Part B1-Inmate, CDCR Form 837-B2 (Rev. 10/15), Crime/Incident Report Part B2-Staff, CDCR Form 837-B3 (Rev. 10/15), Crime/Incident Report Part B3-Visitor, Other, CDCR Form 837-C (Rev. 10/15), Crime/Incident Report Part C-Staff Report, CDCR Form 837-C1 (Rev. 10/15), Crime/Incident Report Part C1-Supplement, or a CDCR Form 837-C2 (Rev. 10/15), Crime/ Incident Report Part C2-Review Notice, which are hereby incorporated by reference.

(2) The supervisor shall document his or her review on a CDCR Form 3010 (Rev. 10/15), Incident Commander's Review/Critique Use of Force Incidents, which is hereby incorporated by reference, and forward it with the employee's document through the designated chain of command, to the institution head for approval or follow-up action.

(b) Additional Reporting Requirements for Use of Deadly Force.

(1) An employee who intentionally or accidentally uses deadly force, whether on or off duty, shall ensure that a supervisory employee is notified of the incident without delay. This reporting is not required for the lawful discharge of a firearm during weapons qualifications, firearms training, or other legal recreational use of a firearm.

(2) The response supervisor shall ensure that the chain of command is notified and all necessary health and safety, medical and security measures are initiated.

(A) If the incident is in an institution/facility, the response supervisor shall obtain a public safety statement(s) (oral statement) from the staff employing deadly force and shall document the essence of the oral statement in writing and submit it to the incident commander. Providing a public safety statement does not relieve the staff of the responsibility to submit a written report in accordance with 3268.1(a), or within 24 hours after the incident.

(B) For incidents occurring in a community setting, the on-duty supervisor shall ensure local law enforcement is contacted.

(3) The incident commander shall notify the Office of Internal Affairs (OIA) and the Bureau of Independent Review (BIR) as soon as possible, but no later than one hour from the time the incident is discovered, of any use of deadly force and every death or GBI that could have been caused by a staff use of force.

(c) Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation. Any employee who becomes aware of an allegation of unnecessary or excessive use of force, whether it occurs during a reportable incident or not, shall verbally report the allegation to a custody supervisor as soon as possible, followed by the submission of the appropriate documentation.

(d) Video Recording Requirements.

(1) A video recording is required for all Controlled Uses of Force occurrences. A video recording of the inmate is also required following a use of force occurrence resulting in SBI or GBI to the inmate and shall be documented on a CDCR Form 3013-1 (Rev. 10/15), Inmate Interview for GBI and SBI Worksheet and a CDCR Form 3014 (Rev. 10/15), Report of Findings—Inmate Interview, which are hereby incorporated by reference.

§ 3268.2                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **TITLE 15**

✱ (2) A video recording of the inmate shall be made when the inmate has made an allegation of an unnecessary or excessive use of force and shall be documented on a CDCR Form 3013-2 (Rev. 10/15), Inmate Interview for Allegation Worksheet and a CDCR Form 3014 (Rev. 10/15), Report of Findings—Inmate Interview, which are hereby incorporated by reference.

(e) Reviewing Use of Force Requirements.

(1) For reported incidents, a good faith effort must be made at all levels of review in order to reach a judgment whether the staff's actions prior to, during, and subsequent to the force used was in compliance with regulations, procedure and applicable law and determine if follow-up action is necessary.

(2) Use of Force levels of review include the following:

(A) Incident Commander Review, CDCR Form 3010 (Rev. 10/15), Incident Commander's Review/Critique Use of Force Incidents.

(B) First Level Manager Review, CDCR Form 3011 (Rev. 10/15), Manager's Review—First Level Use of Force Incidents, which is hereby incorporated by reference.

(C) Second Level Manager Review, CDCR Form 3012 (Rev. 10/15), Manager's Review—Second Level Use of Force Incidents, which is hereby incorporated by reference.

(D) Use of Force Coordinator Review. The Use of Force Coordinator shall normally schedule all logged use of force cases for review within 30 days of their logged occurrence. The Use of Force Coordinator shall document their review on a CDCR Form 3034 (Rev. 10/15), IERC Allegation Review, and a CDCR Form 3036 (Rev. 10/15), IERC Critique and Qualitative Evaluation, which are hereby incorporated by reference.

(E) Institutional Executive Review Committee (IERC). Normally, the IERC is comprised of the following staff:

1. Institution Head or Chief Deputy Warden, as chairperson and final decision maker.

2. At least one other manager assigned on a rotational basis.

3. In-Service Training Manager.

4. One health care practitioner or clinician.

5. A Use of Force Coordinator.

6. Other designated supervisors and rank and file staff may also attend, as determined by the Institution Head. A representative of the BIR may also attend and monitor IERC meetings.

7. The IERC shall meet to review its cases on at least a monthly basis, or on a schedule to ensure all cases are reviewed within 30 days. The IERC shall document their review on a CDCR Form 3035 (Rev. 10/15), IERC Use of Force Review & Further Action Recommendation, which is hereby incorporated by reference.

(F) Department Executive Review Committee (DERC).

(f) Investigating Deadly Force and Any Use of Force that could have caused Death or Great Bodily Injury.

(1) Every use of deadly force (except those meeting the criteria set forth in 3268(a)(20)) and every death or great bodily injury that could have been caused by a staff use of force will be investigated by the Deadly Force Investigation Team (DFIT) and reviewed by the Deadly Force Review Board (DFRB).

(2) DFIT shall conduct criminal and administrative investigations of every death or great bodily injury that could have been caused by a staff use of force and every use of deadly force, except those meeting the criteria set forth in 3268(a)(20), the lawful discharge of a firearm during weapons qualifications or firearms training, or other legal recreational uses of a firearm.

(3) DFRB shall conduct a full and complete review of all incidents involving a use of deadly force (except those meeting the criteria set forth in 3268(a)(20)) and every death or great bodily injury that could have been caused by a staff use of force, regardless

of whether the incident occurs in an institutional or community setting.

(g) Use of Force Joint Use Committee (JUC). The Use of Force JUC shall review and evaluate recommended revisions to the CDCR's Use of Force Regulations and Procedures. The JUC shall be comprised of the following field staff:

(1) At least one Institution Head, as chairperson,

(2) At least one staff member from each DAI mission based region, at the level of Lieutenant or Captain,

(3) At least one Use of Force Coordinator,

(4) At least three representatives from the California Correctional Peace Officer Association (CCPOA), as designated by the CCPOA,

(5) The Chief of BIR, or designee, and

(6) Others as needed and assigned by the Deputy Director, DAI.

The JUC shall meet quarterly as necessary, but not less than annually, to review recommended revisions.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 196, 835a, 2651, 2652 and 5054, Penal Code; Section 50, Civil Code; and *Madrid v. Cate* (U.S.D.C. N.D. Cal. C90-3094 TEH).

HISTORY:

1. New section filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction of History 1 (Register 99, No. 24).

3. Certificate of Compliance as to 4-1-99 order, including amendment of subsections (a)(1) and (b)(2), transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

4. Amendment of section heading, section and Note filed 8-19-2010; operative 8-19-2010 pursuant to Government Code section 11343.4 (Register 2010, No. 34).

5. Amendment of subsections (a)(1)–(2), (d)(1)–(2), (e)(2)(A)–(e)(2) (E)4. and (e)(2)(E)7. filed 6-17-2015 as an emergency; operative 6-17-2015 (Register 2015, No. 25). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-24-2015 or emergency language will be repealed by operation of law on the following day.

6. Certificate of Compliance as to 6-17-2015 order, including further amendment of section, transmitted to OAL 11-17-2015 and filed 12-30-2015; amendments operative 12-30-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2016, No. 1).

**3268.2.   Use of Restraints.**

(a) Only state issued restraint gear and equipment that has been authorized by the CDCR for use at the discretion of staff shall be issued/assigned to an employee or carried/used by an employee while on duty. Any use of unauthorized restraint gear or equipment or use of approved restraint gear or equipment in a manner other than specified in (b) shall require a pre-approval in writing by the Hiring Authority of the institution/facility/unit that is making the request.

(b) Mechanical means of physical restraint may be used only under the following circumstances:

(1) When transporting a person between locations.

(2) When a person's history, present behavior, apparent emotional state, or other conditions present a reasonable likelihood that he or she may become violent or attempt to escape.

(3) When directed by licensed health care clinicians, to prevent a person from attempting suicide or inflicting injury to himself or herself.

(c) Mechanical restraints shall not be:

(1) Used as punishment.

(2) Placed around a person's neck.

(3) Applied in a way likely to cause undue physical discomfort or restrict blood flow or breathing, e.g., hog-tying.

TITLE 15                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    § 3000

## DIVISION 3.  ADULT INSTITUTIONS, PROGRAMS AND PAROLE

## CHAPTER 1.  RULES AND REGULATIONS OF ADULT OPERATIONS AND PROGRAMS

HISTORY:
1. Change without regulatory effect repealing preface filed 10-29-90 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 6).

### Article 1.  Behavior

**3000.  Definitions.**

The following are definitions of terms as used in these regulations:

Accessory means a person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that the principal may avoid punishment, and has knowledge that said principal committed the felony.

Administrative Officer of the Day (AOD) means an administrative staff member possessing managerial or supervisory experience and authority to make decisions in the absence of an Institution Head or Region Parole Administrator.

Adverse Witness means a person who has given or will give information against a prisoner or parolee. For the purpose of conducting parole revocation hearings, adverse witness means a person whose expected testimony supports the violation charged.

Affiliate means individual offenders validated as members, associates, or monitored status who are connected or interact with a certified or recognized Security Threat Group.

Air Scan Search means when a departmental canine is instructed to "scan" or sniff the air in an attempt to detect the odor of drugs, tobacco, or cell phones on a person or within specific articles of property. The canine handler will allow the dog to move freely past individuals and objects. Should the canine detect the odor of any drugs, tobacco, or cell phones the canine will display a positive canine alert.

Alternative Custody Program (ACP) means a voluntary program developed for female inmates whose current commitment offense is neither violent nor serious and whose prior or current commitment offense is not a registerable sex offense pursuant to PC section 1170.05 that allows eligible inmates committed to state prison to serve their sentence in the community in lieu of confinement in state prison. Provisions for ACP are located in Title 15, Division 3 Chapter 1, Article 6.8 commencing with section 3078.

Alternative Custody Program Participant means any offender who has been accepted into the Alternative Custody Program as defined in this section.

* > Appeal means a formal request for, or the act of requesting, an official change of a decision, action, or policy.

Architectural and Engineering Services means those services procured outside of the State's Civil Service procedures and which are rendered by an architect or engineer, but may include ancillary services logically or justifiably performed in connection therewith.

Arrest means the taking of a person into custody, in a case and in a manner authorized by law.

Asylum State means the state other than California in which a parolee-at-large is in custody.

Attempted Escape means an unsuccessful effort to breach a secured perimeter or the use of force against a person to attempt access into an unauthorized area. Some progress toward implementing an escape must be made to implement a plan. This includes, but is not

limited to the following overt acts: acquiring unauthorized clothing or identification, preparing a hiding place in an unauthorized area, lying in wait for a potential hostage, attempting access to a perimeter that was unsupervised, unlawfully obtaining tools to aid in an escape, manufacturing a likeness of a person in order to substitute for the inmate's presence, or receiving assistance from other conspirators who acted upon an escape plan, e.g. a plan to escape uncovered from a letter, telephone or mail communication.

Automated Needs Assessment Tool means a systematic process which consists of a series of questions and a review of the inmate's criminal data in order to establish a baseline for the offender's criminogenic needs to assist in determining appropriate placement in a rehabilitation program.

Behavior Management Unit is alternate general population housing and programming which is designed to reduce inmate's continuing involvement in disruptive behavior, violence, or noncompliance with CDCR rules and regulations, allowing non-disruptive inmates in the general population the opportunity to program without continual interruption due to the behavior of a smaller, more disruptive segment of the inmate population.

Board of Parole Hearings (Board) means the state agency which is responsible for the administration of parole for those persons committed to the department under Penal Code section 1168 and those committed under Penal Code section 1170 who also meet the criteria found in Penal Code section 2962.

California Agency Parolee means a person released from department facility to parole supervision in a California community who subsequently is within the custody of any California agency, or subdivision thereof, except the department.

California Agency Prisoner means a prisoner who has been transferred from the custody of the department to the custody of any other California agency or subdivision thereof.

California Concurrent Parolee means a person on parole for a California sentence and a sentence of another jurisdiction who is being supervised in a California community pursuant to the Uniform Act for Out-of-State Parole Supervision (Penal Code sections 11175–11179).

California Law Enforcement Telecommunications System (CLETS) means a statewide telecommunications system for the use of law enforcement agencies maintained by the California Department of Justice.

California Out-of-State Correctional Facility (COCF). The COCF is a program through which male CDCR inmates are transferred to out-of-state correctional facilities that have contracted with the CDCR to provide housing, security, health care and rehabilitative programming services to CDCR inmates.

CalParole means a centralized statewide parolee information data system.

Canine means a dog that is trained specifically to assist CDCR personnel. Departmental canines are primarily responsible for searching for illegal drugs, tobacco, and cell phones. The department's most commonly used breeds are Labrador Retrievers, German Shepherds, and Belgian Malinois; however, Beagles and German Short Hair Pointers may also be used. Departmental canines are designated as Peace Officers and the intentional injury of a departmental canine will be prosecuted as described in Penal Code section 600.

Canine Handler means a departmental Peace Officer trained in the handling, care, instruction, and use of a departmental canine, including recognition of the canine's alert to the odor of items the canine is trained to detect.

Case Conference means a documented communication between the parole agent and the parole unit supervisor concerning a parolee (i.e., placing a parole hold).

§3000                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **TITLE 15**

Case Conference Review means a documented review of the progress made in the Case Plan and the effectiveness of the current plan to determine necessary modifications. It will also include a review to determine if the parole supervision/case management expectations have been met.

Case records file means the file which contains the information concerning an inmate which is compiled by the department pursuant to Penal Code Section 2081/5 and includes such components as the central file, education file, visiting file and parole field file.

Central File (C-File) means a master file maintained by the department containing records regarding each person committed to its jurisdiction.

Central Office Calendar means the calendar which is composed of administrative hearing officers as designated by the deputy director, parole hearings division. They are authorized to make decisions regarding matters reported to the parole hearings division, including the decision to order a hearing scheduled.

Central Office Hearing Coordinator means the parole hearings division employee at headquarters who is responsible for hearing schedules, attorney appointments, and other hearing-related services.

Certification means that a business concern has obtained verification that it meets the definition of disabled veteran business enterprise pursuant to Military and Veterans Code section 999(g) from an agency that has been authorized by law to issue such certification.

Chaplain means an individual duly designated by a religious denomination to discharge specified religious duties, including a native American Indian spiritual leader.

Child means a person under the age of 18 years.

Chronological History means a CDC Form 112 (Rev. 9/83), Chronological History, prepared for each inmate, upon which significant dates and commitment information affecting the inmate are logged.

Classification and Parole Representative (C&PR) means the department employee designated at each institution to be that institution's liaison with releasing boards and parole staff.

Cognitive Behavioral Treatment is evidence based treatment which helps inmates understand the thoughts and feelings which influence behaviors. Treatment is generally short-term and focused on helping inmates deal with a specific problem. During the course of treatment, inmates learn how to identify and change destructive or disturbing thought patterns which have a negative influence on behavior.

Collateral Contact means any communication between a Division of Adult Parole Operations staff and another person concerning a parolee.

Concurrent Parolee means a person on parole for a California sentence and a sentence of another jurisdiction who is being supervised in a state other than California pursuant to the Uniform Act for Out-of-State Parole Supervision (Penal Code sections 11175–11179).

Conditions of Parole mean the specific conditions under which a prisoner is released to parole supervision.

Confinement to Quarters (CTQ) means an authorized disciplinary hearing action whereby an inmate is restricted to their assigned quarters for a period not to exceed five days for administrative rule violations and ten days for serious rule violations.

Confirmed Security Threat Group (STG) Behavior means behavior with a nexus to an STG which is discovered and confirmed to have occurred. Confirmation can be obtained through either a guilty finding in a STG related Rules Violations Report and/or any document that clearly describes the STG behavior/activities incorporated within the validation or continued STG behavior package which is affirmed by an STG Unit Classification Committee.

Contraband means anything which is not permitted, in excess of the maximum quantity permitted, or received or obtained from an unauthorized source.

Control Service means the middle supervision category of a person on parole.

Controlled Substance means any substance, drug, narcotic, opiate, hallucinogen, depressant, or stimulant as defined by California Health and Safety Code section 11007. Also included are prescribed medications containing any of the substances identified in the H&SC section above.

Cooperative Parolee means a person on parole for a California sentence who is under parole supervision in a state other than California pursuant to the Uniform Act for Out-of-State Parole Supervision (Penal Code sections 11175–11179).

Course of conduct means two or more acts over a period of time, however short, evidencing a continuity of purpose.

Court Order means a custody determination degree, judgment, or order issued by a court of competent jurisdiction, whether permanent or temporary, initial or modified, that affects the custody or visitation of a child, when issued in the context of a custody proceeding. An order, once made, shall continue in effect until it expires, is modified, is rescinded, or terminates by operation of law.

