UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAFONZO R. TURNER,<br><br>    Plaintiff,<br><br>    v.<br><br>B.M. CASH, et al.,<br><br>    Defendants. | NO. CV 14-4758-JVS (AGR)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

    The court submits this Report and Recommendation to the Honorable James V. Selna, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.  For the reasons set forth below, the magistrate judge recommends that Defendants' motion for summary judgment based on failure to exhaust administrative remedies be denied.

# I.

# **PROCEDURAL BACKGROUND**

On December 5, 2016, Plaintiff filed the operative Second Amended Complaint, which brings claims under the Eighth and Fourteenth Amendments against 14 correctional officers and two mental health professionals at California State Prison-Los Angeles County ("CSP-LAC") in their individual capacity.[1] (Dkt. No. 94.)

On July 7, 2017, Defendants moved for summary judgment based on failure to exhaust administrative remedies. (Dkt. No. 115.) On July 11, 2017, the court notified Plaintiff of the requirements for opposing a summary judgment motion, in compliance with *Rand v. Rowland*, 154 F.3d 952, 959-62 (9th Cir. 1998) (en banc). (Dkt. No. 119.) On August 17, 2017, Plaintiff filed an opposition contending that his ability to respond to the summary judgment motion was impinged after he was transferred to a different facility. (Dkt. No. 123.) Following extensions of time and a transfer back to CSP-LAC, Plaintiff filed a "Statement of Genuine Issues in Opposition to Motion for Summary Judgment." (Dkt. No. 136.) Defendants did not file a reply.

On December 6, 2017, the undersigned magistrate judge issued a report and recommendation recommending that Defendants' motion be denied. (Dkt. No. 138.) Defendants objected that they wanted to file a reply, and on March 7, 2018, the district court vacated the report and recommendation to enable them to do so. (Dkt. Nos. 146, 147.) The magistrate judge set a briefing schedule for Defendants' reply and Plaintiff's surreply. (Dkt. No. 148.) On September 13, 2018, after receiving extensions of time, Defendants filed a reply. (Dkt. No. 165.)

---

[1] The Court previously granted Defendants' motion to dismiss all official capacity and due process claims in the SAC without leave to amend on December 5, 2016. (Order, Dkt. No. 93.)

Plaintiff did not file a surreply.[2]

## II.

## ALLEGATIONS OF SECOND AMENDED COMPLAINT

Plaintiff's claims arose at CSP-LAC. (SAC, Dkt. No. 94 at 4.)[3] Defendants Lett and Crawford were mental health practitioners and the remaining defendants were correctional officers. (*Id.* at 3-5.) Plaintiff was a participant in the mental health delivery system at the CCCMS level of care. (*Id.* at 6.)

On the morning of June 26, 2010, Defendant Thomas asked Plaintiff to uncover his cell door and "cuff up." (*Id.* at 7.) Plaintiff had been put on a 10-day cell management status after he was issued three Rules Violation Reports ("RVR"). (*Id.* at 14.) Plaintiff refused to uncover his cell door and cuff up, using the covering as a "peaceful protest" to his cell management status. (*Id.* at 6-7.)

Defendant Thomas left and returned with Defendant Cain. The two again asked Plaintiff to uncover his cell door and Plaintiff refused. (*Id.* at 7.) Cain and Thomas assembled a cell extraction team. (*Id.* at 8.) Defendants Lett, Crawford, Cromwell, Fernandez and Fortson arrived, and repeated the request to uncover the door and cuff up. (*Id.* at 8-9.) Plaintiff refused and Fortson approved a cell extraction. (*Id.* at 9.) The cell extraction team consisted of Defendants Thomas, Romero, Spencer, Pollard, Fears, Puckett, Mendoza and Godina. (*Id.*) Defendants Thomas and Fears sprayed toxic substances under Plaintiff's cell door several times in succession. (*Id.* at 9-11.) Defendant Thomas deployed grenades into Plaintiff's cell and Defendant Fears used an "X-10 Barracade Device" to assist in the cell extraction. (*Id.* at 11.)

The cell extraction team entered Plaintiff's cell at 1:48 p.m. (*Id.*) Defendants Romero and Pollard struck Plaintiff with their batons while Defendant

---

[2] On July 12, 2018, Plaintiff suffered a brain injury. (Dkt. No. 164.)

