Nicolette Glazer Esq. (CSB209713)
nicolette@glazerandglazer.com
LAW OFFICES OF LARRY R GLAZER
1999 Avenue of the Stars #1100
Century City, CA 90067
T: 310-407-5353
F: 310-407-5354

PRO BONO ATTORNEY FOR
PLAINTIFF TURNER

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **LAFONZO R. TURNER,**<br><br>                                    Plaintiff,<br><br>         v.<br><br>**B. M. CASH, et al.,**<br><br>                                    Defendants. | 2:14-cv-04758<br><br>**PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION FOR AN EVIDENTIARY *ALBINO* HEARING**<br><br>FPC Date:      November 5, 2021<br>Time:              11:00 a.m.<br>Courtroom:   6C<br>Judge:            The Honorable Stanley Blumenfeld, Jr.<br>Trial Date:    November 15, 2021<br>Action Filed: 6/19/2014 |

This is a section 1983 civil rights case by a mentally ill prisoner. The operative complaint is the *pro se* Second Amended Complaint [hereinafter 'SAC'] in which Plaintiff, LaFonzo Turner, sued various prison officers for excessive force, failure to intervene, deliberate indifference, and retaliation arising from use of excessive force during his confinement at CDCR Lancaster State prison and specifically during a cell extraction on or about 26 June 2010. (ECF #81-1; & 94). It is undisputed that Mr. Turner was at all relevant times a "participant in the mental

1

health care delivery system at the CCCMS level of care." ((ECF #111 [Answer] ¶22). As such he is and was at the time of the cell extraction a *Coleman v Wilson* (aka *Coleman v Brown*) class member. *Coleman v. Wilson*, 912 F.Supp. 1282, 1320 (E.D. Cal. 1995). The facts of the case are largely undisputed. Since 2008 Plaintiff was diagnosed with asthma and uses an inhaler. In the span of 42 minutes Defendants deployed four (4) MK Cell Busters spay, five (5) Z-505 pepper spray canisters, and two (2) T-16 grenades in Plaintiff's single occupancy cell claiming that they had no proof of life and, at the same time, that Plaintiff was refusing to comply with a "lawful order". (ECF #111 ¶¶ 25, 44, 46-53, 55-56; ECF #240 (sec. 5)) There is no dispute that Plaintiff was neither aggressive, suicidal, in possession of a weapon, or that he was posing danger to self or another or to the security of the institution.

On 7 July 2017 Defendants moved for summary judgment on their affirmative defense of failure to exhaust administrative remedies. (Dkt. No. 115.) On 17 August 2017 Plaintiff filed an opposition contending that his ability to respond to the summary judgment motion was impinged after he was transferred to a different facility. (Dkt. No. 123.) Following extensions of time and a transfer back to CSP-LAC, Plaintiff filed a *pro se* "Statement of Genuine Issues in Opposition to Motion for Summary Judgment." (Dkt. No. 136.) Defendants did not file a reply.

On 6 December 2017 Honorable Magistrate Judge Rosenberg issued a Report and Recommendation (R&R) recommending that Defendants' motion be denied. (Dkt. No. 138.) Defendants objected claiming that they desired to file a reply, and on 7 March 2018 the district court vacated the R&R to enable them to do so. (Dkt. Nos. 146, 147.) After extension of time of close to six months, on 13 September 2018 Defendants filed a reply. (Dkt. No. 165.)

On 14 January 2019 Hon. Magistrate Judge Rosenberg issued a Report and Recommendation again recommending that Defendants' motion be denied. (Dkt. No. 166). Specifically, the Magistrate Judge found that as follows:

> Construing the evidence in the light most favorable to Plaintiff, he has submitted evidence that prison staff refused to give him a 602 Form after the cell extraction. After he obtained a 602 form from a neighboring inmate through a fishing line and submitted it on June 29, three days after the incident, Plaintiff states that he did not receive a response. He tried to follow up with two GA-22 forms to the Warden but received no response. 'When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies.'

(*Id*. (quoting *Andres,* 867 F.3d at 1079 and collecting cases)). Of note, the Magistrate Judge rejected Defendants' arguments that (1) Plaintiff did not reach a "dead end" within the meaning of *Ross* because he received a cancellation/denial decision at the second level on his appeal Log No. LAC-A-10-1651 and should have appealed to the third level and (2) that the administrative remedy process was not unavailable to Plaintiff because he was able to file and exhaust other administrative appeals during the pertinent period. (*Id*. At 12-13)

Of relevance to this ex parte application, Magistrate Rosenberg explicitly denied Defendants' request for an *Albino* evidentiary hearing:

> Defendants' new evidence, however, pertains to the exhaustion of a claim that has been dismissed. **Plaintiff's evidence regarding the frustration of his earlier attempts to file a timely grievance regarding his excessive force claims remains uncontroverted. Accordingly, an evidentiary hearing to decide disputed factual questions is unnecessary**. (Dkt. No. 166 at 14) (emphasis added).