Criminal Identification and Investigation (CI&I) Report means the report defined by Penal Code section 11105, commonly referred to as "Rap Sheet."

Criminogenic Need means an attribute of the inmate that is directly linked to criminal behavior.

Cumulative Case Summary means the cumulative summary of specific portions of the record maintained by the department regarding each prisoner from reception to discharge.

Custody of the department means the inmate is in the physical custody of the department. The inmate would be considered out of the custody of the department when out to court and housed in a County or Federal facility, escaped and not returned to departmental custody, in a non-departmental mental health facility, and in a medical facility under non-departmental supervision.

Dangerous contraband means materials or substances that could be used to facilitate a crime or could be used to aid an escape or that have been altered from their original manufactured state or purpose and which could be fashioned into a weapon. Examples would include, but not be limited to, metal, plastic, wood, or wire. Also included are: sharpened objects such as scissors or other tools not authorized to be in the inmate's possession, as well as poison, caustic substances, flame producing devices i.e. matches or lighters or cellular telephones or wireless communication devices or any components thereof, including, but not limited to, a subscriber identity module (SIM card), memory storage device, cellular phone charger.

Deadly weapon means any weapon identified in Penal Code section 4502. Any item or substance not readily identified as a weapon becomes a deadly weapon when used in a manner that could reasonably result in serious bodily injury or death.

Debriefing is the formal process by which a Security Threat Group (STG) coordinator/investigator determines whether an offender has abandoned STG affiliation and dropped out of a STG. A subject shall only be debriefed upon their request, although staff may ask if he or she wants to debrief.

Department means the California Department of Corrections and Rehabilitation.

Deputy Regional Parole Administrator means the department's administrator within a Division of Adult Parole Operations region.

Detainer means a written document received from an official representing a district attorney office, court, or correctional or law enforcement agent which indicates that an inmate is wanted by that office and the basis for the detainer.

Determinate Sentencing Law (DSL) Prisoner means a person sentenced to prison under Penal Code section 1170 for a crime committed on or after July 1, 1977.

Direct and Constant Supervision means an inmate shall be monitored and observed by CDCR staff, either custody staff or work supervisor as indicated in these regulations, sufficiently to account for the specific whereabouts of the inmate at all times.

Direct Link means any connection between a subject and any person who has been validated as an STG affiliate. This connection does not need to be independently indicative of STG association beyond the requirements for validation source items listed in Title 15, Section 3378.

Disabled Veteran Business Enterprise means a business concern as defined in Military and Veterans Code section 999(g).

Disabled Veteran Business Enterprise focus paper means a publication that meets all of the following criteria: (1) has an orientation relating to the disabled veteran business enterprise; (2) is known and utilized by members of the disabled veteran business enterprise community; (3) primarily offers articles, editorials (if any), and advertisements of business opportunities aimed at disabled veteran business enterprises; and (4) is readily available within the geographical area for which the advertisement is placed and for which the services are to be performed.

Disabled Veteran Business Enterprise focus paper and trade paper means a publication that meets all of the criteria of a disabled veteran business enterprise focus paper and all of the criteria of a trade paper.

Disciplinary Detention means a temporary housing status which confines inmates so assigned to designated rooms or cells for prescribed periods of time as punishment for serious rule violations.

Disciplinary Free means without any finding of guilt of a disciplinary infraction filed on a CDC Form 115, Rule Violation Report, classified as either administrative or serious.

Disciplinary Free Period means the period that commences immediately following the date and time an inmate is identified (date of discovery of information leading to the charge) as committing a rules violation classified as serious.

Disruptive Behavior means behavior which might disrupt orderly operations within the institutions, which could lead to violence or disorder, or otherwise endangers facility, outside community or another person as defined in sections 3004(b), 3005(a) and 3023(a).

Disruptive Group 1—means any gang, other than a prison gang.

Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution.

District Administrator means the department's administrator of a Division of Adult Parole Operations unit, district, or geographical area.

Dropout means a validated affiliate who has cooperated in and successfully completed Phase One and Two of the debriefing process.

Drug paraphernalia means any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming into the human body a controlled substance as identified in Health and Safety Code section 11007.

Drugs means substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease, and as defined in Health and Safety Code section 11014.

Effective communication means providing the inmate, to the extent possible, the means to understand and participate in the disciplinary process to the best of their ability. This may be accomplished through reasonable accommodation or assignment of a staff assistant. If the inmate's Test of Adult Basic Education (TABE) score is 4.0 or lower, employees are required to query the inmate to determine whether or not assistance is needed to achieve effective communication. The employee is required to document on appropriate CDCR forms his/her determination of whether the inmate appeared to understand, the basis for that determination and how it was made. For contacts involving due process, employees shall give priority to the inmate's primary means of communication, which may include but is not limited to: auxiliary communication aids, sign language interpreter, and bilingual interpreter.

Escape History refers to any reliable information or inmate self-admission in the central file to an escape, attempted escape, walkaway, or plan to escape. The available information describing the circumstances of the escape or attempted escape shall be evaluated in determining the level of risk to correctional safety and security posed by the inmate.

Examinee means a person who voluntarily takes a polygraph examination.

Exceptional Circumstances means circumstances beyond the control of the department or the inmate that prevent the inmate or requested witnesses from participating in the disciplinary hearing within established time limitations. Examples of this as applied to an inmate would include a serious temporary mental or physical impairment verified in writing by a licensed clinical social worker, licensed psychologist, psychiatrist, or physician. Some examples of exceptional circumstances preventing staff witnesses, to include the reporting employee, from attending the disciplinary hearing would be extended sick leave, bereavement leave, personal emergency, or extended military duty. Exceptional circumstances, as described above, would allow for suspension of time limitations pending resolution of the instances.

Ex-Offender means a person previously convicted of a felony in California or any other state, or convicted of an offense in another state which would have been a felony if committed in California.

Face-to-Face Contact means an in-person contact with a parolee, or an Alternative Custody Program Participant, by a CDCR parole agent.

Facility means any institution; community-access facility or community correctional facility; or any camp or other subfacility of an institution under the jurisdiction of the department.

Facility Security Perimeter is any combination of living unit, work area and recreation area perimeters that is set aside to routinely restrict inmate movement based on custody level. This perimeter will contract and expand depending upon the weather, lighting conditions and hours of operation.

Federal Consecutive Prisoner means a California prisoner who is also under sentence of the United States and is confined in a federal correctional facility, and whose California term shall commence upon completion of the United States' sentence.

Felony means a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions.

Field Contact means face-to-face contact by Division of Adult Parole Operations staff with a parolee away from the parole office or office parking area.

Firm means any individual, firm, partnership, corporation, association, joint venture or other legal entity permitted by law to practice the professions of architecture, landscape architecture, engineering, environmental services, land surveying or construction project management.

Force, as applied to escape or attempted escape refers to physical contact or threat of physical harm against a person to enable or attempt the escape.

Frequent and Direct Supervision means that staff supervision of an inmate shall be sufficient to ensure that the inmate is present within the area permitted.

Friendly Witness means any witness who is not an adverse witness.

Gang means any ongoing formal or informal organization, association or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include, planning, organizing, threatening, financing, soliciting, or committing unlawful acts, or acts of misconduct outside of the California Department of Corrections and Rehabilitation jurisdiction.

General Chrono means a CDC Form 128-B (Rev. 4-74) which is used to document information about inmates and inmate behavior. Such information may include, but is not limited to, documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or social service matters.

General Conditions of Parole mean general rules regarding behavior required or prohibited during parole for all parolees.

Goal means a numerically expressed disabled veteran business enterprise objective as set out in Public Contract Code section 10115(c), that awarding departments and contractors are required to make efforts to achieve.

Good Cause means a finding based upon a preponderance of the evidence that there is a factual basis and good reason for the decision made.

Good Faith Effort means a concerted effort on the part of a potential contractor to seek out and consider disabled veteran-owned and operated business enterprises as potential contractors, and/or subcontractors in order to meet the program participation goals.

Great bodily injury (GBI) means any bodily injury that creates a substantial risk of death.

Grievance means a complaint about a decision, action, or policy which an inmate, parolee or staff wish to have changed.

Harassment means a willful course of conduct directed at a specific person, group, or entity which seriously alarms, annoys, or terrorizes that person, group, or entity and which serves no legitimate purpose.

Hearing Committee means a panel of three certified Senior Hearing Officers comprised of: one Correctional Lieutenant or Correctional Counselor II, one Facility/Correctional Captain or Correctional Counselor III, and one staff member at the level of Associate Warden or above, or any combination thereof.

High Control means the highest supervision category of a person on parole.

Hold means to retain an inmate or parolee, who is under the Secretary's jurisdiction, in custody at an institution or a local detention facility in response to the legal request of a law enforcement or correctional agency representative.

Immediate Family Members means legal spouse; registered domestic partner, natural parents; adoptive parents, if the adoption occurred and a family relationship existed prior to the inmate's incarceration; step-parents or foster parents; grandparents; natural, step, or foster brothers or sisters; the inmate's natural and adoptive children; grandchildren; and legal stepchildren of the inmate. Aunts, uncles and cousins are not immediate family members unless a verified foster relationship exists.

Inactive-Monitored Status Affiliate means a validated affiliate who was released from the Security Housing Unit concurrent with the implementation of the Step Down Program through a Departmental Review Board hearing.

Inactive Status Affiliate means a validated affiliate who was released from Security Housing Unit (SHU) prior to implementation of the Step Down Program. This inmate was not previously identified as having been involved in gang-related behavior for a period of six years, was reviewed by a Departmental Review Board, and released from the SHU.

Incarcerating Jurisdiction means the jurisdiction where an Interstate or Western Interstate Corrections Compact, federal contract, federal concurrent, or concurrent prisoner is incarcerated.

Indecent Exposure means every person who willfully and lewdly, either: exposes his or her person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or, procures, counsels, or assists any person so to expose him or her self or take part in any model artist exhibition, or to make any other exhibition of him or her self to public view, or the view of any number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts.

Indeterminate Sentence Law (ISL) means a person sentenced to prison for a crime committed on or before June 30, 1977, who would have been sentenced under Penal Code section 1170 if he/she had committed the crime on or after July 1, 1977.

Indigent Inmate means an inmate who is wholly without funds at the time they were eligible for withdrawal of funds for canteen purchases.

Inmate means a person under the jurisdiction of the Secretary and not paroled. Inmate and prisoner are synonymous terms.

Inmate Match means a one-on-one match of a citizen volunteer and an inmate who receives few or no visits to establish a relationship which encourages positive inmate behavior and programming.

Institution means a large facility or complex of subfacilities with a secure (fenced or walled) perimeter headed by a warden.

Institution Head means a warden, regional parole administrator, or designated manager of a facility housing inmates.

Intake Control Unit (ICU) means a unit that schedules and coordinates weekly movement of CDCR new commitment inmates from the counties to the CDCR Reception Centers. The ICU is also a liaison between the counties and CDCR in the event that CDCR is unable to accept delivery of its new commitment inmates and payments are due to the counties.

Interstate Unit means the Division of Adult Parole Operations which coordinates the supervision of California cooperative parolee and the return of parolees-at-large from asylum states. The unit is responsible for Interstate and Western Interstate Corrections Compacts, federal contract, federal concurrent, and consecutive prisoners and multijurisdiction parolees incarcerated in the prison of another jurisdiction.

Intoxicant not identified as a controlled substance means toluene or any bi-product i.e. paint thinners, paint, fingernail polish, lacquers, gasoline, kerosene, adhesives or other substance that markedly diminishes physical and/or mental control.

Joint Venture Employer (JVE) means any public entity, nonprofit or for profit entity, organization, or business which contracts with the director for the purpose of employing inmate labor.

Joint Venture Program (JVP) means a contract entered into between the director and any public entity, nonprofit or for profit entity, organization, or business for the purpose of employing inmate labor.

Laboratory means any toxicological or forensic laboratory which has been recognized by the state, other certifying agency, or which is accepted by any local, county, or state prosecuting authority to provide evidence as to the presence of controlled substances in human body fluids or confirm that a substance is or contains any controlled substance.

California Department of Corrections and Rehabilitations

**Inmate / Parolee Appeals Tracking System - I & II**

**Appeals Listing Report**

Institution:   LAC

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D-08-01915 |
| G05794 | TURNER | LIVING CONDITIONS | LAC-D- |
| G05794 | TURNER | FACILITY D | FUNDS | LAC-D- |
| **Level I Review:** | | **Received Date: 12/23/2008** | **Due Date: 2/6/2009** | **Completed Date: 2/5/2009** | **GRANTED IN PART** |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D- |
| **Level II Review:** | | **Received Date: 3/9/2009** | **Due Date: 4/7/2009** | **Completed Date: 4/9/2009** | **DENIED** |
| G05794 | TURNER | FACILITY D | STAFF COMPLAINTS | LAC-D- |
| G05794 | TURNER | FACILITY D | MAIL | LAC-D- |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D- |
| G05794 | TURNER | FACILITY D | MAIL | LAC-D- |
| G05794 | TURNER | FACILITY D | MAIL | LAC-D- |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D- |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D- |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D-09-00647 |
| **Level I Review:** | | **Received Date: 6/25/2009** | **Due Date: 8/7/2009** | **Completed Date: 8/13/2009** | **CANCELLED** |
| G05794 | TURNER | FACILITY D | PROGRAM | LAC-D- |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D- |
| G05794 | TURNER | FACILITY D | STAFF COMPLAINTS | LAC-D- |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D- , |
| G05794 | TURNER | FACILITY D | STAFF COMPLAINTS | LAC-D-09-00664 |
| **Level II Review:** | | **Received Date: 6/25/2009** | **Due Date: 8/7/2009** | **Completed Date: 8/7/2009** | **WITHDRAWN** |
| G05794 | TURNER | FACILITY D | LEGAL | LAC-D- |
| G05794 | TURNER | FACILITY D | ADA | LAC-D-09-00961 |
| **Level I Review:** | | **Received Date: 9/14/2009** | **Due Date: 10/12/2009** | **Completed Date: 10/6/2009** | **GRANTED IN PART** |



California Department of Corrections and Rehabilitations

12/6/2016

**Institution:  LAC**

**Inmate / Parolee Appeals Tracking System - I & II**

**Appeals Listing Report**

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY D | MEDICAL | LAC-D- |
| G05794 | TURNER | FACILITY D | DISCIPLINARY | LAC-D- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | FUNDS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | MAIL | LAC-A- |
| G05794 | TURNER | FACILITY A | CUSTODY/CLASS. | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | ADA | LAC-A-10-00248 |
| **Level I Review:** | | | Received Date: 2/10/2010  Due Date: 3/4/2010 | Completed Date: 3/4/2010  CANCELLED |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A-10-00290 |
| **Level I Review:** | | | Received Date: 2/10/2010  Due Date: 3/25/2010 | Completed Date: 3/26/2010  GRANTED IN PART |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| **Level II Review:** | | | Received Date: 4/1/2010  Due Date: 4/29/2010 | Completed Date: 5/3/2010  GRANTED IN PART |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A-10-00324 |
| **Level II Review:** | | | Received Date: 2/10/2010  Due Date: 3/25/2010 | Completed Date: 3/17/2010  WITHDRAWN |

12/6/2016 8:00:44 AM

DEF-00004

Institution:  LAC

California Department of Corrections and Rehabilitations

12/6/2016

Inmate / Parolee Appeals Tracking System - I & II

Appeals Listing Report

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A-10-00361 |
| **Level II Review:** | | **Recvied Date: 2/22/2010** | **Due Date: 4/29/2010** | **Completed Date: 4/28/2010    GRANTED IN PART** |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A-10-00397 |
| **Level I Review:** | | **Received Date: 3/1/2010** | **Due Date: 4/13/2010** | **Completed Date: 3/29/2010    WITHDRAWN** |
| G05794 | TURNER | FACILITY A | TRANSFER | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | TRANSFER | LAC-A- |
| G05794 | TURNER | FACILITY A | FUNDS | LAC-A- |
| G05794 | TURNER | FACILITY A | MAIL | LAC-A- |
| G05794 | TURNER | FACILITY A | CUSTODY/CLASS. | LAC-A- |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A-10-00864 |
| **Level II Review:** | | **Received Date: 5/21/2010** | **Due Date: 7/6/2010** | **Completed Date: 6/23/2010    GRANTED IN PART** |
| G05794 | TURNER | FACILITY A | ADA | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | ADA | LAC-A-10-00934 |
| **Level I Review:** | | **Received Date: 6/18/2010** | **Due Date: 7/12/2010** | **Completed Date: 7/12/2010    DENIED** |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A- |

DEFC01005
3

Institution:  LAC

California Department of Corrections and Rehabilitations          12/6/2016

Inmate / Parolee Appeals Tracking System - I & II

Appeals Listing Report

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A-10-01002 |
| **Level I Review:** | **Received Date: 6/30/2010** | **Due Date: 8/12/2010** | **Completed Date: 8/18/2010** | **GRANTED IN PART** |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| **Level II Review:** | **Recieved Date: 8/25/2010** | **Due Date: 9/23/2010** | **Completed Date: 9/20/2010** | **GRANTED IN PART** |
| G05794 | TURNER | FACILITY A | TRANSFER | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A-10-01057 |
| **Level I Review:** | **Received Date: 7/14/2010** | **Due Date: 8/25/2010** | **Completed Date: 8/2/2010** | **GRANTED** |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | TRANSFER | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A-10-01114 |
| **Level II Review:** | **Received Date: 7/27/2010** | **Due Date: 9/8/2010** | **Completed Date: 9/8/2010** | **DENIED** |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |

12/6/2016 8:00:44 AM


DEF-00006
4

California Department of Corrections and Rehabilitations

12/6/2016

## Inmate / Parolee Appeals Tracking System - I & II

### Appeals Listing Report

Institution:  LAC

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A- |
| G05794 | TURNER | FACILITY A | CUSTODY/CLASS. | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | MAIL | LAC-A- |
| G05794 | TURNER | FACILITY A | MEDICAL | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A-10-01201 |
| **Level II Review:** | **Received Date: 8/11/2010** | **Due Date: 9/23/2010** | **Completed Date: 9/15/2010** | **DENIED** |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | CUSTODY/CLASS. | LAC-A- |

12/6/2016 8:00:44 AM

Institution:  LAC

California Department of Corrections and Rehabilitations

12/6/2016

Inmate / Parolee Appeals Tracking System - I & II

Appeals Listing Report

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | CUSTODY/CLASS. | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | CASE INFO./RECORDS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | ADA | LAC-A- |

12/6/2016 8:00:44 AM



Institution:  LAC

California Department of Corrections and Rehabilitations

12/6/2016

Inmate / Parolee Appeals Tracking System - I & II

Appeals Listing Report

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A-10-01509 |
| **Level II Review:** | **Received Date: 10/21/2010 Due Date: 12/14/2010** | | **Completed Date: 12/14/2010 DENIED** | |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A-10-01524 |
| ✶ **Level II Review:** | **Received Date: 10/21/2010 Due Date: 12/24/2010** | | **Completed Date: 12/24/2010 GRANTED IN PART** | |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A-10-01683 |
| **Level I Review:** | **Received Date: 12/7/2010 Due Date: 1/19/2011** | | **Completed Date: 1/18/2011 GRANTED IN PART** | |
| **Level II Review:** | **Received Date: 2/1/2011 Due Date: 3/16/2011** | | **Completed Date: 3/18/2011 WITHDRAWN** | |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | CUSTODY/CLASS. | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | FUNDS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A-10-01613 |
| **Level I Review:** | **Received Date: 11/15/2010 Due Date: 12/29/2010** | | **Completed Date: 12/24/2010 DENIED** | |
| **Level II Review:** | **Received Date: 1/18/2011 Due Date: 2/18/2011** | | **Completed Date: 2/18/2011 DENIED** | |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A-10-01651 |
| **Level I Review:** | **Received Date: 11/24/2010 Due Date: 1/18/2011** | | **Completed Date: 1/18/2011 CANCELLED** | |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | AD SEG | LEGAL | LAC-A- |
| G05794 | TURNER | AD SEG | PROPERTY | LAC-A- |
| G05794 | TURNER | AD SEG | PROGRAM | LAC-A- |

12/6/2016 8:00:44 AM

California Department of Corrections and Rehabilitations

Inmate / Parolee Appeals Tracking System - I & II

Appeals Listing Report

12/6/2016

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | MAIL | LAC-A- |
| G05794 | TURNER | FACILITY A | LIVING CONDITIONS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A- |
| G05794 | TURNER | FACILITY A | MAIL | LAC-A- |
| G05794 | TURNER | FACILITY A | MAIL | LAC-A- |
| G05794 | TURNER | FACILITY A | MEDICAL | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | TRANSFER | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | LEGAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | MEDICAL | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |
| G05794 | TURNER | FACILITY A | STAFF COMPLAINTS | LAC-A- |
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A- |



California Department of Corrections and Rehabilitations

12/6/2016

## Inmate / Parolee Appeals Tracking System - I & II

### Appeals Listing Report

Institution: LAC

| CDC Number | Last Name | Area of Origin | Issue | Log Number |
|---|---|---|---|---|
| G05794 | TURNER | FACILITY A | PROPERTY | LAC-A-11-00439 |
| **Level I Review:** | | **Received Date: 6/24/2011** | **Due Date: 8/16/2011** | **Completed Date: 8/16/2011  DENIED** |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A- |
| G05794 | TURNER | FACILITY A | DISCIPLINARY | LAC-A-11-00589 |
| **Level II Review:** | | **Received Date: 8/29/2011** | **Due Date: 10/11/2011** | **Completed Date: 10/11/2011  DENIED** |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY A | PROGRAM | LAC-A- |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D- |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D-12-00556 |
| G05794 | TURNER | FACILITY D | PROPERTY | LAC-D-12-00560 |
| G05794 | TURNER | FACILITY D | LIVING CONDITIONS | LAC-D-12-01273 |
| G05794 | TURNER | FACILITY D | DISCIPLINARY | LAC-D-12-01360 |
| **Level II Review:** | | **Received Date: 4/16/2012** | **Due Date: 6/15/2012** | **Completed Date: 6/13/2012  DENIED** |
| G05794 | TURNER | AD SEG | TRANSFER | LAC-S-12-01507 |
| G05794 | TURNER | AD SEG | LEGAL | LAC-S-12-01525 |

**Total:** 186

12/6/2016 8:00:44 AM

POOR ORIGINAL D (L)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

DV-1.5.4

**CRIME / INCIDENT REPORT**
**PART A1-- SUPPLEMENT**
CDCR 837-A1 (REV. 10/06)

| | | Page 3 of 9 | INCIDENT LOG NUMBER LAC-A04-10-06-0349 |
|---|---|---|---|

| TITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| LAC | A04 - FACILITY A | 06/26/2010 | 13:00 |

TYPE OF INFORMATION:

☑ SYNOPSIS/SUMMARY OF INCIDENT  ☐ SUPPLEMENTAL INFORMATION  ☐ AMENDED INFORMATION  ☐ CLOSURE REPORT

Scratch right cheek, cut under left eye, cut bridge of nose and scratch on right knee and left lower leg

R.N. S. Erney completed a CDC 7219, Medical Report of Injury or Unusual Occurrence on Correctional Officer B. Pollard which noted the following injuries: Abrasion on right thumb. CDCR 101 was completed on Officer Pollard

VIDEO INTERVIEW(S)
Video interview was conducted due to facial injuries noticed on the CDC 7219, Medical Report of Injury and placed into A/B Sub-evidence locker #26 by Officer Mendoza

NOTIFICATION:
Watch Commander Lt. T. Cromwell was notified of this incident.
Captain Fortson Administrative Officer of the Day (A.O.D.) was notified of this incident.

ESCAPE(S):
There was no escape during this incident.

CONCLUSION:
Inmate Turner, G-05794 will receive a CDCR-115 Rules Violation Report, Log # S10-06-0067 for violation of the California Code of Regulations, (CCR) Title 15, Section 3005 (b), for the specific act of: Disobeying A Direct Order

There was injury to Officer B Pollard and no damage to state property as a result of this incident.

There was approximately 16 hours of overtime due to this incident

You will be informed of any further developments that arise through supplemental reports.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) ARTHUR CAIN | TITLE: CORRECTIONAL LIEUTENANT | ID# 2160318 | BADGE # 66028 |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE 8084 | DATE 6/26/2010 |
| NAME OF WARDEN / AOD (PRINT/ SIGN) | | TITLE | DATE |

STATE OF CALIFORNIA

**POOR ORIGINAL**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## CRIME / INCIDENT REPORT
## PART C1 -- SUPPLEMENT
CDCR 837-C1 (REV. 10/06)

| | INCIDENT LOG NUMBER |
|---|---|
| | LAC-A04-10-06-0349 |

| NAME LAST | FIRST | MI |
|---|---|---|
| CAIN | A███████ | M |

| TYPE OF INFORMATION | | |
|---|---|---|
| ☐ CONTINUATION OF REPORT | ☐ CLARIFICATION OF REPORT | ☑ ADDITIONAL INFORMATION |

On Wednesday June 30, 2010 Captain C. Fortson Retired from the Department of Corrections and Rehabilitation. A 837 Incident Report of Force observed will not be forthcoming due to Captain Fortson's retirement.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | Staff ID # | DATE |
|---|---|---|---|---|
| *[signature]* | CORRECTIONAL LIEUTENANT | 66028 | 2160318 | 7/7/2010 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| *[signature]* | 7/7/10 | ☑ Yes ☐ No | ☐ Yes ☑ No | 7/7/10 |

EXHIBIT (E)

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION

EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF APPEALS**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001

June 20, 2017

TURNER, LAFONZO, G05794
Salinas Valley State Prison
P.O. Box 1020
Soledad, CA  93960-1020

MAILED

JUN 2 3 2017

RE: TLR# 1704763    PBSP-16-02469    PROPERTY

The Office of Appeals, California Department of Corrections and Rehabilitation (CDCR) acts as the third level of review as established in California Code of Regulations (CCR) Title 15, Article 8.  The Office of Appeals examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.

Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(4).  Time limits for submitting the appeal are exceeded even though you had the opportunity to submit within the prescribed time constraints.

The Second Level Response was returned to you on 2/3/17.  The appeal package was submitted in our office on 5/8/17.  This exceeds time constraints to submit for third level review.

Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  Be advised, you must submit an appeal of a cancellation to the appeals office that issued the cancellation.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.  You have 30 calendar days to appeal the cancellation.  Time constraints begin from the date on the screen out form which cancelled your appeal.

M. VOONG, Chief
Office of Appeals

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

CALIFORNIA
PAROLEE APPEAL
(REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PELICAN BAY STATE PRISON
UNIT B-2

1704763

G05794

Side 1

**IAB USE ONLY** | Institution/Parole Region: | Log #: | Category:

**PBSP B-16-0246**  **5**

FOR STAFF USE ONLY

You may a... Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material
adverse ef... her prescribed method of departmental review/remedy available.   See California Code of
Regulation... s appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar
days of the... space is needed, only one CDCR Form 602-A will be accepted.  Refer to CCR 3084 for further
guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.     WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First): TURNER, LAFONZO | CDC Number: G05794 | Unit/Cell Number: B2-110 | Assignment: Pelican Bay State Prison

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): ALLOWABLE PROPERTY

OCT 21 2016
Appeals Office
Pelican Bay State Prison

DEC 27 2016
Appeals Office

**A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A): ON OCT 7, 2016 C/O COOPER ISSUED ME MY PROPERTY & WITHHELD 12 ITEMS STATING THEY ARE NOT ALLOWED AT P.B.S.P. BUT THIS IS NOT TRUE AS AN APPEAL HAS

**B.** Action requested (If you need more space, use Section B of the CDCR 602-A): TO BE ISSUED MY HOT POT, FAN, SIGNAL BOOSTER, HOBBY CRAFT BEADS, PEN FILLERS, TOOTHBRUSH (cut), 5 C.D.'S COSMATIC'S IN CONTAINER AND Headphon EX AS THE ONE

Supporting Documents: Refer to CCR 3084.3. OCT 21 2016

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 28-G, Classification Chrono):
P.B.S.P. R&R PROPERTY DISPOSITION FORM (APPEAL Pending)
3 FORM 22'S & A INMATE REQUEST & FORM 22 of 2d level Late Appeal

☐ No, I have not attached any supporting documents.  Reason : _____

REC BY OOA
MAY 08 2017

Inmate/Parolee Signature: Mr. Lafonzo Tur    Date Submitted: 10/29/16

☐ By placing my initials in this box, I waive my right to receive an interview.

**C.** First Level - Staff Use Only                    Staff – Check One:  Is CDCR 602-A Attached? ☒ Yes ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review.  Go to Section E.
☐ Rejected (See attached letter for instruction)  Date: _____  Date: _____  Date: _____  Date: _____
☐ Cancelled (See attached letter)  Date: _____
☒ Accepted at the First Level of Review.
Assigned to: CS    Title: AW    Date Assigned: 10/21/16    Date Due: 12/7/16

First Level Responder:  Complete a First Level response.  Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 11-29-16    Interview Location: B2 ROTUNDA
Your appeal issue is: ☐ Granted ☐ Granted in Part ☒ Denied ☐ Other: _____
See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: J. ANDERSON    Title: Sht    Signature: _____    Date completed: 11-29-16
(Print Name)
Reviewer: D. BARNEBURG    Title: AW    Signature: _____
(Print Name)
Date received by AC: DEC 01 2016                    AC Use Only
                                                     Date mailed/delivered to appellant DEC 01 2016

  
STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*3*

Side 2

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

DISSATISFIED, AS I AM BEING DENIED MY PROPERTY & BY A
UNDERGROUND SUPPLIMENT POLICY THAT ONLY P.B.S.P.
USES & I HAVE ALLOWABLE PROPERTY CUSTODY STILL REFUSES
TO ISSUE, COSMATIC'S IN CONTAINER'S, AS THEY WHERE REMOVED
FROM ORIG CONTAINER IN AD-SEG BY CUSTODY, RELIGIOUS BEADS AS I
AM A RASTA FARI & EVERYTHING ELSE P.B.S.P. HAS FAILED TO SHOW (D.D.A.I.)

Inmate/Parolee Signature: *Mr. Lafonzer Turner*   Date Submitted: *12-28-16*

**E. Second Level - Staff Use Only**                    Staff – Check One: Is CDCR 602-A Attached?  ☒ Yes   ☐ No

This appeal has been:                                     *R13*
☐ By-passed at Second Level of Review. Go to Section C.
☒ Rejected (See attached letter for instruction) Date: *DEC 28 2016*   Date: _____   Date: _____   Date: _____
☐ Cancelled (See attached letter)
☒ Accepted at the Second Level of Review

Assigned to: *Appeals*   Title: *CC II*   Date Assigned: _____   Date Due: *2-5-17*

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: *11-25-16*   Interview Location: *FLK*

Your appeal issue is: ☐ Granted   ☒ Granted in Part   ☐ Denied   ☐ Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: *N/A* (Print Name)   Title: _____   Signature: _____   Date completed: _____

Reviewer: *D. BRADBURY* (Print Name)   Title: *CDW*   Signature: _____

Date received by AC: *FEB 08 2017*

AC Use Only
Date mailed/delivered to appellant   *FEB 03 2017*

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-000 . If you need more space, use Section F of the CDCR 602-A.

DISSATISFIED AS I'VE TRANSFERED & P.B.S.P REFUSE TO TRANSFER
MY PROPERTY WHEN I DID, OR STILL PROVIDE SAID PROPERTY WHEN
POLICY DICTATES SUCH "SHALL" BE. WHY DOSE P.B.S.P STILL
HAVE MY PROPERTY & I'VE BEEN OUT OF THAT PRISON 65 DAY8
SEE ATTACH FORM 22 OF LATE RETUENERED APPEAL. 5-2-17

Inmate/Parolee Signature: *Lafonzor T*   Date Submitted: *4/25/17*

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____   Date: _____   Date: _____   Date: _____   Date: _____
☐ Cancelled (See attached letter)   Date: *JUN 20 2017*
☐ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____
See attached Third Level response.

Third Level Use Only
Date mailed/delivered to appellant ____/____/____

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____

_____

_____

Inmate/Parolee Signature: _____   Date: _____

Print Staff Name: _____   Title: _____   Signature: _____   Date: _____

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

4

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|

PELICAN BAY STATE PR...
UNIT B-2

**PBSP** B-16-0246A

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.   WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Turner, L | G05794 | B2-110 | N/A |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** GRANTED ON B-YARD CONCERNING HOT POTS ETC. ALSO P.B.S.P. HAS NO APPROVAL FOR EXEMPTION FROM THE DEPUTY DIRECTOR DIVISION OF ADULT INSTITUTION. FOR HOT POTS, FANS, FACE SHAVER, SIGNAL BOOSTER'S EXTENSION CORD'S AND HOBBY CRAFT BEADS/RELIGOUS CHAIN'S. ETC.
ASWELL C/O COOPER KEPT THESE THINGS NOT ALLOWING ME TO VIEW THEM. FURTHERMORE C/O COOPER MISS INFORMED ME TO LEAVE (8) C.D.'s MAKING ME THINK IF I DID SO I WOULD BE LEFT WITH (10) BUT WHEN I CHECKED I ONLY HAD (5) C.D.'S BECAUSE I ONLY HAD (13) ALTOGETHER I WOULD ALSO MENTION ALL MY PROPERTY IS NOT PRESENT IN IT'S TOTALITY FROM WHEN IT WAS RECEIVED BUT I'M NOW JUST LEARNING THIS BECAUSE I'VE BEEN IN THE HOLE.