[3] Page citations are to the page numbers assigned by CM/ECF in the header.

3

Spencer held him down with his shield. (*Id.* at 11-12.) Defendants Fears, Godina and Puckett entered Plaintiff's cell and joined in the attack. The cell extraction team continued to attack Plaintiff even after he had been placed in leg restraints. (*Id.* at 12.) Plaintiff suffered a back injury, cuts, bruises, and lacerations to his face, chest, back, arms, and legs as a result of the attack, and damage to his lungs from the chemicals. (*Id.* at 18.) Defendants confiscated Plaintiff's personal property, including medical appliances and legal materials. (*Id.* at 13.) Defendants Cain, Fortson, Fernandez,[4] Cromwell, Lett and Crawford failed to intervene in the extraction team's use of excessive force. (*Id.* at 9, 15.) Defendant Mendoza videotaped the incident and failed to intervene in the use of excessive force. (*Id.* at 13.) Defendants Cash and Buechter "ratified, maintain[ed] and asserted" the unlawful "practice, custom, policy, and usage" that led to the incident. (*Id.* at 13, 15.) Defendants Lett and Crawford knew of the risks to mentally ill inmates posed by the prison's cell-extraction procedures and failed to act. (*Id.* at 17.)

## III.
## DISCUSSION

### A. Legal Standards on Summary Judgment

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute requires dismissal of a Section 1983 action without prejudice when the prisoner does not exhaust his claim before filing suit. *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam).

The statutory text is mandatory and "a court may not excuse a failure to

---

[4] Defendant is also referred to as "J. Fernandez (Galpon)." (SAC at 5.)

4

exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (rejecting "special circumstances" exception).  On the other hand, the PLRA "contains its own, textual exception to mandatory exhaustion.  Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies:  An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 1858.  "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* at 1858-59 (citation omitted).  This standard must be applied to "the real-world workings of prison grievance systems." *Id.* at 1859.  The Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.*  First, an exhaustion procedure is unavailable – "(despite what regulations or guidance materials may promise)" –- if it operates as a "dead end" because, for example, the office disclaims the capacity to consider the grievance or officials "have apparent authority, but decline ever to exercise it." *Id.*  Second, exhaustion procedures may be so confusing that no reasonable prisoner "can make sense of what it demands." *Id.*  Third, exhaustion procedures are unavailable when prison officials thwart their use by machination, misrepresentation or intimidation. *Id.* at 1860.

"[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  A defendant may raise the defense in a motion for summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc).  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In the context of exhaustion, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172.  The moving party has the

initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023-24 (9th Cir. 2004). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

Once the defendant has satisfied this burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. "[T]he non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). When, as here, the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing *pro se*] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

In reviewing the record, "a district court cannot resolve disputed questions of material fact; rather, that court must view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts." *Albino*, 747 F.3d at 1173. The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is

6

not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). A court construes a *pro se* plaintiff's pleadings liberally. *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

Nevertheless, not every factual dispute will defeat summary judgment. "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphases in original; citation omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (citation omitted).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Albino*, 747 F.3d at 1166; *see also id.* at 1170-71 ("If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue.")

**B. Exhaustion Procedures**

At times pertinent to the SAC, a California prisoner satisfied the exhaustion requirement by proceeding through the following levels of review:[5]

(1) Appeal (informal level). Using CDCR Form 602, the inmate would submit an appeal directly to the staff member(s) involved within 15 days of the

---

[5] Changes to state regulations governing inmate appeals went into effect on January 28, 2011. (Voong Decl. ¶ 4; Opp. at 107-110, Dkt. No. 136.)

incident. The appeal was required to describe the problem and the action requested. The informal level was waived for certain complaints of staff misconduct. 15 Cal. Code Regs. §§ 3084.2(b), 3084.5(a); (Voong Decl. ¶¶ 6-7; Opp. at 5 ¶ 19, Dkt. No. 136-1.)

(2) First Formal Level. If dissatisfied with the decision at the informal appeal level, or if that level was bypassed, the inmate could request formal level review by submitting it to the institution's appeals coordinator within 15 days. If the coordinator did not screen it out for failure to meet regulatory criteria or order first-level review bypassed, it would be assigned a log number and the prisoner would be provided with a written disposition. 15 Cal. Code Regs. §§ 3084.2(a), 3084.2(c), 3084.3(a); 3084.3(c)(1)-(8), 3084.5(b), 3084.5(g); (Voong Decl. ¶ 8; Opp. at 5 ¶ 20, Dkt. No. 136-1.)