Defendants' filed objections and Hon. Judge Selna overruled the objections in full finding that "Defendants do not dispute Plaintiff's evidence as to his appeal submitted on June 29, 2010 based on excessive force during the cell extraction." (Dkt 177 at 2). The Court specifically addressed and overruled Defendants'

arguments regarding appeal no. Log No. LAC-A-10-1651 as constituting a separate and unrelated appeal not subject to this litigation. *Id*. at 3.

### A. The Court should deny Defendants' 11th-hour *Ex Parte* Application because they have not justified their request for relief on an emergency basis.

"An *ex parte* application is a means of obtaining extraordinary relief and is appropriate in only rare circumstances." *Santos v. TWC Admin. LLC*, 2014 WL 12703021, at *1 (C.D. Cal. Sept. 15, 2014). *Ex parte* relief is appropriate only if the moving party can show that its cause will be "irreparably prejudiced" if it does not obtain the requested relief and that it is "without fault in creating the crisis that requires *ex parte* relief." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). Satisfying the second element requires "more than a showing that the other party is the sole wrongdoer"—rather, the party seeking relief on an *ex parte* basis must explain "the creation of the crisis." *Id.* at 493; *ELT Sight, Inc. v. EyeLight, Inc.*, 2019 WL 7166063, at *3 (C.D. Cal. Oct. 29, 2019) (denying *ex parte* application when movants asserted in a conclusory manner that they "would be irreparably prejudiced due to their inability to analyze" certain evidence).

Here, Defendants have failed to establish either element necessary to justify *ex parte* relief. *First*, Defendants have not shown that they will be "irreparably prejudiced" if they do not receive the requested relief on an *ex parte* basis. Defendants, in fact, provide no justification at all for seeking in essence either a motion to reconsider the denial of their motion for summary judgment and/or a successive Rule 56 motion through an *ex parte* application. (Dkt 247, *Ex Parte* App. at 3-4). The deadline for a Rule 60(b) motion has long passed; the deadline established by this Court for dispositive motions has also lapsed. Defendants objected to the Magistrate's R&R and were overruled. If Defendants were unsatisfied with Judge Selna's decision Defendants should have filed a Rule 60(b)

4

motion or a motion for reconsideration. They did not. If they believe, in turn, that new evidence justifies a successive Rule 56 motion, they should have filed it in accordance with this Court's scheduling order for dispositive motions.

*Second*, the Ninth Circuit in *Albino* stressed that a motion for summary judgment on the affirmative defense of exhaustion must be filed as early as possible: "The Court recognized in *Jones* that the exhaustion question in PLRA cases should be decided as early as feasible." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc) The *Albino* court explained as follows:

> Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery directed to the merits of the suit. See Pavey, 544 F.3d at 742. A summary judgment motion made by either party may be, but need not be, directed solely to the issue of exhaustion. If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue. [] We reiterate that, if feasible, disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation.

*Id*. at 1170-71 (9th Cir. 2014) The Court here followed *Albino* and found that there are no disputed issues of fact. (Dkt No. 166 at 14 (finding that "Plaintiff's evidence regarding the frustration of his earlier attempts to file a timely grievance regarding his excessive force claims remains uncontroverted. Accordingly, an evidentiary hearing to decide disputed factual questions is unnecessary")). Thus, Defendants' supposed justification for seeking an *Albino* hearing on an *ex parte* basis is not only insufficient to excuse the strain the Defendants have put on the Court's resources by seeking emergency relief but borders of frivolous.

*Third*, Defendants fail to explain the need to request in essence a reconsideration of a clear prior order, after both discovery has closed and the time for dispositive motions has passed. Even if a time pressure justified seeking *ex parte* relief, the "crisis" is one of Defendants' own making. Defendants' prior motion for summary judgment took from July 2017 to March 2019 to be decided. Yet despite receiving the decision denying the affirmative defense dispositive motion in March 2019 Defendants waited until 25 October 2021—**31 full months**—to file this *ex parte* application. Thus, even if *ex parte* relief were required, the need for that relief was created by Defendants' own conduct.

The pernicious effects of *ex parte* applications are well known. As one court has recognized, *ex parte* applications require judges to "drop[] everything except other urgent matters to study the papers," which has the effect of relegating "[o]ther litigants . . . to a second priority." *Mission Power*, 883 F. Supp. at 491-92. Moreover, *ex parte* applications subvert the "[s]afeguards that have evolved over many decades" and that have been "built into the Federal Rules of Civil Procedure and the Local Rules." *Id.* at 491. Those rules are in place precisely because "regular noticed motions are most likely to produce a just result" by giving the opposing party "an opportunity to prepare a thorough opposition . . . according to a predesigned, consistent timetable." *Id.*

Here, all discovery has closed. In reliance of the unchallenged denial of the Rule 56 motion on the issue of exhaustion, no discovery has been conducted on the issue since *pro bono* counsel was appointed. Defendants deposed Plaintiff but elected not to ask any questions about exhaustion. No written discovery or new evidence regarding exhaustion has been produced. Even if the Court affords Plaintiff sufficient time to brief the issues of exhaustion as through a regular motion, Defendants' attempt to seek *ex parte* relief on a previously decided dispositive motion regarding an affirmative defenses – on which Plaintiff bears no burden at all -- deprived Plaintiff of the valuable opportunity to conduct discovery

on this issue. If the issue has been brought properly Plaintiff would have deposed the Rule 56 declarants previously presented and would have inquired of both the Warden and the RVR correctional official on the issue during their respective depositions.[1]

Here, Defendants have barely attempted to justify their request to depart from normal procedures. As the cases cited above demonstrate, Defendants have failed to meet their burden to validate their request for *ex parte* relief and, as a result, their Ex Parte Application should be denied.