OCT 21 2016

Pelican Bay State Prison
OCT 21 2016
Appeals Office

Pelican Bay State Prison
DEC 27 2016
Appeals Office

REC BY OOA
MAY 08 2017

Inmate/Parolee Signature: Mr. Lafonzer Turner   Date Submitted: 10/20/16

**B. Continuation of CDCR 602, Section B only (Action requested):** I WAS GIVEN IS NOT AN EXTENSION IT'S AN CONNECTOR, A COMB, MY EXTENSION CORD, FACE SHAVER'S. ETC.
OR TO BE PROVIDED WITH THE EXEMPTION LIST FROM THE ADULT INSTITUTION. AND FOR THE PRISONER'S GRANTED APPEAL (GROUP) FOR THE ALLOWABLE PROPERTY

OCT 21 2016

Inmate/Parolee Signature: Mr. Lafonzer Turner   Date Submitted: 10/20/2016

## FIRST LEVEL APPEAL RESPONSE

RE:    PELICAN BAY STATE PRISON (PBSP)
        Appeal Log Number PBSP-B-16-02469
        First Level Reviewer's Response

**INMATE**: TURNER, G05794

**APPEAL DECISION**: DENIED

**APPEAL ISSUE**: PROPERTY

**EFFECTIVE COMMUNICATION**:

The investigation for this appeal was completed at the First Level Review. You have a Test of Adult Basic Education score of 0.0. Based on the Disability Effective Communication Americans with Disabilities Act/Effective Communication history report, TURNER has no TABE score; is Correctional Clinical Case Management System level of care and requires eyeglasses. During the appeal interview simple English was spoken slowly and clearly. The appeal documents were read to TURNER. TURNER was not wearing eyeglasses, however, an interview is oral and not written, and no accommodation was made regarding eyeglasses. Effective communication was achieved in the following manner; TURNER reiterated in his own words what was explained. TURNER provided appropriate, substantive responses to questions asked. TURNER asked appropriate questions regarding the information provided.

**ACTION REQUESTED**: (MODIFIED)

TURNER requests to be issued the following items initially disallowed from his personal property:
1. Hot pot
2. Fan
3. Signal Booster
4. Hobby craft (beads)
5. Pen Fillers
6. Toothbrush
7. 5 C.D.s
8. Cosmetics (in container)
9. Headphone Ex.
10. Comb
11. Extension Cord
12. Face Shavers
13. Etc...

**FINDINGS**:

J. Anderson, Correctional Sergeant was assigned to investigate your complaint by the First Level Reviewer. Sergeant J. Anderson interviewed you on November 29, 2016. You reiterated the issues addressed within the appeal. The following abbreviations are used in the body of the appeal response; Allowable Personal Property Schedule (APPS), Department Operation Manual (DOM).

First Level Reviewer's Response
Appeal Log Number PBSP-B-16-02469
Inmate: TURNER, G05794
Page 2

6

TURNER stated during the interview that he wishes to pursue the appeal through the Third Level Review.  Sergeant J. Anderson reviewed all disallowed items of TURNER's property and determined that each and every item was appropriately disallowed as detailed below:

1.  Hot pot—Disallowed per DOM 54030.1
2.  Fan—(AC powered) Disallowed per DOM 54030.1 must be battery operated
3.  Signal Booster—Not listed as allowed per APPS
4.  Hobby craft (beads) — Not listed as allowed per APPS
5.  Pen Fillers—Actually ink pens, Disallowed per DOM 54030.1
6.  Toothbrush— Disallowed per DOM 54030.1
7.  5 C.D.s—Had 15 in property, 10 allowed per APPS and 5 disallowed
8.  Cosmetics (in container) –-Unlabeled, unknown liquid.  Disallowed, unable to identify.
9.  Headphone Ex. —one extension issued to TURNER, disallowed one extension.
10. Comb—one allowed per APPS and issued, 2 additional combs disallowed.
11. Extension Cord— Disallowed per DOM 54030.1
12. Face Shavers— Disallowed per DOM 54030.1
13. Etc... —Not specific

**DETERMINATION OF ISSUE**:

Your concerns were clearly addressed.  All submitted documentation and supporting arguments have been considered. Based on the above information, your appeal is **DENIED** at the First Level Review.

A. PEPIOT                          Date
Captain (Adult Institution)
Central Services

D. BARNEBURG                    Date
Correctional Administrator
Central Services

7

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

*Wednesday, December 28, 2016*

*TURNER, G05794*
*B 002 1110001L*

PROPERTY, Unallowable items, 12/27/2016
Log Number: PBSP-B-16-02469
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies.</u>)**

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(13). The appeal is incomplete. Your appeal is being returned for the following reason(s):*

*Complete Section D on the back of the CDCR 602 if you are dissatisfied with the First Level Review.*

   A. Sheldon, Appeals Coordinator
   K. Royal, Appeals Coordinator
   N. Bramucci, AGPA
PBSP Appeals Office

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

_____

_____

_____

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

STATE OF CALIFORNIA
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 22 (10/09)

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print)   (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| TURNER | LAFONZO | G05794 | Mr Lafonzo R Turner |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM ___ TO ___ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| B2-116 | N/A | | |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW.

CAN YOU PLEASE PROVIDE ME WITH PELICAN BAYS EXAMPTION LIST OF PROPERTY ESTABLISHED WITHIN THE DIVISION OF ADULT INSTANTUTION AND IN ACCORDANCE WITH RULE MAKING REQUIREMENTS OF THE ADMINISTRATIVE PROCEDURE ACT AND GOVERNMENT CODE SECTIONS 11340 THROUGH 11350.3

THANK YOU.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
[X] SENT THROUGH MAIL: ADDRESSED TO: R&R PROPERTY SGT.                    DATE MAILED: 9/12/16
[ ] DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| C/O J. HOPKINS | 9-11-16 | C/O J. Hop | (CIRCLE ONE)  YES   NO |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| R&R PROPERTY SGT | 9-11-16 | (CIRCLE ONE)  IN PERSON   BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| M. Chandler | 9-12-16 | | |

Contact The Law Library For infor

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

I DISAGREE WITH STAFF RESPONSE THIS IS A REQUEST FOR INTERVIEW OF R&R IN REGARDS TO THE HOUSING SEARCH & CONFISSATING OF CERTIN PROPERTY. NOT ALLOWABLE ETC.     THANK YOU

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| Mr Lafonzo R Turner | 9/19/16 |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| M. Chandler  @ | 9-21-16 | | |

Send A list Of the Spective Items in Question

Pelican Bay State Prison

OCT 2 1 2016

Appeals Office

9

STATE OF CALIFORNIA
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SECTION A:  INMATE/PAROLEE REQUEST

| NAME (Print):   (LAST NAME)   (FIRST NAME) | CDC NUMBER | SIGNATURE: |
|---|---|---|
| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM____ TO ____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

METHOD OF DELIVERY (CHECK APPROPRIATE BOX)  **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED**

☐ SENT THROUGH MAIL:  ADDRESSED TO:_____     DATE MAILED:_____

☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF?  (CIRCLE ONE)   YES    NO |
|---|---|---|---|
| IF FORWARDED - TO WHOM: | | DATE DELIVERED/MAILED: | METHOD OF DELIVERY:  (CIRCLE ONE)   IN PERSON   BY US MAIL |

## SECTION B:  STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

## SECTION C:  REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL.  KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|

## SECTION D:  SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

Pelican Bay State Prison

OCT 2 1 2015

Appeals Office

Distribution: Original - Return to Inmate/Parolee; Canary - Inmate/Parolee's 2nd Copy; Pink - Staff Member's Copy; Goldenrod - Inmate/Parolee's 1st Copy.

FROM LOG # 7049

NEW LOG #

DATE PROCESSED
DATE: 09 / 27 / 2016
PROCESSED BY:
C/O: S. COOPER

I hereby authorize the following items to be:

[ ] **MAILED OUT**   [ ] **DONATED**   [ ] **DESTROYED**   [X] **HOLD PENDING APPEAL**

per institutional procedures. I _____, hereby agree to release and discharge the
                                  Inmate / Parolee Name        CDC Number
State of California, its officers, agents and employees from any and all liability arising from and under this matter.

LIST NON-ALLOWED ITEMS ALONG WITH REASON IT IS NOT ALLOWED BELOW: i.e. EXCESS, ALTERED, ETC.

| | | |
|---|---|---|
| 1 (1) Ex Shower Shoes | 13 1/th Hobby Craft | 25 |
| 2 (1) ANDIS HAIR Trimmer | 14 (2) Ballpoint Pens | 26 |
| 3 (1) TV SIGNAL BOOSTER | 15 | 27 |
| 4 (2) extension cords | 16 | 28 |
| 5 (1) HOT POT | 17 | 29 |
| 6 (1) Tooth Brush | 18 | 30 |
| 7 Cus Altered CDs | 19 | 31 |
| 8 (2) ex Comb | 20 | 32 |
| 9 Alter Head Phones | 21 | 33 |
| 10 (8) Ex CD's | 22 | 34 |
| 11 (2) Container Unknown Liquid | 23 | 35 Pelican Bay State Prison OCT 21 2016 |
| 12 (1) Ex Head Phone extension | 24 | 36 Appeals Office |

THIS RELEASE IS FREELY AND VOLUNTARILY ENTERED INTO BY THE UNDERSIGNED.

**SHOULD AN INMATE REFUSE TO SIGN THIS FORM INDICATING ONE OF THE ABOVE CHOICES OF DISPOSITION, THE CONFISCATED ITEM(S) WILL BE DONATED TO PBSP IN ACCORDANCE WITH CCR 3190(a), AND 3191(a).**

_____     J-05794     10/1/16
INMATE/PAROLEE SIGNATURE      CDC NUMBER      DATE

INMATE REFUSED TO SIGN [   ]

_____
STAFF WITNESS SIGNATURE (PRINT AND SIGN)                    DATE

STATE OF CALIFORNIA
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SECTION A:  INMATE/PAROLEE REQUEST

| NAME (Print):   (LAST NAME) TURNER | (FIRST NAME) LAFONZO | CDC NUMBER: 05790 | SIGNATURE: |
|---|---|---|---|
| HOUSING/BED NUMBER: D2-144 | ASSIGNMENT: E.O.P | HOURS FROM 8 to 2 | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): RECEIVED APPEAL |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:  ON 4/24/17 I RECEIVED APPEAL

PBSP-B-16-02469 FOR PROPERTY THIS WAS A SECOND LEVEL RE-

VIEW OF A DUE DATE OF FEB 9 2017.

THIS APPEAL WAS NOT RETURNED UNTIL TODAY 4-24-17

AND HAS TIME LAPSED MY FILING TO THE THIRD LEVEL.

THIS APPEAL WAS ISSUED BY C/O WATSON TODAY 4-24-17

LATE. HERE AT LANCASTER AS I HAVE BEEN TRANSFERED.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **\*\*NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED \*\***

☐ SENT THROUGH MAIL  ADDRESSED TO: C/O WATSON D2-FLOOR STAFF            DATE MAILED: 4/24/17

☑ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: C/O WATSON | DATE: 4/24/17 | SIGNATURE: Watson | FORWARDED TO ANOTHER STAFF? (CIRCLE ONE)    YES    NO |
|---|---|---|---|
| IF FORWARDED - TO WHOM: C/O WATSON | | DATE DELIVERED/MAILED: 4/24/17 | METHOD OF DELIVERY: (CIRCLE ONE)  IN PERSON  BY US MAIL |

## SECTION B:  STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: Watson | DATE RETURNED: 4/24/17 |
|---|---|---|---|

## SECTION C:  REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL.  KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|

## SECTION D:  SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

DECLARATION OF
THE EVIDENCE
FOR MATERIAL FACTS IN DISPUTE

DESCRIPTION OF EXHIBIT:

// EXHIBIT. I

THE PLAINTIFF SUBMITS AN EXPERT OPINION / DOCUMENT WHICH INCLUDES OMITION BY THE DEPARTMENT OF CORRECTIONS WHICH INCLUDES THE DEFENDANTS. AS SET:

THE OFFICE OF THE INSPECTOR GENERAL FOR THE STATE OF CALIFORNIA SPECIAL REPORT; TITLED CDCR'S REVISED INMATE APPEAL PROCESS LEAVES [KEY] PROBLEMS UNADDRESSED.

THIS REPORT SUPPORT PLAINTIFF MATERIAL FACTS IN DISPUTE TO THE ISSUE OF EXHAUSTION IN ALL THREE OF PLAINTIFFS DECLARATIONS AND STATEMENT OF GENUINE ISSUE. ELLIS V. NAVARRO, NO. C07-05126 SBA (PR), 2011 U.S. DIST. LEXIS 25025 2011 WL 845902, at *1 (N.D. CAL. MARCH

WHEREIN DEFENDANT UNDER MORTIN V. HALL, 599 F. 3d. 942, 944 (9TH CIR. 2010) DEF. DO NOT ESTABLISH AN AVAILABLE ADMINISTRATIVE REMEDY ESPECIALLY AS A SEGREGATED PRISONER AS PLAINTIFFS WAS BUT RATHER DEF.S ONLY ESTABLISHED AN ADMINISTRATIVE REMEDY WAS [IN PLACE] NOT NECESSARILY AVAILABLE, AS PLAINTIFFS DECLARATIONS ASSERTS AND THE O.I.G. REPORT SUPPORTS DEF.S MADE THEIR APPEAL 602 PROCESS SO OPAQUE IT WAS INCAPABLE OF USE WITHOUT CDCR'S MECHANATION EXISISTING AS AN OPERAT-ION SYSTEM TO IMPING EXHAUSTION.

BUSH, 2010 U.S. DIST. LEXIS 120607 2010 WL 4718512 at *3 n.7 (THE FACT THAT THE JAIL HAS NO RECORD OF EVER HAVING RECEIVED THE COMPLAINT IS OF NO MOMENT. ASSUMING THAT IT WAS LOST BY JAIL STAFF, THIS FACT IS INCONSEQUENTIAL TO THE COURTS DETERMINATION THAT HE DID IS UNTRUE, AS DEFS SEEM TO IMPLY, IN THEIR SUM. J. THIS IS A FACT UAL ISSUE THAT CAN ONLY BE RESOLVED BY A JURY. ELLIS (SUPRA) (HOLDING THE FACT THAT DEF.S HAD NO RECORD OF PLAINTIFF GRIEVANCE AT MOST CORROBORATED THEIR CLAIM OF NONE RECEIPT, IT DOES NOT HOWEVER PROVE THAT PLAINTIFF FAILED TO TIMELY AND PROPERLY SEEK TO SUBMIT HIS GRIEVANCE NORE DOES IT PROVE THE FALSITY OF PLAINTIFFS STATE-MENTS IN HIS DECLARATIONS AND (S.G.I.). DOLE, 438 F. 3d at 811 WILLARD, 2014 U.S. LEXIS 181258, 2015 WL 391673 at *8

WHEREIN AS PLAINTIFF DECL. THE RELEVANT RULES GOVERNING EXHAUSTION ARE NOT DEFINED BY THE (PLRA) BUT BY THE PRISON GRIEVANCE PROCESS AND CODIFIED REGULATION IT-SELF. AYALA V. FERMON NO. 14-CV-1794 GPC (JLB), 2016 U.S. DIST. LEXIS 184686 2017, SEE (EXHIBIT I )

//

//

//

// EXHIBIT. II

PLAINTIFF SUMITTS THIS 602 TO SHOW DEF.S MACHANIZUMS AS SAID APPEAL WAS A 602 APPEAL ON THE DISCIPLINARY FOR THE JUNE 26 2010.  DEFENDANTS AGAIN IMPLOYING THEIR MECHANATION IMPEEDED THIS APPEAL FROM EXHAUSTION BY HOLDING IT PASS ITS TIME LIMITATION FOR THE SECOND LEVEL REVIEW. SEE THIS APPEALS 2d PAGE SECTION G (SLR) REVIEW-ERS ACTION THE DATE THE APPEAL WAS ASSIGNED AND DUE DATE 11/29/10 ASSIGNED 1/7/11 DUE. BUT THE RETURNED TO INMATE DATE IS JAN 18, 2010 BEFORE THE APPEAL WAS EVEN FILED, EVEN FOR THE SAKE OF ARGUMENT 2010 WAS MENT TO BE 2011 IT'S WOULD BE 11 DAYS PASS THE TIME LIMITS.
    BUT IT IS PLAINTIFF CONTENTION ONCE HE DID RECEIVE HIS APPEAL BACK WHICH (I) BLEIVE WAS LATTER THAN JAN 18, 2010  PLAINTIFF DID MAIL THIS APPEAL TO THE THIRD LEVEL 'OF APPEAL, BUT NEVER HERD OR RECEIVED HIS APPEAL BACK. THIS IS JUST ANOTHE EXAMPLE OF DEF.S HAVING COMPLETE CONTROLE OF 602 APPEAL AVAILABILITY TO EXHAUSTE AT (LAC)


// EXHIBIT. III

PLAINTIFF SUBMITTS THIS 602 APPEAL TO SHOW OTHER MECHIN-ATION UTILIZED BY CDCR / DEF.S AS SET. PLAINTIFF EXECUTED THIS APPEAL AT SALINAS VALLEY STATE PRISON ADDRESSED TO (LAC) SENT VIA INSTATIONAL MAIL TO (SVSP) APPEALS COORDINATOR WHO FORWARD SAID APPEAL TO (LAC) SEE 695 JUNE 22, 2017
    WHEREIN (LAC) RECEIVED, AND (LAC) HAVING ALREADY OICIGINALLY RECEIVING THIS APPEAL IN APRIL RETURNED SAID APPEAL TO ME SCREEN OUT PER 3084.5 (b)(4)(A) AND 3084.6 (b)(6) NEVER STATED ANYTHING ABOUT SAID APPEAL PEPTAINING TO PELICAN BAY BUT UPON RETURNING THE APRIL 695 APPEAL (LAC) SENT THE APPEAL TO PELICAN BAY IN A MAY 695.
    THESE ACTIONS ARE INTENTIONAL TO CIRCUMVENT, INTIMEDATE ETC. AS THIS APPEAL WAS ON A R&R OFFICER EMPLOYED AT LANCASTER. THIS APPEAL HAS 3 DIF-FERANT LOG#'S AND WITHHELD SO CONS IT IS TIME BARED WHERE-FOR PLAINTIFF DECIDED TO JUST USE IT AS A EXHIBIT TO SHOW THE NONE AVAILABLE 602 APPEAL PROCESS CDCR'S UTILIZES TO CONTINUE TO SUBMIT THIS APPEAL WOULD BE FRUITLESS.