(3) Second Formal Level. If the inmate was not satisfied with the disposition at the first level, he or she could submit the appeal for second-level review. Second-level review was conducted by the institution head or designee, and a written response would be returned to the inmate. 15 Cal. Code Regs. §§ 3084.5(e)(1), 3084.5(g); (Voong Decl. ¶ 9; Opp. at 5 ¶ 20, Dkt. No. 136-1.)

(4) Third Formal Level. If the inmate was dissatisfied with the disposition at the second level, he or she could submit the appeal by mail to the Appeals Chief in Sacramento for third-level review. 15 Cal. Code Regs. § 3084.5(d); (Voong Decl. ¶ 10; Opp. at 5 ¶ 20, Dkt. No. 136-1.) With limited exceptions not applicable here, an appeal exhausted administrative remedies only after being accepted at the third level of review and provided with a decision. (Voong Decl. ¶ 10; Opp. at 5-6 ¶ 20, Dkt. No. 136-1.)

C. **Analysis**

Plaintiff's claims arise from the cell extraction on June 26, 2010. Under the PLRA, Plaintiff was required to exhaust available administrative remedies with respect to those claims before June 19, 2014, the date he commenced this

action. *See Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006).

Plaintiff is an experienced user of the CDCR's administrative grievance system. (Voong Decl., Exh. A (CDCR Office of Appeals log showing 34 appeals submitted for third-level review by Plaintiff between 2010 and 2017.) Between June 26, 2010 and November 20, 2015, Plaintiff had no appeal accepted for third level review that would exhaust the claims in the SAC. (Voong Decl. ¶ 14 & Exh. A.)

Plaintiff states that he requested a 602 appeals form from prison staff beginning the day after the cell extraction and was denied because he was on cell management status. Staff responded with threats "such as that's what got you into this situation (complaining)." (Opp., Dkt. No. 136-1 at 8 ¶ 28.) Plaintiff "made a fishing line out of his boxers and got 2 pen-fillers and 602 appeals from my neighbor." (*Id.*) He filed an appeal regarding the cell extraction on June 29, 2010, by placing it in a "U-Save-Em envelope addressed to the appeals coordinator." (*Id.* ¶¶ 28, 30.) Plaintiff was transferred to a crisis bed on July 2 and returned to CSP-LAC on July 8, 2010. (*Id.* ¶ 29; *see* Dkt. No. 136 at 18.)

On July 13, 2010, Plaintiff's appeal was returned to him in the same envelope "as if it never went out." (Dkt. No. 136-1 at 8 ¶ 30.) Plaintiff was concerned because the 15-day time limit for submitting an appeal had expired on July 11. Plaintiff added a note of explanation in the appeal envelope and handed it back to custody for mailing to the appeals coordinator. (*Id.*) On July 15, 2010, Plaintiff filed a GA-22 "Request for Interview" form to the Warden stating that he "had excessive force used against me on June 26, 2010 and I filed an[] appeal 602 on 6/29/10" and "it was returned without any response, 7/13/10." (Opp., Dkt. No. 136 at 54.) On July 29, Plaintiff received a "695 screenout" stating that he failed to meet time constraints and if he "filed said appeal again it would not be returned." (Opp., Dkt. No. 136-1 at 8 ¶ 30.) Plaintiff wrote a note on the 695 form explaining he had met the time constraints under the mailbox rule and sent the

9

appeal back to the appeals coordinator on July 29.  He never received a response.  (*Id.* ¶ 31.)  On September 12, 2010, Plaintiff filed a GA-22 form to the Warden complaining that his appeal was "circumvented" and screened out on July 29 for not meeting time constraints, and he had sent it back with an explanation but never received a response.  (Opp., Dkt. No. 136 at 54.)  He again did not receive a response.[6]  (Opp., Dkt. No. 136 at 8 ¶ 31.)