### B. Defendants' successive efforts to pursue their Affirmative Defense on the issue of exhaustion is barred by the law of the case doctrine.

*First*, as shown above if Defendants disagreed with the Court's prior ruling the proper procedural vehicle was to timely move for reconsideration. LRCiv 7.18; *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Instead, they have now repackaged the exact same arguments in an *ex parte* application.

*Second*, "the law of the case doctrine posits that when a court decides upon a rule of law or fact, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Co.*, 486 U.S. 800, 815-16 (1988) (internal brackets omitted); *Arizona v. California*, 460 U.S. 605, 618 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") Here, Defendants have already raised the same arguments in their rule 56 motion and two objections to the magistrate's R&Rs. The law of the case doctrine bars Defendants' current attempt to resurrect an alleged request for an evidentiary hearing that has been explicitly rejected. A court may revisit a prior decision only if (a) circumstances demonstrate that the earlier ruling was "clearly erroneous and would work a manifest injustice," (b) substantially different evidence was adduced

---

[1] Plaintiff conducted multiple depositions of defendants in preparation for trial and to develop his trial strategy.

at a subsequent trial, or (c) an intervening controlling change in the law warrants reexamination of the prior ruling. *Minidoka Irrigation Dist. v. U.S. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir. 2005). Defendants make no argument or even attempt to establish an exception. "Failure to apply the doctrine of the law of the case absent one of the [exceptions] constitutes an abuse of discretion." *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997).

If the Court allows Defendants to renew their Rule 56 motion, then the Court must reopen discovery to allow Plaintiff's counsel to develop the record in order to file a proper response. This is particularly important since Magistrate Rosenberg found that Plaintiff's evidence was uncontroverted and no disputed issues existed to justify an *Albino* hearing. (Dkt 166).

**C. The Court should enter a judgment in favor of Plaintiff on the issue of exhaustion.**

The 9th Circuit explained in *Albino* that when no disputed facts exist on the issue of exhaustion then the Court can *sua sponte* issue a judgment in favor of the Plaintiff on the affirmative defense. In *Albino* the prisoner, just like Mr. Turner, was acting pro se and did not file a cross-motion for summary judgment. On appeal the Ninth Circuit reversed the district court's grant of summary judgment in favor of the prison officials. The record for review consisted of declarations from the prison official and a declaration from the plaintiff. *Albino v. Baca*, 747 F.3d at 1174. The Court held that:

> failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove in a PLRA case. *Jones*, 549 U.S. at 212, 127 S.Ct. 910. Viewing all of the evidence in the light most favorable to Albino, we conclude as a matter of law that defendants have failed to carry their initial burden of proving their affirmative defense that there was an available administrative remedy that Albino failed to exhaust. We therefore reverse the district court's grant of summary judgment to defendants on the issue of

8

> exhaustion.
>
> Albino, acting pro se, did not make a cross-motion for summary judgment. However, we conclude he would have succeeded had he made such a motion. We therefore direct sua sponte that summary judgment be granted to Albino on the issue of exhaustion.

Id. at 1176.

The *Albino* Court emphasized that it was at the time well-settled "that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment sua sponte for the nonmoving party." *Id.*; *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir.2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.' ") The Court also pointed out that the Supreme Court "[i]mplicitly recognized this authority in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), noting that 'district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.' Id. at 326, 106 S.Ct. 2548." *Id.*; 10 A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2720, at 351–52 (3d ed. 1998) ("[T]he practice of allowing summary judgment to be entered for the nonmoving party in the absence of a formal cross-motion is appropriate. It is in keeping with the objective of Rule 56 to expedite the disposition of cases...."). Here Defendants have had more than sufficient time and opportunity to develop their claim: (1) they were allowed an opportunity to file a late reply after the magistrate initially denied their motion, Dkt No. 147; (2) Defendants received three extensions of time of the *original 45 days* to file their reply, Dkt No. 153, 157, 161; and (3) they filed objections to the Magistrate's R&R. After the denial of their motion

Defendants deposed Mr. Turner but elected not to develop the issue or test his credibility. Defendants still have not identified any new evidence or an issue they have not had a chance to argue or address. (Ex Parte at 3 citing solely to already filed "evidence" and arguments that the court rejected).

Dated: 26 October 2021

          Respectfully submitted,

          LAW OFFICES OF LARRY R. GLAZER

          *s/Nicolette Glazer*
          Nicolette Glazer
          *Attorneys for Plaintiff LaFonzo Turner*