— CONCLUSION —

ALL PLAINTIFF'S EXHIBITS TAKEN COLLECTIVELY SUPPORT GEN-UIEN MATERIAL FACTS IN DISPUTE. WHEREFORE THE COURT SHOULD DENY DEFENDANT SUM. J. MOT.


    I DECLARE UNDER THE PENALTY OF PURJURY OF STATE AND FEDERAL LAW, AS WELL I AM WILLING TO TESTIFY TO SUCH.
    EXECUTED SEPT - 2  2017  AT SVSP LAC
          OCT

                    RESPECTFULLY;
                    Mr. Lafonyo R. Turner

EXHIBIT I



# SPECIAL REPORT

## CDCR'S REVISED INMATE APPEAL PROCESS LEAVES KEY PROBLEMS UNADDRESSED

## OFFICE OF THE INSPECTOR GENERAL

ROBERT A. BARTON
INSPECTOR GENERAL

STATE OF CALIFORNIA
SEPTEMBER 2011

*Robert A. Barton, Inspector General*                      *Office of the Inspector General*

September 28, 2011

Matthew L. Cate, Secretary
California Department of Corrections and Rehabilitation
1515 S Street, Room 502 South
Sacramento, California 95814

Dear Mr. Cate:

Enclosed is the Office of the Inspector General's special report on the California Department of
Corrections and Rehabilitation titled CDCR's Revised Inmate Appeal Process Leaves Key
Problems Unaddressed. The purpose of this special report was to identify our concerns with the
revised appeals process, which became effective on January 28, 2011.

In reviewing both CDCR's former and revised inmate appeal processes, we identified the
concerns that led CDCR to change its inmate appeal process and assessed whether the revised
inmate appeal process addressed those concerns. The report concludes that some of the appeal
process changes appear to have benefited both the department and adult inmate/parolee
population. For instance, the department implemented a new accountability measure providing a
"receipt" for inmate/parolee requests. However, the department missed an opportunity to provide
a similar feature with the actual appeal form to minimize allegations of lost, stolen, misplaced, or
destroyed appeals. This report summarizes our findings and identifies three areas of concern that
require further action by CDCR:

- *The revised appeal process lacks an accountable means of verifying that appeals are
  made and lacks an accountable means of delivering appeals.*

- *Appeals coordinators do not provide inmates with the information necessary to resubmit
  a rejected appeal.*

- *Rapid implementation of the revised appeal process caused confusion and presented
  additional challenges.*

# Contents

Executive Summary ...................................................................................................... 1

Introduction .................................................................................................................. 4

Objectives, Scope, and Methodology ........................................................................... 8

Finding 1 ...................................................................................................................... 9

    The revised appeal process lacks an accountable means of verifying that appeals are made and lacks an accountable means of delivering appeals.

    Recommendations ................................................................................................... 12

Finding 2 ...................................................................................................................... 14

    Appeals coordinators do not provide inmates with the information necessary to resubmit a rejected appeal.

    Recommendations ...................................................................................................17

Finding 3 ...................................................................................................................... 18

    Rapid implementation of the revised appeal process caused confusion and presented additional challenges.

    Recommendations ................................................................................................... 22

California Department of Corrections and Rehabilitation's Response ...................... 23

Mr. Matthew L. Cate, Secretary
Page 2

We would like to thank you and your staff for the cooperation extended to my staff in completing this special report. If you have any questions concerning this report, please contact Bill Shepherd, Deputy Inspector General, In-Charge, at (916) 830-3600.

Sincerely,

ROBERT A. BARTON
Inspector General

Enclosures

cc:    Dean Foston, Chief, Office of Appeals, CDCR
       Linda Wong, External Audits Manager, CDCR

# Executive Summary

The California Department of Corrections and Rehabilitation (CDCR) began developing its current inmate appeal process in the 1970s in response to several high-profile riots and prison takeovers by inmates who believed their grievances were not being properly addressed. Reviews of those incidents determined that establishing a meaningful inmate appeal process that promptly resolves inmate grievances at the earliest possible stage is a cost-effective strategy that reduces tensions in the prison system and is essential to the security of California's penal system.

The revised inmate appeal process prescribed under Title 15, Section 3084.1 (a) of the California Code of Regulations, which became effective on January 28, 2011, enables an inmate or parolee (inmate) to appeal any policy, decision, action, condition, or omission by CDCR or its employees that the inmate can demonstrate had a materially adverse effect upon the inmate's health, safety, or welfare. The objective of this process is to resolve inmate grievances at the lowest possible administrative level.

In reviewing both CDCR's former and revised inmate appeal processes, the Office of the Inspector General identified the concerns that led CDCR to change its inmate appeal process and assessed whether the revised inmate appeal process addressed those concerns.[1] This report summarizes our findings and identifies three areas of concern that may require further action by CDCR.

One of the primary deficiencies CDCR identified in its former appeal process was that inmates were unable to prove they had attempted to informally resolve an issue. This lack of verification led to allegations that a number of appeals were destroyed or lost, either intentionally or negligently. The revised process attempts to increase CDCR's accountability by providing the inmate with a copy, or receipt, of his or her attempt to informally resolve an issue (Form 22 request-for-interview process) before filing a formal appeal. The revised inmate appeal process does not, however, provide the inmate with a receipt of any kind if the inmate elevates the issue to the formal appeal level at the prison's appeals office (Form 602 appeal process). As a consequence, CDCR's revised appeal process does not provide enough accountability to address inmate allegations that more significant appeals are subject to intentional destruction or negligence. We further found that a number of inmates do not trust that correctional employees will appropriately safeguard either the Form 602 appeal itself or the information contained in the Form 602 appeal.

Our second area of concern pertains to the responsibilities of appeals coordinators who screen Form 602 appeals at the appeals office. When an appeals coordinator rejects a Form 602

---

[1]   The Office of the Inspector General anticipates conducting a second review of the revised inmate appeal process later this year. Our second review will focus on whether the revised process is achieving better results for both employees and inmates.

appeal,[2] new regulations direct the coordinator to provide clear and sufficient instruction necessary for an inmate to qualify an appeal for processing. In general, however, appeals coordinators do not adequately explain the reasons for rejecting the appeal. The inadequate or absent explanation for the appeal's rejection makes it difficult for the inmate to have a resubmitted appeal accepted. Additionally, we found that although the primary reason appeals are rejected is that the inmate has not attached all necessary appropriate documents to the appeal, inmates are not necessarily afforded an opportunity to photocopy the relevant documents for inclusion with their appeal.

Finally, it appears that CDCR implemented the revised appeal process before adequately training employees and inmates concerning the new process. This lack of training caused confusion for both inmates and employees. Information we received indicates that a number of correctional employees refused to sign the receipt for the Form 22 appeal because they believed that signing the form could create liability for them. This refusal made it difficult for inmates to submit their appeals. Moreover, because employees were not adequately trained in a timely manner, a number of employees and inmates confused the instructions for using the new Form 22 ("Inmate/Parolee Request for Interview, Item or Service") with the instructions for using the standing Form GA-22 ("Inmate Request for Interview").

The above concerns notwithstanding, the Office of the Inspector General acknowledges CDCR's efforts to make its inmate appeals process more accountable and we note that all of the concerns we have identified in the revised appeal process appear to be readily correctable.

**Recommendations:**

The Office of the Inspector General recommends that the CDCR take the following actions to provide further accountability in the Form 602 appeal process:

- Add a receipt feature to the Form 602 appeal form or assign a log number to all Form 602 appeals, whether or not they are accepted, to minimize allegations of lost, stolen, misplaced, or destroyed appeals.

- Consider modifying regulations to allow inmates to make copies of their rejected appeals and supporting documentation.

- Consider implementing other accountability measures, such as those successfully implemented by the Texas Department of Criminal Justice, whereby appeals office employees, rather than correctional officers, directly collect all inmate appeals.

- Ensure that the appeal screen-out notice provided to inmates not only provides the specific reason(s) for the rejection and correction(s) necessary for the appeal to be accepted, but also includes complete instructions to the inmate by identifying all specific action(s) and form(s) necessary for CDCR to accept the appeal, as well as where and how to obtain them.

---

2   An appeal that is rejected pursuant to Title 15 requirements may later be accepted if the reason noted for the rejection is corrected and the inmate returns the appeal to the appeals coordinator within 30 calendar days of rejection. Representatives of the Inmate Advisory Council (Council) and CDCR employees commonly refer to appeal rejections as "screen-outs" since the inmate appeals coordinator screens all appeals prior to acceptance and assignment for review.

- Require appeals office employees to regularly meet with Inmate Advisory Council members to discuss the supporting documents needed for the most common types of appeal issues and remove barriers to inmates' obtaining these documents.

- Ensure that all affected employees are properly trained concerning new appeal procedures.

- Develop an alternative to inmates' submitting a Form 22 to custody staff for signature. We suggest designating a staff position in each housing unit to process Form 22 requests at specific times every day.

- Effectively explain to its employees and inmates when to use the Form 22 and when to use Form GA-22.

- Make copies of the revised appeal regulations available in prison law libraries.

# Introduction

In the wake of several high-profile inmate riots and takeovers of prisons nationwide during the 1960s and 1970s, reviews of those incidents determined that one of the primary reasons for inmate unrest was inmates' belief that no process existed for them to have their legitimate concerns and grievances addressed by correctional management. As a result, the state determined that it was in the best interests of the inmates, the correctional employees, and the public to create an inmate appeal process. That process, now commonly referred to as the 602 appeal process, commenced in the mid-1970s and has continually evolved since that time.

More recently, on January 28, 2011, CDCR implemented emergency regulations that amended the existing 602 appeal process. On that date, CDCR published a notice of change to the amended regulations and allowed for a written public comment period through March 22, 2011. On June 15, 2011, CDCR submitted its final rulemaking package for approval to the Office of Administrative Law, which determines whether emergency regulations can be made permanent. The revised 602 appeal process was approved by the Office of Administrative Law and became effective on July 28, 2011.

In its Initial Statement of Reasons, CDCR identified its concerns regarding the appeal process and explained how its amended regulations would resolve these concerns. The key concerns and corresponding solutions are listed in Figure 1:

Figure 1: CDCR's concerns and solutions for the inmate appeal process.

| | |
|---|---|
| When inmates or parolees claimed they were denied access to a remedy because CDCR employees lost or did not respond to appeals at the informal stage, the informal appeal process did not give CDCR the means to refute or sustain those claims. | Eliminate the informal appeal step and create a new "written request process" that is outside the appeals system. This process provides an inmate or parolee with a "receipt" or copy of his or her request at the time of submission and during other response stages. This new process establishes greater accountability than the previous informal appeal process and allows an inmate or parolee to file an appeal if a CDCR employee fails to respond in a timely manner to an inmate's written request. |
| Vague regulations and inmates' improper use of the appeal process led to the following CDCR concerns:<br><br>• Regulations only require an "adverse effect," which does not require measurable harm or injury.<br><br>• Inmates submit non-essential attachments with appeals.<br><br>• Inmates file excessive numbers of appeals (more than one appeal every seven days per inmate).<br><br>• There is a *limited* criteria to define "appeal abuse" when inmates abuse the process. | Clarify appeal regulations and create a standardized appeal process to ensure that inmates can effectively complete and submit appeals. The revised inmate appeal process includes the following changes:<br><br>• Requires a "material adverse effect" that establishes a measureable harm or injury instead of a mere "adverse effect."<br><br>• Reduces the space available on the form for the appeal explanation and limits attachments.<br><br>• Decreases filing frequency to one appeal per inmate every 14 days *(unless appeal meets "emergency" criteria).*<br><br>• Defines criteria that place inmate or parolee on appeals abuse restriction. |

Source: CDCR's Initial Statement of Reasons – Appeals, December 13, 2010.

Independently from CDCR, the Office of the Inspector General reviews complaints from inmates and other concerned persons; such complaints arrive by mail or through the Inspector General's 24-hour toll-free telephone line. For this report, we analyzed the complaints received in 2010 to provide context for the types of complaints we received regarding CDCR's former appeal process: in 2010, the Office of the Inspector General received 502 complaints regarding inmate appeals, of which 156 concerned allegedly lost, stolen, misplaced, or unanswered appeals.

### Former Appeal Process

Before January 28, 2011, an inmate filed an appeal by submitting a CDCR Form 602 to the appropriate CDCR employee at the "informal level" within 15 days of the event giving rise to the appeal. At the informal level, the employee involved in the action or decision responded directly to the inmate. For example, if an inmate submitted an appeal claiming that his or her property was missing following a cell search, the employee who performed the search could discuss the matter with the inmate who filed the appeal, review all pertinent documentation (e.g., housing unit cell/locker search receipt or log book), and attempt to resolve the appeal informally. Appeals resolved at the informal level were not required to be logged or tracked.

Employees and inmates alike recognized certain problems plaguing this system. Most noticeably, the system lacked accountability: it did not provide a means by which inmates could prove they had filed an appeal nor a means by which employees could refute inmates' claims of lost or mishandled appeals. Moreover, guidelines governing key aspects of the process itself were vague. For example, the term, "appeal abuse," a reason for rejecting an inmate's appeal, was insufficiently defined, as was the term, "adverse effect," which is a requirement for making an appeal. The vague definitions further diminished the process's utility, as inmates grew frustrated with appeals being denied for reasons the inmates did not clearly understand.

As shown in Figure 2 on the next page, under the former process, if an inmate were dissatisfied with the informal response, the inmate proceeded to the first level of a formal review. If still dissatisfied, the inmate could then appeal the decision to a second, and if necessary, even a third level of review.

Figure 2: First steps of the former and revised inmate appeal process.

**Former Process**

**Step 1 – Staff Response**

- Inmate has a complaint.
- Inmate submits appeal form (Form 602) to the employee who can address the issue or was involved in the issue.
- Employee responds on the Form 602, informal level, and returns it to the inmate.
- If unsatisfied, the inmate can elevate the complaint to Step 2, First Formal Level.

**Step 2 – First Formal Level**

- Inmate files same appeal (Form 602) and supporting documents with the prison's appeals office.
- Appeals coordinator reviews the appeal and either accepts it for consideration or rejects it. The appeal is returned to the inmate.
- If unsatisfied with the accepted appeal's determination, the inmate may re-file it two more times at higher levels.

**Revised Process**

= Key Change

**Step 1 – Staff Response**

- Inmate has a complaint.
- Inmate submits "Request for Interview" (Form 22) to **any** employee. **Receipt** is provided to the inmate.
- The subject employee responds on the Form 22 and returns it to the inmate.
- If unsatisfied, the inmate can elevate the complaint to Step 2, Supervisor Review.

**Step 2 – Supervisor Review**

- Inmate re-files the same Form 22 with the employee's supervisor. **Receipt** is provided to the inmate.
- Supervisor responds on the Form 22 and returns it to the inmate.
- If unsatisfied, the inmate can elevate his or her complaint to Step 3, First Formal Level.

**Step 3 – Appeals Office Review**

- Inmate files appeal (Form 602) and supporting documents with the prison's appeals office. **No Receipt** is provided to the inmate.
- Appeals coordinator reviews the appeal and either accepts it for consideration or rejects it. The appeal is then returned to the inmate.
- If unsatisfied with the accepted appeal's determination, the inmate may re-file it two more times at higher levels.

*Revised Appeal Process*

On January 28, 2011, CDCR eliminated the "informal" level in the appeal process and created a five-step written process that uses the CDCR Form 22 (Form 22) and a revised CDCR Form 602 (Form 602).[3] Steps one and two are processed separately from the appeals office since the Form 22 process is not a formal appeal but rather a request for interview to resolve an issue. Inmates unsuccessful in resolving a request orally may choose to use Form 22 to document the request in writing. It is a multi-part form that the inmate may submit to any CDCR employee. The CDCR employee signs and prints his or her name, dates the form, and provides a "receipt" by returning a copy of the Form 22 to the inmate. If the receiving employee is not the subject of the request, the receiving employee forwards the request within 24 hours to the employee who is the subject of the request or is in some other way the appropriate person to handle the

---

3   When submitting a Form 602, the inmate or parolee must present evidence of steps taken to resolve the issue and the CDCR employee's final decision. The Form 22 provides proof of final actions or determinations by a CDCR employee when no other process or proof is available. The Form 22 is not required for disciplinary appeals, classification appeals, or other appeal areas that already document a final CDCR decision. Additionally, staff complaints must be appealed directly with the Form 602.

request. For example, an inmate might deliver a Form 22 request directly to a correctional officer for receipt purposes although the subject of the request is an employee in the prison's mailroom. After receiving the appropriate employee's response, an inmate can request a supervisor's review if the inmate disagrees with the employee's response. If dissatisfied with the supervisor's response, the inmate proceeds to the next level of the process, which is to submit a Form 602 appeal to the prison's appeals office.