On October 1, 2010, Plaintiff submitted an appeal concerning an RVR based on the June 26, 2010 cell extraction.  (*Id.* at 130 (Log No. LAC-A-10-1651).)  The appeal contained a description of the June 26, 2010 incident, named at least some of the officers involved and sought compensation for his injuries.  (*Id.*)  On January 6, 2011, the appeal was cancelled at the second level of review with no reason listed on the form and the "see attached letter" box not checked.  (*Id.* at 131.)  The form states that it was "returned to inmate" on January 18, 2010.  (*Id.*)

In their reply, Defendants have produced evidence that appeal Log No. LAC-A-10-1651 was cancelled at the second level because Plaintiff elected not to participate in the interview process and his refusal was considered an "appeal system abuse."  (Reply at 6-7; Curiel Decl. ¶ 9, Exh. A (Dkt. No. 165-1 at 4-5, 8).)  In addition, the appeal was denied on the ground that Plaintiff presented no evidence or information that would warrant vacating the findings of the

---

[6] The CSP-LAC appeals log submitted by Plaintiff shows the following appeals were received and provided with a log number between June 26 and September 12, 2010:
    (1) Log No. LAC-A-10-1002, concerning a "legal issue," was accepted on the first level on June 30, 2010, granted in part at the first level on August 18 and granted in part at the second level on September 20;
    (2) Log No. LAC-A-10-01057, concerning "living conditions" was received on July 14, 2010 and granted at the first level on August 2;
    (3) Log No. LAC-A-10-01114, concerning a "disciplinary" issue, was received on July 27 and denied at the second level on September 8, and;
    (4) Log No. LAC-A-10-01201, also "disciplinary," was received on August 11 and denied at the second level on September 15.
(Dkt. No. 136 at 78-79).

disciplinary officer. (Dkt. No. 165-1 at 9-10.) In his opposition Plaintiff asserts, under penalty of perjury, that he subsequently mailed the appeal form to the third level but never heard back. (Dkt. No. 136 at 98 ("But it is Plaintiff['s] contention once he did receive his appeal back which (I) bleive [*sic*] was later than Jan 18, 2010 Plaintiff did mail this appeal to the third level of appeal, but never heard or received his appeal back.") Defendants have submitted evidence that no such appeal was received at the third level (Voong Decl. ¶¶ 11-14), and point out that the appeal form Plaintiff submitted to the court is blank where his reasons for dissatisfaction with the second level decision would be if he had appealed to the third level (Reply at 8; Dkt. No. 136 at 131). They also argue that Plaintiff should have followed up on the status of the third level appeal when he did not hear back. (Reply at 8-9.)

Plaintiff's appeal Log No. LAC-A-10-1651 concerned his disciplinary proceedings arising out of the cell extraction. (Dkt. No. 136 at 130; Dkt. No. 165-1 at 21.). Plaintiff requested "for this R.V.R. to be fully dismissed." (Dkt. No. 165-1 at 13.) He also claimed that staff used excessive force during the cell extraction and requested compensation for his injuries (*id.*; Dkt. Np. 165-1 at 11). But Plaintiff's contentions about excessive force in appeal Log No. LAC-A-10-1651 were made in the context of attacking his disciplinary proceedings, which are not the subject of any claim remaining in this action.[7] Indeed, by the time Plaintiff submitted his appeal regarding his RVR, the time limits for submitting an appeal challenging the force used during the incident had long passed. *See Soto v. Warden of Salinas Valley State Prison*, 2016 WL 3661384, *4-5 (N.D. Cal. July 1, 2016) (plaintiff's grievance regarding excessive force was untimely because he was not required to wait for conclusion of disciplinary process to challenge use of excessive force during underlying incident); 15 Cal. Code Regs. § 3084.6(c)

---

[7] Plaintiff's due process claim challenging his disciplinary hearing was dismissed without leave to amend. (Dkt. No. 89 at 10-12; Dkt. No. 93 at 1-2.)

11

(2010) (time limit for bringing grievance is 15 days after complained-of act).[8] Defendants' reply does not include any new evidence relevant to Plaintiff's attempts to file and pursue a timely grievance regarding the use of force on June 26, 2010, which is the basis for his excessive force claims against them.

An administrative remedy is effectively "unavailable" when prison officials screen out an appeal for improper reasons, *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), or fail to respond to it within a reasonable time, *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017), or otherwise thwart an inmate from filing administrative remedies "through machination, misrepresentation, or intimidation," *Ross,* 136 S. Ct. at 1860.