As shown in Figure 2, during Step 3, the inmate must submit a Form 602 appeal to the appeals coordinator within 30 days of the appeal issue. The inmate does not, however, receive a copy of the appeal when he or she submits the Form 602 to the appeals coordinator.[4] If dissatisfied with the first-level response to the appeal at the appeals office, the inmate can appeal the decision to a second, and if necessary, a third level. At each level of the Form 602 appeal process, the inmate must state his or her reasons for elevating the appeal. At none of these levels does the inmate receive a copy or receipt when filing his or her appeal.

### Key Process Changes

One of the fundamental changes between the former and revised appeal processes is the ability for an inmate or parolee to receive a non-carbon copy of his Form 22 request, which also functions as a "receipt," at the initial level when requesting an interview, item or service. If the inmate is dissatisfied with the response to his or her request at that initial level and proceeds to file a Form 602 appeal with the appeals office, however, the inmate or parolee does not receive a receipt of the Form 602. Figure 3 below summarizes noteworthy changes between the former and revised appeal processes.

**Figure 3:** Noteworthy changes in the inmate appeal process.

| Former Process | Revised Process | Viewpoint* CDCR | Inmate |
|---|---|:---:|:---:|
| Must show an **adverse** effect. | Must show a **material adverse** effect. | + | - |
| Must file within **15 days** of the event. | Must file within **30 days** of the event. | 0 | + |
| May only file one appeal every **7 days**. | May only file one appeal every **14 days**.** | + | - |
| Explanation of appeal limited to approximately **2 ¼ pages** of writing or typewriting. | Explanation of appeal limited to approximately **1/2 page** of writing or typewriting. | + | - |
| Allowed **multiple issues**. | Limited to **one issue**. | + | - |
| **No receipt**/evidence of filing. | **Receipt** for request form (Form 22). | + | + |
| | **No Receipt** for appeal form (Form 602). | - | - |

*Source: CDCR's "Inmate/Parolee Appeal Changes"; Initial Statement of Reasons – Appeals, December 13, 2010; and OIG calculation of available appeal writing space.*

*\*Note: Positive (+), Negative (-), and Neutral (0) viewpoints were determined through inspector observations and interviews with inmate representatives and inmate appeals coordinators.*

*\*\* See Title 15, Section 3084.9 for exceptions to the regular appeal process. Also, a group appeal counts toward the number of allowable appeals filed in a 14-calendar-day period.*

---

4   If the appeal is accepted, the inmate does receive a log number and due date notice through the mail.

# Objectives, Scope and Methodology

The Office of the Inspector General began its review and evaluation of the inmate appeal process following implementation of the emergency regulations. The focus of our review was to evaluate whether the revised inmate appeal process reasonably addressed the most fundamental problems associated with the former inmate appeal process. A secondary objective of this review was to identify areas for possible improvement by CDCR. To complete this review, we performed the following actions:

- Reviewed laws, rules, regulations, policies and procedures related to the inmate appeal process.

- Conducted interviews with inmate appeals coordinators and appeals office employees. We also spoke with several custody and non-custody managers and employees at four prisons: California State Prison, Corcoran; California Substance Abuse Treatment Facility and State Prison, Corcoran; California State Prison, Solano; and Sierra Conservation Center.

- Interviewed 29 Inmate Advisory Council (Council) executive body and housing unit representatives.[5]

- Obtained and analyzed inmate appeal rejections,[6] electronic data from the In-Service Training Program, and CDCR's comparative statistics on inmate appeals.[7]

- Reviewed and analyzed all public comments submitted to CDCR through the close of the public comment period on March 22, 2011, concerning its regulatory changes to the inmate appeal process.

---

5   Title 15, California Code of Regulations, Section 3230 (a) (1), provides that representatives of the Inmate Advisory Council (Council) shall advise and communicate with the warden and other CDCR employees issues of a common interest and concerns to the inmate general population.

6   We reviewed inmate rejection letters obtained during our semi-annual inspections at California Correctional Institution, Chuckawalla Valley State Prison, and Correctional Training Facility.

7   CDCR's 2010 comparative statistics identified 148,896 appeals (excluding inmate medical appeals) submitted to adult prisons. Of this total, 75,146 appeals were accepted and issued a log number; the remaining 73,750 were rejected. [Note: CDCR's "CompStat Counting Rules" classify these rejections as "screen-outs": appeals returned to the appellant for correction.]

# Finding 1

## The revised appeal process lacks an accountable means of verifying that appeals are made and lacks an accountable means of delivering appeals

The California Department of Corrections and Rehabilitation (CDCR) noted in its Initial Statement of Reasons for proposing the emergency regulations that because it did not log informal appeals, "inmates could allege that staff were losing and/or not responding to appeals at the informal stage, which in turn meant that [if, in the interim, the time limit for filing the appeal expired], inmates or parolees were being denied access to a remedy, and CDCR had no way to refute such claims." As a result, CDCR replaced the informal appeal process with a two-step "Request for Interview, Item or Service" (Form 22) process. This two-step process improved accountability via a "receipt" feature (for both inmates and CDCR employees) that is attached to the Form 22. However, CDCR did not extend the same receipt feature to the third step of its revised appeal process, the actual "Inmate/Parolee Appeal" (Form 602). Thus, although the revised process has resolved the problem regarding allegations of lost or destroyed requests for resolution of an issue, for those situations where the issue is not resolved at the request level, the revised process has not solved the problem regarding allegations of lost or destroyed appeals.

We reviewed each of the 64 written public comments and one oral statement provided at the public hearing held on March 22, 2011, regarding CDCR's changes to the inmate appeal process. Several comments expressed concern that CDCR did not include a receipt feature with the revised Form 602.[8] Although some written comments and inmate interviews were positive about the new receipt feature on the Form 22, others wondered why the Form 602 lacked this feature. Further, multiple Inmate Advisory Council (Council) members we spoke with commented on the lack of accountability in the appeal process, as well as the lack of trust inmates have when submitting an appeal through prison mail.

### CDCR's Form 602 appeal process lacks receipt accountability

We asked Council members if the new appeal process addressed the accountability problems in the former appeal process, and some responded that "the Form 602 needs a receipt or immediate sign off," and that the new process should use an NCR [no-carbon-required] Form 602 to provide a receipt for inmates.

In addition to the Council member comments, public comments concerning the proposed regulatory changes to the inmate appeal process also supported adding more accountability to the Form 602 appeal process. Excerpts from two of those comments follow:

---

8   Other notable concerns raised in the written comments included: 1) changing the appeal threshold from "adverse effect" to "materially adverse effect"; 2) decreasing the space available for inmates to explain their appeal issue; and 3) limiting the frequency of appeal submissions from "1 every 7" to "1 every 14" calendar days. After allowing sufficient time to determine the impact of these changes, the Office of the Inspector General may further explore these concerns in a follow-up evaluation.

> *The CDCR has not addressed the appeal tracking problem with regards to appeals submitted directly to the appeals coordinator's office ... mailed through the institutions [sic] internal mail system ... there is no receipt or record created to prove that the appeal was in fact submitted and the CDCR also does not have any way to refute an inmate's allegation that an appeal was submitted.*
>
> *There is still one significant flaw [with Form 602]: its ability to become lost ... losing of [sic] an appeal happens far too often because of a built in characteristic: this is its [sic] only one master copy ... add self-duplicating triplicate [no-carbon-required] process.*

We asked an official from the Office of Appeals (formerly known as the Inmate Appeals Branch) why CDCR did not include a receipt feature with the revised Form 602. The official acknowledged that CDCR considered making both the Form 602 and Form 602-A ("Inmate/ Parolee Appeal Form Attachment") no-carbon-required documents, similar to the new Form 22; however, CDCR ultimately declined to do so for the following reason:

> *It would require us to receipt each step of the 602 process by breaking the current single, two-sided, form into separate NCR forms; one for each of the four levels of review available at that time. Yet despite the cost[9] and complexity of this approach, the benefits would have been minimal ... since almost all formal appeals are mailed, a receipt would have provided the appellant with only slightly more protection than the old practice already did. It certainly would not have provided any insurance against the possibility of the appeal being lost or destroyed.*

The official further noted that instead of creating an NCR form for the Form 602 process, CDCR created a "new receipted CDCR Form 22 that would both facilitate and document a problem solving process prior to appeal," replacing the discontinued informal appeal level.

The Office of Appeals official's reasoning notwithstanding, it appears that although the current Form 602 process includes three levels of review, it is probably not necessary to create a receipt process for each review level for purposes of establishing that the Form 602 appeal was not lost or destroyed. Instead, because the primary allegation we have encountered concerns the Form 602 appeal being lost or destroyed by correctional staff before the appeal makes it to the first level of review at the appeals office, it should suffice if a record is created of the Form 602 appeal actually being submitted to the appeals office. In short, although the new appeal process provides accountability for inmate *requests* for resolution of an issue, it still lacks accountability for those usually more serious issues that are not resolved at the request stage and instead are elevated to a formal *appeal*.

### CDCR lacks an accountable means of delivering inmates' appeals

Designated custody officers briefly open and read all non-legal mail, including inmate appeals

---

9  From December 2010 through March 2011, CDCR paid $435,943 for 4.9 million new forms (Form 22, 602, 602-A, and 602-G) related to the roll-out of the emergency regulations for inmate appeals. The average cost was approximately $.20 for each Form 22 and $.05 for each 602 appeal form.

submitted through prison mail or appeal boxes.[10] This practice leads inmates to assert that some of these officers could interfere with an appeal before forwarding it to the appeals office.

When we asked Council representatives what changes would be necessary to improve the former inmate appeal process, one representative asserted that the correctional officer who collects the appeals is too close to the appeal process and that appeals should go directly to the appeals coordinator. Another inmate expressed his belief that lost appeals will still be an issue with the revised Form 602 since custody employees have the ability to read an appeal firsthand through the existing mail process. An Office of Appeals official remarked that CDCR is working on improving the appeal delivery to make it a process "in which staff either do not handle or are unaware of the contents of the appeal."

Our experience with inmate appeals reflects similar concerns. In 2010, when the former process was in effect, the Office of the Inspector General received 156 complaints regarding lost, stolen, misplaced, or unanswered appeals. The top two complaint topics in this group were the employee's "failure to respond" to previous inmate appeal forms (69 percent) and "failure to accept/destruction of [appeal] document" (23 percent). We reviewed a sample of 30 complaints in these two areas and determined that 28 out of 30 (93 percent) of the complaints were not substantiated.[11] For example, many inmates claimed they did not receive a response to their appeal, but upon further investigation we typically found that CDCR had in fact already responded to the inmate by issuing a rejection letter. Although many complaints we received may ultimately be unsubstantiated, the amount and type of appeal complaints we receive continue to demonstrate inmates' perceptions that the appeal process lacks accountability.

**Examples of comments made by Council members regarding submitting an appeal form:**

- A first watch officer opened mail containing an inmate appeal and gave a copy to the officer who was the subject of the appeal. The next morning, the subject officer questioned the inmate in his cell about the appeal.

- The appeals coordinator does not put a log number on [submitted] appeals… A log number should be issued as soon as you turn in your appeal at the drop-off point.

- The 'buddy system' can make your day-to-day life harder with officers informing other officers about your appeal.

Source: Council responses to OIG questions on whether inmates received a resolution or had a problem with their appeal. Interviews occurred in February and March 2011.

One means of improving accountability could be to move the responsibility for collecting and reading inmate appeals from custody employees in a housing unit to the appeals coordinator or employees in each prison's appeals office. The Texas Department of Criminal Justice's Offender Grievance Program requires grievance forms to be submitted directly to a Unit Grievance Investigator (roughly the equivalent of CDCR's appeals coordinator), or placed in a grievance

---

10   Title 15 mandates that all non-confidential inmate mail, incoming or outgoing, is subject to a being read in its entirety by designated staff (typically a correctional officer in the respective housing unit or area) to prevent the introduction of contraband and ensure the safety and security of the prison.

11   Two complaints were considered "potentially substantiated" since the appeals coordinator did not have a record of receiving the appeal when an inmate claimed to have submitted one. Since the Form 602 does not include a receipt feature, inmates cannot demonstrate that they submitted an appeal or that a CDCR employee lost or destroyed a 602 appeal form.

box. The Texas Unit Grievance Investigator is responsible not only for processing and resolving offender complaints, screening unit-level grievances, and assigning appropriate issue and outcome codes for each appeal, but also for assisting offenders with the grievance process.[12]

### *CDCR does not reliably allow inmates to make photocopies of appeal documents that could function as verification of the appeal in the absence of a receipt copy*

Another area of concern to inmates is their inability to make photocopies of their own appeal documents. Although CDCR's regulations allow inmates to make copies of "legal documents," appeal forms are not identified as legal documents by Title 15 regulations. Council members claimed that some prisons interpret this fact as justification for prohibiting inmates from obtaining copies of their appeal documents unless the prison assigned a log number to the appeal or the appeal is the subject of an active court case (thus moving the appeal to the status of a "legal document"). Another Council member claimed the independent judgment of the CDCR employee working in the law library, where inmates typically make photocopies, determines whether or not an inmate can make a copy of an appeal. The Council members explained that since CDCR employees do not consistently allow inmates to make copies of an appeal form or necessary supporting documents, inmates are unable to prove they filed an appeal if CDCR employees lose, steal, or misplace appeals. Without the ability to make photocopies, inmates' only option is to make handwritten copies of their appeal and supporting documents, but a handwritten copy does not provide actual evidence that the appeal was filed.

In its Initial Statement of Reasons for the emergency regulations, CDCR recognized a need to introduce accountability into its inmate appeal process. The department effectively did so for purposes of the Form 22 "request for interview" process (formerly the "informal" complaint process); however, CDCR did not extend the receipt concept to Form 602 appeals submitted to the appeals office and continues to assign log numbers only to "accepted" appeals (not "screened-out" appeals). As a result, it is likely that CDCR and the Office of the Inspector General will continue receiving complaints of lost, destroyed, or misfiled appeals, and inmates will continue to distrust the appeal delivery process.

### Recommendations:

The Office of the Inspector General recommends that the CDCR take the following actions to improve accountability in the 602 appeal process:

- Add a receipt feature to its appeal form or assign a log number to all Form 602 appeals, whether or not they are accepted, to minimize allegations of lost, stolen, misplaced, or destroyed appeals.

- Consider modifying regulations to allow inmates to make copies of their rejected appeals and supporting documentation.

---

12   The Unit Grievance Investigator (UGI) works closely with the warden and other Texas Department of Criminal Justice department heads to consider offender input during a "Step 1" grievance. If the offender is not satisfied with the response, the decision may be appealed to the Central Grievance Office as a "Step 2" grievance. During Fiscal Year 2010, the Unit Grievance Investigators handled more than 173,500 grievances at the unit level (Step 1), while central office staff processed more than 43,500 appeals (Step 2).

- Consider implementing other accountability measures, such as requiring appeals office employees instead of correctional officers to directly collect all appeals, as implemented by the Texas Department of Criminal Justice.

# Finding 2

## Appeals coordinators do not provide inmates with the information necessary to resubmit a rejected appeal

Although CDCR guidelines specify that appeals coordinators should not place unreasonable restraints on appellants' rights to appeal, we found that the practices of a number of CDCR employees, including appeals coordinators, oftentimes contradict these guidelines. Appeals coordinators often provide inmates with insufficient guidance for correcting rejected appeals and some CDCR employees restrict inmates' access to documents necessary for supporting those appeals. As a result, an inmate's ability to file acceptable appeals is impaired.

When inmates' appeals reach the appeals office, they are screened[13] by the inmate appeals coordinator during the first level of review. During that screening, the appeals coordinator determines which appeals to accept, then issues a log number to the accepted appeals and assigns those appeals to the appropriate CDCR unit for response. Appeals that are not accepted are considered "screened out" and a log number is not assigned to the appeal. Rules and procedural guidelines for appeals coordinators specify that "[e]ach appeal must be screened and categorized" and that appeals coordinators should not exercise their responsibilities "in any manner that would place unreasonable restraints on the inmate's or parolee's right to appeal" (*Appeals Coordinator – Authority, Responsibilities and Expectations*, published by CDCR's Office of Appeals).

**Examples of comments made by Council members regarding screen-outs:**

- Appeals [coordinators] ask for documentation, but inmates are not provided with the means to get the documents.
- Appeals are sent back to inmates requesting documents and information that was already attached to the 602. Inmates get frustrated with the amount and type of screen-outs, and give up on the process entirely.
- Inmate appeals office does everything it can to stall the 602 until inmates give up on the process. 'Youngsters' [new inmates] give up on the process knowing that it does not work.

Source: Council responses to OIG questions on significant problems with former appeals process. Interviews occurred in February and March 2011.