Construing the evidence in the light most favorable to Plaintiff, he has submitted evidence that prison staff refused to give him a 602 Form after the cell extraction. After he obtained a 602 form from a neighboring inmate through a fishing line and submitted it on June 29, three days after the incident, Plaintiff states that he did not receive a response. He tried to follow up with two GA-22 forms to the Warden but received no response. "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres,* 867 F.3d at 1079 (reversing district court's grant of summary judgment for failure to exhaust; collecting cases); *Williams v. Paramo*, 775 F.3d 1182, 1191-92 (2015) (reversing grant of summary judgment; defendants do not meet burden on exhaustion when they fail to rebut evidence that administrative remedies are not available because grievances are rejected for filing); *Lopez v. Cate*, 2016 WL 6608921, at *7-*8 (E.D. Cal. Nov. 8, 2016) (finding prison's lack of response rendered appeals process thereafter unavailable to him); *Bush v. Baca*, 2010 WL 4718512, at *3 n.7 (C.D. Cal. Sept. 3,

---

[8] Defendants concede that the regulations prior to the January 28, 2011 amendments apply to this case. (Motion at 4.)

12

2010) (finding plaintiff's claim to have filed inmate grievance not found in prison records raised factual issue to be resolved by jury). An inmate need not provide the court with a copy of an administrative appeal he claims was lost or ignored by prison staff to survive a motion for summary judgment. *Williams v. Gore*, 2017 WL 1354695, at *5, *7 (S.D. Cal. Mar. 24, 2017) (denying summary judgment); *Lopez*, 2016 WL 6608921, at *4-5.

Defendants argue that Plaintiff did not reach a "dead end" within the meaning of *Ross* because he received a cancellation/denial decision at the second level on his appeal Log No. LAC-A-10-1651 and should have appealed to the third level. (Reply at 11.) But Plaintiff asserts under penalty of perjury that he appealed to the third level and did not receive a response. (Dkt. No. 136 at 98.) More importantly, as explained above, appeal Log No. LAC-A-10-1651 concerned Plaintiff's disciplinary process arising from the June 26, 2010 incident whereas Plaintiff's remaining claims challenge the force used against him during the incident. Plaintiff's due process claim challenging his disciplinary proceedings is no longer in the action.

Defendants also argue that the administrative remedy process was not unavailable to Plaintiff because he was able to file and exhaust other administrative appeals during the pertinent period. (Reply at 4-5.) The fact that Plaintiff successfully filed other grievances shows his familiarity with the grievance process, but does not show that prison officials did not thwart his efforts to file a grievance regarding the June 26, 2010 incident. *See Williams,* 775 F.3d at 1192 (rejecting argument that inmate's ability to file unrelated grievances showed that administrative remedies were available to her with respect to grievance at issue); *Meredith v. Ada County Sheriff's Dept.*, 2014 WL 4793931, at 7 (D. Idaho Sept. 25, 2014) (fact that inmate filed other grievances was not dispositive of whether he was prevented from filing grievance regarding incident at issue).

Defendants request an evidentiary hearing under *Albino*. (Reply at 1.)

Defendants' new evidence, however, pertains to the exhaustion of a claim that has been dismissed. Plaintiff's evidence regarding the frustration of his earlier attempts to file a timely grievance regarding his excessive force claims remains uncontroverted. Accordingly, an evidentiary hearing to decide disputed factual questions is unnecessary. *See Albino*, 747 F.3d at 1166 ("If material facts [regarding exhaustion] are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."); *Hammler v. Davis*, 2017 WL 735737, at *10 (E.D. Cal. Feb. 23, 2017) (*Albino* hearing not warranted when "summary judgment for defendant is precluded not because the evidence is conflicting, but because defendant failed to present evidence that conflicts with plaintiff's evidence of a thwarted attempt to submit and exhaust . . . appeal"), *accepted by*, 2017 WL 1093968 (E.D. Cal. Mar. 23, 2017).

It is therefore recommended that Defendants' motion for summary judgment be denied.

### IV.
### RECOMMENDATION

For the reasons discussed above, it is recommended that the district court issue an order (1) accepting this Report's findings and recommendation; and (2) denying Defendants' motion for summary judgment based on exhaustion.

DATED: January 14, 2019

ALICIA G. ROSENBERG
United States Magistrate Judge