We interviewed 29 Inmate Advisory Council (Council) members and asked, "What changes would be necessary to improve the old inmate appeal process?" The inmates frequently responded that appeals office employees need to make this screen-out practice less restrictive. Further, Council members said many inmates were frustrated by their inability to obtain copies of necessary documents to complete their appeals. The Council members also voiced concerns that the inmate population's frustration with the appeal process causes many inmates to abandon appeals before achieving any resolution. The Council members worried that this frustration could increase tension between CDCR employees and inmates, and that this tension could cause inmates to seek alternatives, such as violence, if their complaints were perceived to be ignored.

---

13   Title 15 identifies 16 specific reasons that an appeal may be rejected, including the following: failure to demonstrate a material adverse effect to the appellant, failure to attach supporting documents, and not using proper appeal forms.

*CDCR employees rejected appeals for appropriate reasons, but did not provide sufficient instruction for the inmate to resubmit an acceptable appeal*

According to CDCR's 2010 comparative statistics, 148,896 appeals were submitted in adult prisons.[14] Of this total, 75,146 appeals were accepted and issued log numbers, and the remaining 73,750 were rejected. Title 15 requires when appeals coordinators reject an appeal, they explain the reason for rejection and also provide the inmate or parolee with clear and sufficient instruction on how to resubmit an acceptable appeal. Multiple appeals coordinators informed us that the most common screen-out factor is the inmate's failure to include necessary supporting documents.

To determine the validity of screen-outs, we reviewed 31 appeal screen-outs filed under the revised regulations from California Correctional Institution, Chuckawalla Valley State Prison, and Correctional Training Facility during April 2011. After we reviewed the screen-out letters, appeal forms, and appeal attachments, we concluded that the reasons for all 31 screen-outs were valid under the Title 15 requirements. However, we found that for 16 of the 31 screen-outs (52 percent), the accompanying letter to the inmate was missing key details, including not identifying the appropriate CDCR form needed to support the appeal or the Title 15 reference used to reject the appeal. Absent clear and sufficient instructions on how to resubmit an acceptable appeal, inmates face an increasing likelihood of a subsequent appeal rejection. The screen-out letters were missing one or more of these items:

- A list of all Title 15 references linked with each reason for rejecting the appeal.

- The specific CDCR form(s) required to support the appeal.

- Instructions on how to obtain a required form.

- A definitive response to the inmate's request for emergency status.

- The reasons that the appeals office determined the inmate misused or abused the appeal process.

One screen-out letter we reviewed illustrates how an inmate might feel unable to obtain resolution of an issue. The inmate's appeal claimed that his caseworker did not respond to his two attempts to apply for credit restoration. However, the inmate provided no documentary evidence to support these attempts and, as a result, the appeals coordinator rejected, or screened out, the appeal. The appeal screen-out letter instructed the inmate to attach a completed Application for Restoration of Credits and resubmit the appeal (Form 602) – apparently ignoring the inmate's assertion that he had twice already attempted to file this form. Had the screen-out letter instead advised the inmate to resubmit his appeal with a completed Form 22, the inmate's further attempt(s) to receive a response from his caseworker would be documented on the Form 22 receipt. Alternatively, the inmate may have been able to resolve his issue by using the Form 22 without further involvement from the appeals office. However, without

---

14   During 2010, according to the Office of Appeals, CDCR also received 2,639 appeals within the Division of Adult Parole Operations (DAPO), Regions I through IV and Community Correctional Facilities (CCF), accounting for less than 2 percent of total statewide appeals. The screen-out rates were 87 percent (1,749 out of 2,012) for DAPO and 20 percent (124 out of 627) for CCF's.

the appeals coordinators providing appellants with specific guidance, an inmate's ability to resubmit an acceptable appeal is diminished. When CDCR rejects appeals, it must provide sufficient information to inmates in their screen-out letter to avoid subsequent rejections for deficiencies that could have been noted in the initial rejection.

### *Inmates' difficulty in obtaining critical documents increases the possibility of a rejected appeal*

We found that inmates' omission of necessary documents with their appeal is one of the most common reasons an appeal is rejected. Our review of appeal rejections found that some inmates are either uninformed or disregard the fact that they need to submit a CDCR form to support their appeal issue. Council members explained that inmates had difficulty obtaining access to the law library to use the photocopy machine, due to inmate demand and recurring lockdowns of facilities. Another Council member said that some inmates are not receiving necessary documents in a timely manner after committee meetings, and that in order to meet appeal deadlines, they knowingly file their appeal without necessary documents. We note that CDCR's extension of the deadline for filing an appeal from 15 to 30 days of the event may provide some relief to inmates who require additional time to obtain supporting documents for their appeal.

We asked four appeals coordinators about the most common appeal screen-out reasons, and all four answered that the primary reason was missing documents. One appeal coordinator acknowledged that inmates do not understand what supporting documents are necessary when filing an appeal. He also acknowledged that, at times, CDCR employees may not respond in a timely manner to inmates' requests for supporting documents.[15]

An attorney representing inmates raised the following concern regarding the Title 15 requirement that inmates obtain the correct form and attach all supporting documents necessary for clarification or resolution:

> *A prisoner's grievance is not akin to a formal trial, or a substantive legal motion in which evidence should be required. An appeal is a mechanism by which a problem can be brought to the attention of prison officials, who respond. In addition, in many instances, the documents are entirely under the control of prison officials, and indeed are entirely available to the official responding to the appeal ... .*

Although some documents supporting an inmate's appeal may be readily available to the responding official, one appeals coordinator acknowledged it would be too time-consuming for CDCR employees to track down necessary forms for every appeal, especially considering the 2010 statewide monthly average of 376 appeals per prison. For instance, the appeals coordinator mentioned that he regularly receives appeals from inmates requesting the status of their requested sentence reductions for completing "milestone credits" (rehabilitation programs, the successful completion of which may reduce eligible inmates' sentences). However, we learned that calculating milestone credits is a labor-intensive manual process

---

15   Supporting documents include CDCR forms, such as a classification chrono (CDCR Form 128-G), which is used to document classification committee decisions.

involving multiple forms and CDCR employees.[16] In such cases, the appeals office is dependent on the inmate as well as other CDCR employees or outside entities to obtain the appropriate supporting documents.

**Recommendations:**

The Office of the Inspector General recommends that the CDCR take the following actions:

- Ensure that the appeal screen-out notice not only provides the specific reason(s) for the rejection and correction(s) necessary for the appeal to be accepted, but also includes complete instructions to the inmate by identifying *all* specific action(s) and form(s) necessary for CDCR to accept the appeal, as well as where and how to obtain them.

- Require that appeals office employees regularly meet with Inmate Advisory Council members to discuss the supporting documents needed for the most common types of appeal issues and remove those barriers to inmates' obtaining these documents.

---

16   For example, CDCR procedures require that before an inmate can participate in the GED exam, education staff must review the inmate's central file to confirm that the inmate does not already possesses a high school diploma, GED, or college degree. If a discrepancy exists, the inmate must request a transcript from the high school he or she attended to verify eligibility for participation in milestone credit-earning courses. Upon receipt of the transcript, an education registrar evaluates the information to determine the inmate's eligibility for program participation. Finally, a prison case records employee provides the inmate with a "legal status summary" calculating the inmate's release date based on the milestone completed.

# Finding 3

## Rapid implementation of the revised appeal process caused confusion and presented additional challenges

Timely training and comprehensive distribution of information is critical to the effective implementation of any change in an established process. In June 2010, CDCR's Office of Training and Professional Development (OTPD) noted in its on-the-job-training (OJT) modules for Form 22 requests and Form 602 appeals that failure to provide training in the revised appeal process may result in increased appeals and in CDCR's possible involvement in litigation initiated by inmates. Yet before starting the appeal process changes on January 28, 2011, CDCR did not expedite training for all of its employees who have direct contact with the inmate population; moreover, CDCR inconsistently distributed information to inmates and CDCR employees after the new revised process was in place. The slow roll-out of training, inconsistent information provided to employees and inmates, and confusion over the requirements entailed by the former and revised request-for-interview forms resulted in multiple challenges to the effective implementation of the revised appeal regulations.

### *The timing of training for custody employees did not match the implementation date of the revised regulations*

Effective implementation of CDCR's revised appeal process required prisons and parole offices to expedite training for all employees who have contact with inmates and parolees. Most CDCR employees received training in the revised appeals process after the implementation date of the new regulations. An official with the Office of Appeals explained that funding designated for expedited formal training through OTPD was removed due to state budget constraints shortly before the appeal process changes went into effect on January 28, 2011. As a result, CDCR's training roll-out was delayed and informal training was offered as an alternative. Under this alternative training approach, CDCR required all field employees with custody and parole responsibilities to be trained by the end of December 2011 on how to use the new Form 22 and revised 602 forms. We learned that appeals coordinators initially provided training to supervisors during regularly scheduled employee meetings. Those supervisors were then responsible for sharing this information with rank and file employees involved in the appeal process. Subsequently, the Deputy Director of Adult Operations acknowledged the following in an email dated April 6, 2011:

> Since it is anticipated that it may take up to 12 months for all staff to complete formal IST [in-service training] on this topic [Inmate Appeal System changes], please utilize OJT [on-the-job training] to ensure all staff are familiar with the changes to the Inmate/Parolee Appeal and written request (Form 22) policies, practices and forms.

Custody employees attend annual in-service training, which includes a one-hour component on the revised appeal process. Custody employees are also required to complete one-hour on-the-job training (self-study modules) on the use of the new Form 22 and the revised Form 602. In an email message, the Deputy Director of Adult Operations declared his expectation that 95 percent of employees were to complete the on-the-job modules for the Form 22 and Form

602 by May 6, 2011. During our review, as noted below in Figure 4, several prisons trained approximately half of their custody employees in the respective on-the-job training modules a few months after the new appeal requirements were implemented on January 28, 2011.

**Figure 4:** Percentage of custody employees who have completed on-the-job training in the revised appeal process.

| Prison | Number of Custody Employees | Number of Custody Employees That Have Completed Training on Form 22 and 602 | Percent of Custody Employees Trained | As of |
|---|---|---|---|---|
| North Kern State Prison | 854 | 219 | 26% | April 2011 |
| Pleasant Valley State Prison | 847 | 392 | 46% | April 2011 |
| California Substance Abuse Treatment Facility and State Prison | 1,261 | 612 | 49% | March 2011 |
| Sierra Conservation Center | 598 | 497 | 83% | March 2011 |
| California State Prison, Solano | 781 | 713 | 91% | March 2011 |

Source: Figures were provided by the In-Service Training Lieutenant or Sergeant at the above-mentioned prisons.

### CDCR distributed inconsistent information to employees and inmates on the revised appeal process

The Office of Appeals designed two brochures--*Introducing the New CDCR Form 22 for Inmates and Parolees* and *How to Submit an Appeal [Form 602]*--to educate the inmate population on the new appeal process. However, according to CDCR employees, two of the four prisons we visited did not distribute the brochures to inmates due to budget constraints. At one of the prisons distributing the brochures, appeals office employees attached brochure copies to inmates' appeal screen-out letters; the other prison made copies of the brochures and distributed them to each inmate's cell.

In February and March 2011, CDCR gave inmates copies of the *California Code of Regulations*, Title 15, updated through January 1, 2011, containing CDCR's rules and regulations. Since the emergency regulations for the revised appeal process did not take effect until January 28, 2011, the revised appeal regulations were not included in the copies distributed to inmates. One inmate we interviewed was frustrated that his appeal was screened out for a regulation that he did not know existed, since the regulation cited by the appeals coordinator in rejecting his appeal was part of the emergency regulations not included in the inmate's most recent copy of Title 15. We found copies of CDCR's emergency regulations and Initial Statement of Reasons in a prison law library used by minimum-security inmates, but we were informed by Inmate Advisory Council members that those copies were not available to inmates in other housing areas at the same prison.

### Some custody officers are allegedly unwilling to accept a Form 22

The on-the-job training module that CDCR provides to custody employees mandates that "staff shall not refuse to accept the Form 22, unless urgent and/or critical situations demand immediate attention." The training module also notifies CDCR employees that "Failure to

accept a completed form while not otherwise engaged in duties that preclude doing so is not allowed. Furthermore, failure to respond to, or destruction of the completed form, is subject to corrective action in accordance with the staff discipline policies of the Department."

The above mandate notwithstanding, the California Correctional Supervisors Organization (CCSO) informed CDCR that most custody employees do not want to sign the Form 22 if they are not the respondent. As the Administrative Liaison for the CCSO explained, "[N]ormally staff are reluctant to sign for a document that is not intended for them, therefore, making them somehow legally liable for the issuance in return … So inmates are having a hard time getting people to sign [the Form 22] to route it [to the respondent]." One appeals coordinator said that some custody employees and inmates still do not understand that the Form 22 is not an appeal but rather a request for interview. The appeal coordinator mentioned that Form 22s are being erroneously routed to the appeals office for resolution without first being addressed by the respondent. This erroneous routing slows down the resolution process.

**Examples of comments made by Council members regarding the new Form 22 and obtaining a receipt:**

- Some officers refuse to accept or sign the Form 22. Inmates are mailing them in and not getting a response within three days. The new process takes longer.
- Some officers still need training in the new process. Officers are not inclined to sign the forms because they would (or may) be held accountable.
- Everyone needs to be on board and willing to sign and address the new Form 22 timely. Otherwise, it can create problems down the line. There is so much uncertainty that inmates do not want to submit the form. The form is not officer-friendly.
- Officers are 'too busy' to accept the new Form 22. The appeal process is complicated. I watched the training video about ten times.

Source: Council comments on the Form 22 – request for interview process. Interviews occurred in February, March, and April 2011.

Some inmates also claimed during our interviews to have difficulty finding employees willing to sign their Form 22 request. The appeals training video instructs inmates using the new Form 22 request form to "wait for a staff member who has the time to at least take the form, sign it and give you a copy." Our inspectors received numerous comments from Inmate Advisory Council (Council) members mentioning that some custody employees are unwilling to sign the Form 22, claiming to be "too busy," or that some employees instruct the inmate to send his or her appeal through prison mail. If an inmate is not able to obtain a signature on a Form 22, the "receipt" function of the form becomes moot because an inmate must then submit the form through the prison's mail – just as they did in the former initial appeal process that the CDCR discontinued because of its lack of receipt accountability.

### Inmates and CDCR employees are confused about the intent and purpose of the two similarly named forms "GA-22" and "CDCR 22"

The training module for CDCR's Form 22 specifies that "[a]ll inmates/parolees will receive training on how to use the Form 22: Request for Interview, Item or Service through a video presentation and/or a brochure" prepared by the Office of Appeals. The prisons received an informational inmate appeals video, approximately eight minutes long, which was to be aired four to five times daily from mid-January through April 29, 2011. More than half (16 out of 29) of the Council members we interviewed watched the video through an institutional channel

in their cells because inmates generally choose not to watch the institutional channel in the
dayrooms. One Council member noted that CDCR "[t]raining assumes each inmate has a TV or
[the video] is shown on the dayroom floor." The inmates' choice not to watch the institutional
channel in dayrooms likely resulted in many inmates not viewing the video unless they owned
a TV. In addition to the problem of limited access, the video appears to have created confusion
with its initial statement:

> *Today we are discussing significant changes in how requests are made and routine
> problems addressed within the prisons and parole regions. The existing half-page
> Inmate Request for Interview Form [GA-22] has been redesigned to a full page and
> is now entitled the Request for Interview, Item or Service Form [CDCR 22]. This new
> CDCR 22 Form will be used to make requests and resolve issues. It also replaces the
> informal appeal process, which has been discontinued. There are other changes to
> the appeal process which will be discussed later in this video.*

The video thus implies that inmates should no longer use the GA-22 to make simple requests
and resolve issues, and that the redesigned form – the CDCR 22 – should be used for these
purposes. This direction has led to unintended uses of the new form, including inmates making
basic requests for things such as indigent envelopes or a Bible.

Further, the Office of Appeals notified CDCR employees that the Form GA-22 "Inmate
Request for Interview" would be replaced (as similarly stated in the appeals video shown
to inmates) when the new appeal process is implemented. Although we learned that this
misstatement was later corrected during a CDCR teleconference, some inmates and CDCR
employees remain uncertain about whether to use a Form GA-22 or Form 22. Two appeals
coordinators pointed out that CDCR could have changed the form name or number to avoid
confusion between the two forms.

We reviewed the following public comments regarding the appeal form confusion:

> From a law librarian - *[B]ecause the new regulations state that the new CDCR 22
> form can be used for 'requests' and take the place of the GA-22 form we are now
> receiving your four page NCR forms for simple request for law library access... I
> think this is a great waste of the State's money and contradicts the purpose of 'saving
> money and streamlining services'... my suggestion is not to abandon the old GA[-]22
> form because it serves an important purpose in the daily lives of inmates ... .*

> From a Catholic chaplain - *I receive anywhere from 50-75 of these requests [Form
> 22] each week ... Please consider limiting the use of CDCR 22 to issues that require
> a written response or explanation from staff. Simple requests for 'things' (such as a
> Bible, a Sympathy card, a prayer) should be made without requiring the 10 minutes it
> has been taking me to deal with each form.*

These public comments from CDCR employees illustrate the confusion that comes from
inadequate training as well as the confusion that comes from using similarly named request
forms.

**Recommendations:**

The Office of the Inspector General recommends that the CDCR take the following actions:

- Ensure that all affected employees are properly trained concerning new appeal procedures.

- Develop an additional alternative to inmates' submitting a Form 22 to custody employees for signature. We suggest designating an employee to process Form 22 requests at specific times every day.

- Effectively explain to its employees and inmates when to use the Form 22 and when to use Form GA-22.

- Make copies of the revised appeal regulations available in prison law libraries.

# California Department of Corrections and Rehabilitation's response to the special report (page 1 of 2)

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

OFFICE OF THE SECRETARY
P.O. Box 942883
Sacramento, CA 94283-0001



September 12, 2011

Mr. Robert A. Barton
Inspector General
Office of the Inspector General
P.O. Box 348780
Sacramento, CA 95834-8780

Dear Mr. Barton:

This letter is being submitted by the California Department of Corrections and Rehabilitation (CDCR) in response to the Office of the Inspector General's (OIG) report titled *Special Report: CDCR's Revised Inmate Appeal Process Leaves Key Problems Unaddressed.* The review identified concerns that led CDCR to change its inmate appeal process and assessed whether the revised inmate appeal process addressed those concerns.

It is important to CDCR that the inmate appeal process is accessible to the offender population and that staff are accountable for responding timely to their grievances. As such, the Office of Appeals (OOA) introduced a new Form 22 process which incorporates No Carbon Required copies to provide receipts for routine requests. OOA is also implementing necessary changes to ensure inmates' access to remedy and reviewing alternate secure delivery systems to mitigate the possibility of lost or discarded requests.

Due to unexpected fiscal restraints at the time of regulatory approval, OOA was unable to train all staff on the new regulations prior to implementation. However, 95 percent of the staff have now been trained and OOA is providing ongoing guidance and support as the training modules are completed. In addition, the institutions have been emailed specific directions regarding the proper handling of the form by staff and whether a CDCR Form 22 or a GA 22 is appropriate given the situation. A memo will be drafted to memorialize this information and will provide further onsite support as needed to ensure full staff compliance with the CDCR Form 22 process.

The OIG also noted deficiencies in institutional screening compounded by the inability of inmates to obtain the required documents to have their appeals accepted. To comply with the requirements of the Prison Litigation Reform Act regarding offenders' access to remedy, OOA will provide training and oversight in institutional screening and is working on a Screener's Handbook for distribution statewide. In addition, the OOA is in the process of ensuring that copies of the new regulations and forms are readily available to the offender population. Lastly, OOA agrees with OIG's recommendation that appeals coordinators meet at least quarterly with the Men's Advisory Council.

# California Department of Corrections and
# Rehabilitation's response to the special report (page 2 of 2)

Robert A. Barton, Inspector General
Page 2

We would like to thank the OIG for allowing us the opportunity to comment on the special report
and value your continued professionalism and guidance in our efforts to improve our operations.
The CDCR's Office of Audits and Court Compliance will monitor and document the OOA's
progress in addressing the report's recommendations.   If you should have any questions or
concerns, please call my office at (916) 323-6001.

Sincerely,

TERRI MCDONALD
Director (A)
Division of Adult Institutions

cc:     George Giurbino, Deputy Director (A), Division of Adult Institutions
        Dean Foston, Chief, Office of Appeals



## SPECIAL REPORT

CDCR'S REVISED INMATE APPEAL PROCESS LEAVES
KEY PROBLEMS UNADDRESSED

**OFFICE OF THE INSPECTOR GENERAL**

**STATE OF CALIFORNIA**
SEPTEMBER 2011

WWW.OIG.CA.GOV

EXHIBIT II

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

2nd DEPARTMENT OF CORRECTIONS

*Level Review*
*#1 DIVD*

Location:  Institution/Parole Region    Log No.

1.

2.  LAC - A - 10 - 1651

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| LAFONZO R. TURNER | G-05799 | // | A4-148 |

A. Describe Problem: ME I WAS BEING PLACED ON CELL MANAGEMENT STATUS & TO CUFF UP - AT WHICH TIME
ON FRI. JUN 25, 2010 AT 10:00 AM C/O SPRY & C/O DEAZ CAME TO MY CELL TELLING
I SAID FOR WHAT. & I WAS TOLD AGAIN I WAS GONNA HAVE ALL MY PROPERTY & CLOTHING TAKEN
& I EXPLAINED TO SGT. R. FRANKLIN I HAD A RIGHT TO ACCESS TO THE COURTS & DUE PROCESS
FOR THE TAKENG OF MY PROPELY, CLOTHING FISODING & THAT THIS WAS CORPERAL PUNISHMENT
AND I WANTED TO SPEAK WITH A CAOTIN & LT. CAIN, LT. CROMWELL & LT. GALPON SPOKE TO
ME & NONE AFFORDED ME MY DUE PROCESS I WISHING TO BE FREE FROM TORTURE SO I YELLED
BOARDED UP MY CELL DOOR BECAUSE I WAS FEELING SUICIDAL & I STAYED BOTHER
ED UP & ON 1ST WATCH C/O CULVOST HAD TO CALL A SGT. TO MAKE SURE I WAS ALIVE
THIS OVER & OVER & FROM 2Nd WATCH TO 3rd WATCH ON THE 25 OF JUNE I STAYED BOTHER
BECAUSE I WAS BOARDED UP. ON JUNE 26, 2010 SGT. K. THOMAS & LT. CAIN TALKED
TO ME & IN R.V.R IT STATE SUCH AT 0750 AND LT. CAIN WAS INFORMED AT THIS
POINT THAT I WAS BEING TORTURIN WITH TORTURE & DENIAL OF ACCESS TO THE COURT
WITHOUT DUE PROCESS AND/OR NO REASON AT ALL TO WHICH HE HIM SELF ALSO
COMPORTED TO & TOLD ME TO CUFF UP & INTURN WROTE THIS FABRICATED
R.V.R. TO COVER TO FACT THAT LAC IS SUBJECTING PRISONERS TO

( SEE ATTACHED )

If you need more space, attach one additional sheet.

B. Action Requested: 1. FOR THIS R.V.R. TO BE FULLY DISMISSED. 2nd I WOULD LIKE
TO BE COMPENSATED FOR MY INJURIES & TO BE IMMEDIATELY TRANSFER
ED BECAUSE OFFICERS IN A4 KEEP RETALIATING ON ME FOR THIS
INCIDENT &

Inmate/Parolee Signature: *M/ Lafonzo R. Turn*    Date Submitted: 10-1-10

C. INFORMAL LEVEL (Date Received: )

Staff Response:

**BYPASS**

Staff Signature:                              Date Returned to Inmate:

NOV 2 4 2010

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature:                              Date Submitted:
CDC Appeal Number:

DEF00015

First Level □ Granted □ P. Granted □ Denied □ Other Date assigned: _____ Due Date: _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

BYPASS

Staff Signature: _____ Title: _____ Date Completed Returned
Division Head Approved: _____
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response: _____

BYPASS

Signature: _____ Date Submitted _____

Second Level □ Granted □ P. Granted ☒ Denied ☒ Other _Cancelled_ Due Date: **1/7/11**

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **11/29/10**

□ See Attached Letter

Signature: _____ Date Completed _____
Warden/Superintendent Signature: _____ Date Returned to Inmate: JAN 18 2011

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response: _____

Signature: _____ Date Submitted _____

For the Director's Review, submit all documents to: Director of Corrections
P. O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: □ Granted □ P. Granted □ Denied □ Other
□ See Attached Letter
Date: _____
CDC 602 (12/87)

DEF30046

EXHIBIT III

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*Tuesday, April 18, 2017*

*TURNER, G05794*
*D  002 1144001L*

PROPERTY, Transfers, 03/29/2017
Log Number: LAC-D-17-01692
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is
subject to cancellation for failure to correct noted deficiencies.</u>)**

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15,
Section (CCR) 3084.6(b)(6).  Your appeal makes a general allegation, but fails to state facts or
specify an act or decision consistent with the allegation.*

*Your appeal does not meet the criteria for processing as an emergency appeal. This appeal was
forwarded to the Hiring Authority and it was determined that this appeal does not meet the
requirements for assignment as a staff complaint. It will be processed as a routine appeal
pursuant to CCR 3084.5(b)(4)(A). No evidence provided demonstrates staff actions were
intended to be punitive in nature to you or done to harass you.   If you are requesting to
continue this appeal as a property issue, then state so on the bottom of the CDC 695 Form.*

☐  K. Estrada, AGPA
☐  G. Stratman, Office Tech
☐  M. Fordham, CCII AC                                          APR 2 8 2017
☐  J. Curiel, CCII AC
Appeals Coordinator
LAC

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

YES PROCESS AS PROPERTY AS THERE WAS ANOTHER
BOX OF PROPERTY FOUND & ISSUED OUT, BUT I'M STILL
MISSING PROPERTY

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and
resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to
CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a
separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if
the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

> Pelican Bay

RE: Screening at the FIRST Level

*Monday, May 8, 2017*

*TURNER, G05794*
*D  002 1144001L*

PROPERTY, Transfers, 04/28/2017
Log Number: LAC-D-17-01692
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies.</u>)**

The enclosed documents are being returned to you for the following reasons:

*Be advised that your appeal has been forwarded to another CDCR unit for processing.*

*Your property Appeal issue pertains to  Pelican Bay. As such your property appeal issue will be forwarded to Pelican Bay for processing.*

☐  K. Estrada, AGPA
☐  G. Stratman, Office Tech
☐  M. Fordham, CCII AC
☐  J. Curiel, CCII AC
Appeals Coordinator
LAC

Pelican Bay State Prison

**JUN 0 6 2017**

Appeals Office

**NOTE:**  If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

_____

_____

_____

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*Tuesday, June 6, 2017*

*TURNER, G05794*
*D  002 1144001L*

PROPERTY, Transfers, 06/06/2017
Log Number: PBSP-O-17-01162
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes.</u>)**

The enclosed documents are being returned to you for the following reasons:

***Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(2).  The appeal duplicates a previous appeal upon which a decision has been rendered or is pending.***

***Missing property is a duplicate issue already addressed on appeal log #PBSP-O-17-00632.***

◻ A. Sheldon, Appeals Coordinator
◻ K. Royal, Appeals Coordinator
◻ N. Bramucci, AGPA
PBSP Appeals Office

*AND LAC sent it TO PBSP*

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

*THIS APPEAL IS ON (LAC) C/o PRATT OF
(LAC) R&R & Should HAVE NEVER BEEN
SENT TO (PBSP) AS THE ACTION IN DIS 602 R C/o PRATTS*

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*Thursday, June 22, 2017*

*TURNER, G05794*
*C  006 1122001LP*

PROPERTY, Transfers, 06/22/2017
Log Number: SVSP-L-17-03629
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies.</u>)**

The enclosed documents are being returned to you for the following reasons:

*Be advised that your appeal has been forwarded to another CDCR unit for processing.*

*Your appeal was forwarded to LAC*

- ☐  V. Lomeli, Appeals Coordinator
- ☐  J. Magdaleno
- ☐  E. Medina, Appeals Coordinator
- ☐  C. Martella, AGPA         *C Martella*
Appeals Coordinator
SVSP

**NOTE:**  If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

_____

_____

_____

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | PBSP 0-17-01162 | | 5/9 |
| | 4AC-0-19-0692 | | |
| | *FOR STAFF USE ONLY* | | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.        **WRITE, PRINT, or TYPE CLEARLY** in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell #: | Assignment: |
|---|---|---|---|
| TURNER, LAFONZO | G05794 | D2-144 | E.O.P |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): STAFF MISCONDUCT

**A. Explain your issue** (If you need more space, use Section A of the CDCR 602-A): PER 3391 CCR
ON 3-7-17 C/O PRATT WORKED IN CONCERT TO DEPRIVE ME OF MY LEGAL & PERSONAL PROPERTY BY THE ASSERTION OF UNPROFESSIONAL CONDUCT OF ORDERING APPELANT TO -

**B. Action requested** (If you need more space, use Section B of the CDCR 602-A): TO HAVE AN INVESTIGATION DONE INTO HOW/WHY MY PROPERTY WAS NOT PROPERLY TRANSPACKED/INVENTORIED AND DISCIPLAIN OF C/O PRATT FOR SAID MISCONDUCT.

Supporting Documents: Refer to CCR 3084.3.          JUN 0 6 2017
☒ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
(5) FORM 22'S                           (1) FORM 22 (FOR 3-22-17 CELL SEARCH)
(2) 1083's ORIGN/ALTERED  (2) FORMS INVENTORY & BOOK LIST LEGAL

☐ No, I have not attached any supporting documents. Reason : _____

Inmate/Parolee Signature: _X. Turner_          Date Submitted: 3/26/17

[ ] **By placing my initials in this box, I waive my right to receive an interview.**

MAR 29 2017
APR 28 2017
Pelican Bay State Prison
JUN 0 6 2017
Appeals Office

S T A F F   U S E

---

**C. First Level - Staff Use Only**          Staff - Check One: Is CDCR 602-A Attached? ☒ Yes   ☐ No
This appeal has been:                                    MAY 0 8 2017
☐ Bypassed at the First Level of Review. Go to Section   APR 1 8 2017
☐ Rejected (See attached letter for instruction) Date: ___ Date: ___ Date: ___ Date: ___
☒ Cancelled (See attached letter) Date: JUN 0 6 2017 C2
☐ Accepted at the First Level of Review.
    Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
          Date of Interview: _____ Interview Location: _____

Your appeal issue is: ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____
          See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: _____ Title: _____ Signature: _____ Date completed: _____
          (Print Name)

Reviewer: _____ Title: _____ Signature: _____
          (Print Name)

Date received by AC: _____

| AC Use Only |
|---|
| Date mailed/delivered to appellant ___ / ___ / ___ |

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**Side 1**

| IAB USE ONLY | PBSP Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | O-17-01162 | | 5 |
| | LAC-0-17-01692 | | |

*FOR STAFF USE ONLY*

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| L. Turner | G05794 | D2-144 | E.O.P. |

**A.** Continuation of CDCR 602, Section A only (Explain your issue): SIGN A 1083 BEFORE HE WOULD ISSUE MY PROPERTY STATING ("LOOK IT'S ALL THERE 4 OF 4 BOXES") 2nd. SAID FORM WAS NOT THE ORIGINAL 1083 IT WAS ALTERED, BY THE WORDS 4 OF 4. 3rd THE ORIG. 1083 WAS NEVER SIGNED BY THE INVENTORING OFFICER, HOW MANY BOXES AND/OR WHERE IT WAS BEING SENT, THIS WAS DONE IN A CONCERTED RETALIATION THAT WAS STARTED BY (P.B.S.P.) THAN (SAC) AND ENDING WITH THE FINAL ACT OF (LAC) C/O PRATT FORCING ME TO SIGN ALTERED 1083 WHEN ALL APPEALANTS PROPERTY WAS NOT ISSUED/RECEIVED, OR TRANSPACKED. 4th C/O PRATT FURTHER MISCONDUCT OF UN-PROFESSIONALIZUM IS SHOWN BY HIS DELIBERATE IN-DEFFERANCE TO ACKNOWLEDGE WHEN (I) TOLD C/O PRATT MY LEGAL BOOK, MAIL, PICTURE & LEGAL DOC'S ETC. WHERE MISSING, AS WELL C/O PRATT THEREAFTER REFUSED TO RE-SPOND TO ALL FORM 22'S, PHONE CALL'S, ETC. TO MAKE ANY EFFORT TO FIND SAID PROPERTY, OR EVEN SIGN 1083 SHOWING HE ISSUED ME MY PROPERTY, BECAUSE BASED ON INFORMATION & BELIEF HE IS WORKING WITH (P.B.S.P.) (SAC)

Inmate/Parolee Signature: Mr. L. Gonzo R. Turner    Date Submitted: 3/26/17

JUN 06 2017

MAR 29 2017

MAR 29 2017
Pelican Bay State Prison

JUN 06 2017
Appeals Office

**B.** Continuation of CDCR 602, Section B only (Action requested): I WANT MONETARY COMPENSATION, I WANT THIS APPEAL PROCESS UNDER 3391 STAFF MIS-CONDUCT, I WANT INVESTEGATION INTO WHERE MY PROPERTY IS. I WANT MY PROPERTY. I WANT CDCR TO AMEND THEIR TRANSFER INVENTORY POLICY IN REGARDS TO CUSTODY HAVING TO TRANSPACK ALL PROPERTY IN THE PRESENCES OF THE INMATE. ALLOW INMATE'S IN ALL OF CDCR TO OBTAIN TABLETS W/INTER NET ACCESS WHEREIN INMATES DOCUMENTS/LEGAL BOOKS ETC. ARE DEGITAL FILES & CUSTODY CAN NOT RETALIATE BY PORPOSELY LOSING INMATES PROPERTY ESPECIALLY LEGAL & PIC TURES. AND I WOULD LIKE (NO) REPRISAL FOR FILING THIS APPEAL. JUN 06 2017

Inmate/Parolee Signature: R. Gonzo R. Turner    Date Submitted: 3/26/17